UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON ALTENHOFEN, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>  v.<br><br>ENERGY TRANSFER PARTNERS, L.P.,<br><br>   *Defendant*. | Civil Action No. 2:20-cv-00200-DSC<br><br>Judge David S. Cercone |

**CLEVELAND INTEGRITY SERVICES, INC.'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO INTERVENE**

**I. INTRODUCTION**

Jason Altenhofen ("Altenhofen") brings suit under the Fair Labor Standards Act ("FLSA") and parallel state statutes contending that Energy Transfer Partners, L.P. ("Energy Transfer") failed to pay him overtime. Altenhofen, however, was employed by and paid by Cleveland Integrity Services, Inc. ("CIS"), which assigned him to work for its customer, Energy Transfer. Yet, Altenhofen's lawsuit pointedly excludes his actual employer from his purely employment claim.

That omission needs to be rectified.

As Altenhofen's employer, CIS determined the central issues in this case: his pay and his duties. CIS alone determined that Altenhofen qualified as overtime exempt under the applicable statutes. Plus, Altenhofen executed an arbitration agreement as a condition of his employment *with CIS,* which he now tries to evade through selective pleading.

CIS, accordingly, moves to intervene pursuant to Federal Rule of Civil Procedure 24.

## II. FACTUAL CONTEXT

### A. CIS's Relationship with Energy Transfer Partners

CIS employs inspection personnel to provide services to its customers. Ex. A at ¶ 3. Energy Transfer is one of its customers. Ex. A at ¶ 4. Energy Transfer pays CIS a stipulated rate to compensate it for the services it provides. Ex. A at ¶ 6. This rate was all-inclusive, meant to cover overhead, profit, equipment, material, salary, benefits, vehicle allowance and applicable taxes and withholdings under state and federal law. CIS then pays its inspectors in a manner that it alone determines. Ex. A at ¶ 6.

CIS directs its employees to provide the requested third-party services. Ex. A at ¶ 5. This is comparable to a CPA firm sending auditors to its clients. In both instances, there is a compelling logic for having truly independent inspections done. Pipeline inspectors, like auditors, are hired to work independently, just like auditors:

> The Inspector acts as the Owner Company's authorized representative for non-financial matters, continuously observes the Contractor's progress and monitors all activities in their assigned areas in accordance with codes and standards; regulatory requirements; Owner Company safety and environmental requirements, drawings, plans, and specifications; as well as the terms of the construction contract or agreement. The Inspector may also be asked to assist other specialized Inspectors (e.g., Welding Inspector), as directed.

CEPA Foundation and the INGAA Foundation, A Practical Guide for Pipeline Instruction Inspectors 11 (Mar. 2016), https://www.cepa.com/wp-content/uploads/2016/11/A-Practical-Guide-for-Pipeline-Construction-Inspectors-16Mar2016-FIN...1.pdf.

### B. CIS's Employment of Altenhofen

CIS employed Altenhofen and assigned him to provide inspection services to various CIS clients. Ex. A at ¶ 8. On June 4, 2017, CIS assigned Altenhofen as an environmental inspector to be part of its team providing services to Energy Transfer. Ex. A at ¶ 9; *see also* App'x 3 to Ex. A

2

(CIS's mobilization record for Altenhofen, which identifies Energy Transfer as the customer he would be assigned to).

CIS determined that Altenhofen's pay and duties qualified him as overtime exempt under the FLSA. Ex. A at ¶ 15.  CIS guaranteed him a "minimum weekly salary equal to four times the daily salary amount" based on FLSA regulations. Ex. A at ¶ 11; *see* 29 C.F.R. § 541.604(b).  CIS also decided that his duties qualified as an administrative exempt job. Ex. A at ¶ 15; *see also* 29 U.S.C. § 213, 43 Pa. Stat. § 333.105, Ohio Rev. Code § 4111.03(D)(3)(d).

Altenhofen signed ten separate documents that identified him as an employee of CIS. *See* App'x 1-2, 5-10, 12. These documents included acknowledgments that Altenhofen would comply with CIS's policies governing employee conduct:

- Appendix 5 (Altenhofen's Acknowledgement of CIS's Safety Handbook);
- Appendix 6 (Altenhofen's Acknowledgement of CIS's Drug and Alcohol Policy);
- Appendix 7 (Altenhofen's Acknowledgement of CIS's Incident and Injury Reporting Policy);
- Appendix 8 (Altenhofen's Acknowledgement of CIS's Employee Driving Policy); and
- Appendix 9 (Altenhofen's Acknowledgement of CIS's Workers' Compensation Notice).

Altenhofen executed an arbitration agreement as a condition of his employment. Ex. A at ¶ 7.  Under that arbitration agreement, Altenhofen committed "to arbitrate all claims that have arisen or will arise out of Employee's employment with or termination from the Company regardless of whether those are claims under common law or statutory law." App'x 1 (attached to Ex. A) at ¶ 2.  Altenhofen also agreed that "there shall be no class actions, collective actions, or multiple-employee claims of any kind." App'x 1 (attached to Ex. A) at ¶ 2.  "Company" is defined broadly to include, without limitation, "its affiliates or agents." App'x 1 (attached to Ex. A) at ¶ 2.

CIS assigned Altenhofen to provide services on its behalf to Energy Transfer from June 4 until October 26, 2017. Ex. A at ¶ 14.  Thereafter, CIS assigned to inspection work for other CIS customers. Ex. A at ¶ 14.  During the period of time Altenhofen was assigned to Energy Transfer,

3

CIS paid him $20,163.00 in gross salary. Ex. A. ¶ 14. During that time, Altenhofen was undeniably employed by CIS.

### C. This Lawsuit Against Energy Transfer Only

Altenhofen's lawsuit alleges that he was denied overtime pay in violation of the FLSA and parallel state statutes. But, rather than suing CIS -- the entity that hired him, that determined he was overtime exempt, and that paid him -- Altenhofen sues *only* the customer to which he was assigned but that neither paid him nor determine how much he was paid. Notably, this is not Altenhofen's only lawsuit arising from his employment with CIS -- despite 28 U.S.C. § 1927's caution against "multipl[ying] the proceedings," he has also commenced separate lawsuits in other courts raising FLSA claims against two other CIS customers that he was assigned to provide services to rather than pressing his claims against CIS in a single suit or arbitration. *See Altenhofen v. Southern Star Central Gas Pipeline*, *Inc.*, No. 4:20-cv-00030-JHM-HBB (W.D. Ky. Feb. 24, 2020); *Altenhofen v. Southern California Gas Co.*, No. 2:20-cv-01723-JFW-JPR (C.D. Cal. Feb. 24, 2020).

Even though Altenhofen leaves CIS unnamed in his Complaint, his allegations against Energy Transfer are unavoidably directed against CIS. For example, his Complaint alleges that "[t]hroughout his employment with Energy Transfer, Energy Transfer paid him on a day rate basis," *Complaint*, at ¶ 35, even though CIS determined and paid his salary. *See* Ex. A at ¶ 10-14 and accompanying Appendices.

Energy Transfer did not hire Altenhofen, did not classify him as overtime exempt, did not establish his compensation package, did not offer him benefits, did not make requisite payroll contributions to state and federal taxing authorities, and did not write or control his pay paychecks. The reality of his Complaint is that he alleges that Energy Transfer was a joint employer *with CIS*.

That is his only route to holding Energy Transfer liable for the alleged violations of the FLSA and parallel state statutes.

Altenhofen may wish to allege that Energy Transfer was his joint employer but that cannot and does not alter CIS's undeniable interest as his primary employer -- the entity that hired him, classified him, and paid him -- in intervening in this case to defend against Altenhofen's claim challenging CIS's decision to classify him as overtime exempt. Further, Altenhofen's tactic of suing only Energy Transfer is simply an attempt to avoid his arbitration agreements; permitting this lawsuit to go forward without CIS's participation would deprive CIS of these interests.[1]

## III.    ANALYSIS

Federal Rule of Civil Procedure 24 authorizes CIS's intervention.

### A.    Rule 24(a)(2): Intervention As Of Right

Rule 24 requires the intervention of anyone who timely "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may **as a practical matter** impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). As a practical matter, CIS -- Altenhofen's actual employer -- has such an interest.

*Snow v. Silver Creek Midstream Holdings LLC*, No. 2:19-cv-00241, Dkt. 30 (D. Wyo. Mar. 3, 2020) (attached as Ex. B) is illustrative. There, the court granted intervention to a pipeline inspection services company in a lawsuit against its customer alleging -- just like this suit -- violations of the FLSA. The logic for that ruling applies equally here: "[t]he Court finds the

---

[1] Pursuant to Federal Rule of Civil Procedure 24(c), CIS attaches as Exhibit C its motion to compel arbitration, seeking to enforce its bargain with Altenhofen. *See, e.g., U.S. ex rel. Frank M Sheesley Co. v. St. Paul Fire and Marine Ins. Co.*, 239 F.R.D. 404, 414 (W.D. Pa. 2006) (motion to compel arbitration satisfies Rule 24(c)). CIS will file this motion immediately upon the Court's approval of its intervention.

5

potential for Silver Creek [customer] to claim Applied [employer / inspection services company] is Plaintiff's sole employer, or even a joint employer, establishes a protectable interest." *Id.* at 6.

The Third Circuit has distilled Rule 24(a)(2) into four parts, explaining that the Rule entitles intervention if "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987). Here, CIS meets all four requirements.

**First**, CIS's motion, filed before the start of discovery, is timely; intervention at this early stage of the litigation does not unduly delay or prejudice Altenhofen's or Energy Transfer's rights. *U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire and Marine Ins. Co.*, 239 F.R.D. 404, 413 n.9 (W.D. Pa. 2006) (intervention timely where the "case is still in its initial stages").

**Second**, CIS has an interest in this case on multiple levels:

**i.** The central issue in this case is whether Altenhofen's pay and duties qualified him for an overtime exemption. CIS has an interest in the adjudication of this issue because it set his job as overtime exempt and exclusively controlled his pay. Further, any liability resulting is joint and several among joint employers. *See* 29 C.F.R. § 791.2(a) ("[A]ll joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA], including the overtime provisions, with respect to the entire employment for the particular workweek.").

**ii**. CIS not only has an interest in vindicating its proper classification of Altenhofen as overtime exempt but also has a distinct interest in enforcing Altenhofen's arbitration agreement. Moving forward without CIS could result in Altenhofen being able to avoid the arbitration forum

in which he committed to bring his individual employment claims.  This would deprive CIS of the benefit of the bargain it struck with Altenhofen: in exchange for employing him and paying him significant compensation, CIS assured itself of "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010).

       **iii**.    CIS also has an interest because Energy Transfer has demanded indemnification for Altenhofen's claims. Ex. A at ¶ 16.  An intervenor has a sufficient interest where it may be required to indemnify its customer. *Advanced Dynamic Interfaces, LLC v. Aderas, Inc*., C.A. No. 12-cv-963 (GMS), 2013 WL 6989428, at *1 n.1 (D. Del. Jan. 11, 2013) (granting a manufacturer's motion to intervene in a lawsuit brought against its customer because, in part, "it has received indemnifications requests in connection with this action . . . .").

       **Third**, disposing of this action without CIS would impair those interests.  Most pointedly, its ability to defend against Altenhofen's claims that his compensation ran afoul of the FLSA would **as a practical matter** be limited.  If CIS -- the entity that set and paid Altenhofen's salary; determined that he was eligible for exempt status; and maintains the employment records on which his case is predicated -- is excluded, it would be deprived of the "opportunity to raise arguments and defenses before adjudication of its own liability to Plaintiff." *Clean Earth, Inc. v. Endurance Am. Ins.*, 2016 WL 5422063, at *4-5 (D.N.J. Sept. 28, 2016) (allowing a general contractor to intervene in a lawsuit brought by a sub-contractor against the general contractor's insurer and determining, with respect to impairment of interest, that the possibility that the intervenor could be held liable without having an opportunity to legally dispute that liability impaired the intervenor's interest, which could not be cured "simply because [the general contractor] has an opportunity to defend against an indemnification claim by [the insurer]").

**Fourth**, CIS's interest is not adequately represented by the existing parties. Energy Transfer lacks the records and witnesses to defend an employment claim from an individual that it never employed. Energy Transfer did not classify Altenhofen as exempt nor write his paychecks. CIS's "superior understanding" of their employment classification and "greater access to relevant documents and individuals may result in" its "interests being inadequately represented" if it is not allowed to intervene. *Advanced Dynamic Interfaces*, 2013 WL 6989428, at *1 n.1 (determining that a company could intervene as of right in a patent suit brought against its customer because the company was the creator and manufacturer of the products at issue). Additionally, because Energy Transfer has demanded indemnity of CIS, there is "the distinct possibility" that Energy Transfer and CIS "may point the proverbial finger at each other" at some point in the litigation (*Snow*, Dkt. 30, at 8) or may have an incentive to settle rather than press a full defense of CIS's pay practices since it intends to stick CIS with the bill.

### B. Rule 24(b): Permissive Intervention

Even if there could be doubt about intervention as of right, CIS is entitled to intervene as a matter of permission on those same considerations. Rule 24(b)(1)(B) allows permissive intervention to anyone who timely asserts "a claim or defense that shares with the main action a common question of law or fact." Both are met here.

There are undeniably **common questions of law**: *e.g.*, the enforcement of Altenhofen's arbitration commitment. That common issue in and of itself warrants intervention. *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 27 (D.D.C. 2002) (granting permissive intervention in a trade secrets suit to the customer of both parties where the lawsuit questioned whether the customer conspired with the defendant to disclose trade secrets because, in part, the customer and the

plaintiff had an arbitration agreement and both the customer and defendant argued that arbitration should be compelled).

There are also **common questions of fact**. The central issue in this suit is whether Altenhofen's pay and duties qualify him as overtime exempt under the FLSA. These questions cannot be resolved without addressing the actions of CIS, which paid his salary and determined that his duties and salary met the administrative exemption requirements under the FLSA and parallel state statutes. CIS asserts a defense -- that it properly classified Altenhofen -- that shares common facts with any argument Energy Transfer may make on the merits. Put differently, a full airing of the facts upon which liability depends is not possible without the participation of Altenhofen's actual employer. *See Snow*, Dkt. 30, at 10 (determining that allowing the actual employer -- also an inspection services company -- in an FLSA suit brought against that company's customer "adds value and significantly advances the full and complete development of the factual and legal issues raised in the underlying action").

## IV.     CONCLUSION

For these reasons, CIS should be allowed to intervene in this case.

Respectfully submitted,

Date: March 30, 2020

*/s/Ryan O. Hemminger*
Ryan O. Hemminger
PA. I.D. No. 200809
Leech Tishman Fuscaldo & Lampl, LLC
525 William Penn Place, 28th Floor
Pittsburgh, PA 15219
(412) 261-1600 (phone)
(412) 227-5551 (fax)
rhemminger@leechtishman.com

>Rachel B. Cowen, *Motion for Admission Pro Hac Vice forthcoming*
>Joseph K. Mulherin, *Motion for Admission Pro Hac Vice forthcoming*
>McDermott Will & Emery LLP
>444 West Lake Street
>Chicago, Illinois 60606
>(312) 372-2000 (phone)
>(312) 884-7700 (fax)
>rcowen@mwe.com
>jmulherin@mwe.com

## CERTIFICATE OF SERVICE

The undersigned does certify that on the 30th day of March 2020, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the applicable ECF registrants.

>*/s/ Ryan O. Hemminger*
>Ryan O. Hemminger