UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON ALTENHOFEN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ENERGY TRANSFER PARTNERS, L.P.,<br><br>*Defendant*. | Civil Action No. 2:20-cv-00200-DSC<br><br>Judge David S. Cercone |

**INTERVENOR'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

**I.     INTRODUCTION**

Jason Altenhofen ("Altenhofen") brings suit under the Fair Labor Standards Act ("FLSA") and parallel state statutes alleging his employer failed to pay him overtime.  These, however, are claims that Altenhofen has contracted to arbitrate: his commitment is "to arbitrate all claims that have arisen or will arise out of Employee's employment."  *See* App'x 1 (attached to Ex. A) at ¶ 2.

Altenhofen, seeking to evade that arbitration commitment, sues only his employer's customer: Energy Transfer Partners, L.P. ("Energy Transfer").  His pleading tactics seek to make his employer's customer into his joint employer.  That pleading artifice is of no merit with respect to his duty to arbitrate.

His claims must be arbitrated for two separate reasons.

**First**, Altenhofen is estopped from denying that both his employer, Cleveland Integrity Services, Inc. ("CIS"), and its customer, Energy Transfer, are covered by that arbitration

agreement. *Noye v. Johnson & Johnson Servs., Inc.*, 765 F. App'x 742, 746-48 (3d Cir. 2019) is directly on point.

**Second**, Altenhofen's arbitration agreement encompasses not only CIS, but also its "affiliates and agents" and commits -- under American Arbitration Association rules -- any issue of arbitrability (including whether Energy Transfer is an agent) to the arbitrator. Thus, for that reason as well, arbitration must be compelled. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator . . . a court possesses no power to decide the arbitrability issue.").

## II.    FACTUAL CONTEXT

### A.    CIS's Relationship with Energy Transfer Partners

CIS employs inspection personnel to provide services to its customers. Ex. A at ¶ 3. Energy Transfer is one of its customers. Ex. A at ¶ 4. Energy Transfer pays CIS a stipulated rate to compensate it for the services it provides. Ex. A at ¶ 6. This rate was all-inclusive, meant to cover overhead, profit, equipment, material, salary, benefits, vehicle allowance and applicable taxes and withholdings under state and federal law. CIS then pays its inspectors in a manner that it alone determines. Ex. A at ¶ 6.

CIS directs its employees to provide the requested third-party inspection services for its customers. Ex. A at ¶ 5. This is comparable to a CPA firm sending auditors to its clients. In both instances, there is a compelling logic for having truly independent inspections done. Pipeline inspectors, like auditors, are hired to work independently, just like auditors:

> The Inspector acts as the Owner Company's authorized representative for non-financial matters, continuously observes the Contractor's progress and monitors all activities in their assigned areas in accordance with codes and standards; regulatory requirements; Owner Company safety and environmental requirements, drawings, plans, and specifications; as well as the terms of the

construction contract or agreement. The Inspector may also be asked to assist other specialized Inspectors (e.g., Welding Inspector), as directed.

CEPA Foundation and the INGAA Foundation, A Practical Guide for Pipeline Instruction Inspectors 11 (Mar. 2016), https://www.cepa.com/wp-content/uploads/2016/11/A-Practical-Guide-for-Pipeline-Construction-Inspectors-16Mar2016-FIN...1.pdf.

### B. CIS's Employment of Altenhofen

CIS employed Altenhofen and assigned him to provide inspection services to various CIS clients. Ex. A at ¶ 8. On June 4, 2017, CIS assigned Altenhofen as an environmental inspector to be part of its team providing services to Energy Transfer. Ex. A at ¶ 9; *see also* App'x 3 to Ex. A (CIS's mobilization record for Altenhofen, which identifies Energy Transfer as the customer he would be assigned to).

CIS determined that Altenhofen's pay and duties qualified him as overtime exempt under the FLSA. Ex. A at ¶ 15. CIS guaranteed him a "minimum weekly salary equal to four times the daily salary amount" based on FLSA regulations. Ex. A at ¶ 11; *see* 29 C.F.R. § 541.604(b). CIS also decided that his duties qualified as an administrative exempt job. Ex. A at ¶ 15; *see also* 29 U.S.C. § 213, 43 Pa. Stat. § 333.105, Ohio Rev. Code § 4111.03(D)(3)(d).

Altenhofen signed ten separate documents confirming that he was an employee of CIS. *See* App'x 1-2, 5-10, 12. These documents included acknowledgments that Altenhofen would comply with CIS's policies governing employee conduct:

- Appendix 5 (Altenhofen's Acknowledgement of CIS's Safety Handbook);
- Appendix 6 (Altenhofen's Acknowledgement of CIS's Drug and Alcohol Policy);
- Appendix 7 (Altenhofen's Acknowledgement of CIS's Incident and Injury Reporting Policy);
- Appendix 8 (Altenhofen's Acknowledgement of CIS's Employee Driving Policy); and
- Appendix 9 (Altenhofen's Acknowledgement of CIS's Workers' Compensation Notice).

Altenhofen also executed an arbitration agreement as a condition of his employment at CIS. Ex. A at ¶ 7. Under that arbitration agreement, Altenhofen committed "to arbitrate all claims that have arisen or will arise out of Employee's employment with or termination from the Company regardless of whether those are claims under common law or statutory law." App'x 1 (attached to Ex. A) at ¶ 2. Altenhofen also agreed that "there shall be no class actions, collective actions, or multiple-employee claims of any kind." App'x 1 (attached to Ex. A) at ¶ 2. "Company" is defined broadly to include, without limitation, "its affiliates or agents." App'x 1 (attached to Ex. A) at ¶ 2.

CIS assigned Altenhofen to provide services on its behalf to Energy Transfer from June 4, 2017 until October 26, 2017. Ex. A at ¶ 14. Thereafter, CIS assigned Altenhofen to inspection work for other CIS customers. Ex. A at ¶ 14. During the period of time Altenhofen was assigned to Energy Transfer, CIS paid him $20,163.00 in gross salary. Ex. A. ¶ 14. During that time, Altenhofen was undeniably employed by CIS.

### C.  This Lawsuit Against Energy Transfer Only

Altenhofen alleges in this lawsuit that he was denied overtime pay. The central issue in that claim is whether he was overtime exempt under the FLSA and state law overtime requirements. But, rather than suing CIS -- the entity that hired him, that determined he was overtime exempt, and that paid him -- Altenhofen sues *only* CIS's customer. Notably, this is not Altenhofen's only lawsuit arising from his employment with CIS -- despite 28 U.S.C. § 1927's caution against "multipl[ying] the proceedings," he has also commenced separate lawsuits in other courts raising FLSA claims against two other CIS customers that he was assigned to provide services to rather than pressing his claims against CIS in a single suit or arbitration. *See Altenhofen v. Southern Star Central Gas Pipeline*, *Inc.*, No. 4:20-cv-00030-JHM-HBB (W.D. Ky. Feb. 24,

2020); *Altenhofen v. Southern California Gas Co.*, No. 2:20-cv-01723-JFW-JPR (C.D. Cal. Feb. 24, 2020).

Altenhofen's choice to bring this lawsuit against just Energy Transfer rather than bring a claim against CIS reflects a simple goal: avoiding enforcement of his arbitration agreement. Even though Altenhofen leaves CIS unnamed in his Complaint, his allegations against Energy Transfer are allegations against CIS.

His aspiration is not to deny that CIS was his employer: his paychecks, his arbitration agreement, and his multiple written promises to honor CIS's employment policies make that impossible. Rather, his only route to holding Energy Transfer liable is to show that Energy Transfer was a joint employer *with CIS*.

## II.     ARGUMENT

For two separate and independent reasons, Altenhofen's employment claims must be arbitrated. Whether Altenhofen wishes to make those claims against Energy Transfer alone or against Energy Transfer and CIS jointly, those claims must be arbitrated.

### A.     Altenhofen is estopped from evading arbitration

Altenhofen is undeniably bound to arbitrate claims against CIS and on individual basis. His arbitration agreement and the case law under the Federal Arbitration Act leave no room for doubt on that score. But what about the identical claims against Energy Transfer? Same result but for a different reason.

"[T]raditional principles of state contract law," including estoppel, allow an arbitration agreement to be enforced against claims brought against a non-signatory to that agreement. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). The Third Circuit has explained that Pennsylvania law permits "non-signatories to an arbitration agreement [to] enforce such an

5

agreement where there is an obvious and close nexus between the non-signatories and the contract or the contracting parties." *Noye v. Johnson & Johnson Servs., Inc.*, 765 F. App'x 742, 746 (3d Cir. 2019).

In *Noye*, the Third Circuit reversed the district court's denial of the non-signatory's motion to compel arbitration, determining that there was "a close nexus among [the signatory staffing agency], [the non-signatory customer], and [the plaintiff] as to [the plaintiff's] employment with [the signatory staffing agency] and placement with [the non-signatory customer]" because the plaintiff only worked at the non-signatory customer through his relationship with the signatory staffing company. *Id.* at 747.

Here, this Court is presented with the identical situation. CIS hired Altenhofen as a pipeline inspector. When Energy Transfer requested that CIS provide inspection services to its pipeline projects, CIS assigned Altenhofen to its team providing those services. Ex. A at ¶¶ 5, 7. Put differently, Altenhofen only did work at Energy Transfer because CIS assigned him and paid him to do that work on Energy Transfer's projects.

The decision in *Noye* was premised on equity: "alternative equitable estoppel may be invoked given the 'obvious and close nexus between' non-signatory J&J [the customer] and 'the contracting parties,' Kelly and Noye [plaintiff and his employer]." *Id.* (citing *Dodds v. Pulte Home Corp.*, 909 A.2d 348, 351-52 (Pa. Super. Ct. 2006)). In joint employment cases such as this one, equity invariably warrants compelling arbitration.[1]

---

[1] The only other federal appellate court to address this alternative equitable estoppel in a joint employment case reached the same conclusion that the Third Circuit did in *Noye*. *See Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115 (2d Cir. 2010) (affirming the estoppel of a plaintiff's attempt to avoid arbitration with respect to Title VII claims against a non-signatory joint employer even though the non-signatory was "not mentioned in the arbitration agreement, or in any other document relating to [plaintiff's] initial employment" because the plaintiff was plainly

Equitably, Altenhofen cannot have it both ways.  He committed to arbitrate claims against his employer so, if his desired employer is Energy Transfer, he is estopped from denying that it is his employer for purposes of his arbitration agreement too: "a plaintiff who treats the non-signatory and signatory party as jointly liable for the same alleged conduct is estopped from resisting arbitration with the non-signatory." *Kauffman v. U-Haul Int'l, Inc.*, No. 5:16-cv-04580, 2018 WL 4094959, *33 (E.D. Pa. Aug. 28, 2018) (internal quotation marks and citation omitted); *see also Colon v. Conchetta, Inc.*, No. 17-0959, 2017 WL 2572517 at *8 (E.D. Pa. June 14, 2017).

Permitting Altenhofen's attempt to evade his arbitration agreement only promotes inequity.  It deprives CIS of the bargained-for arbitration with its "lower costs, greater efficiency and speed . . . ." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010).  Concomitantly, that evasion puts CIS at even larger risk (given the indemnification demand) because the collective action waiver of that arbitration agreement is then sidestepped.

By contrast, requiring Altenhofen to live up to his bargain does no injustice.  His arbitration agreement permits full recovery of potential damages, attorney fees and costs, and affords significant procedural protections including discovery, cross-examination, and post-hearing briefing. App'x 1 (attached to Ex. A) at ¶ 4.  This balance of equities in joint employment cases lies at the heart of the *ratio decidendi* of *Noye* and its invocation of alternative equitable estoppel.

That is why *Noye* is not merely controlling case law but also the just result.  There is no equity in Altenhofen's approach -- indeed, Altenhofen's "arbitration agreement would be of little value if a party could obviate the effect of the agreement merely by finding a way to join another party" or otherwise manipulating the Caption.  *Dodds*, 909 A.2d at 351.

---

aware that she was hired by the signatory to provide services to the non-signatory and the allegations were "factually intertwined" with those against the signatory.)

7

### B.      Altenhofen is bound to arbitrate issues of "arbitrability"

Altenhofen's arbitration agreement covers not only CIS but also its "affiliates or agents." App'x 1 (attached to Ex. A) at ¶ 1. The doctrinal hallmark of agency is joint and several liability, *see, e.g.*, 3 Am. Jur. 2d Agency § 245, 246 (2019); Restatement (Third) Agency § 7.03.  This is equally the hallmark of a joint employer relationship. *See* 29 C.F.R. § 791.2(a) ("[A]ll joint employers are responsible, both individually and jointly, for compliance with all applicable provisions of the [FLSA], including the overtime provisions. . .").

If Energy Transfer was CIS's joint employer, it was because it was also its agent; thus, Altenhofen's claims against Energy Transfer are encompassed by his arbitration agreement.   But that construction of "agent" is not for this Court.  Critically, Altenhofen's arbitration agreement delegates all decisions on arbitrability -- including, necessarily, any decision on whether Energy Transfer is CIS's agent -- to the arbitrator.

Altenhofen's arbitration agreement adopts the American Arbitration Association Employment Rules (App'x 1 (attached to Ex. A) at ¶ 4) which, delegate to the arbitrator "the power to rule on his or her own jurisdiction . . . ." American Arbitration Ass'n, Employment Arbitration Rules and Mediation Procedures R. 6(a) (2019).  Incorporation of such tribunal rules constitutes the creation of a "delegation" of arbitrability to the arbitrator. *See Contec Corp. v. Remote Sol. Co., Ltd.*, 387 F.3d 205, 211 (2d Cir. 2005); *Simply Wireless, Inc. v. T-Mobile US*, *Inc.*, 877 F.3d 552, 527-28 (4th Cir. 2017); *Petrofac, Inc. v. DynMcDermott Petroleum Operations*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 877-78 (8th Cir. 2009); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015); *Dish Network LLC v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018); *Terminix Intern. Co.*, *LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005); *Chevron Corp. v. Ecuador*, 795 F.3d 200, 207-08 (D.C. Cir. 2015).

Such delegation clauses must be respected by courts.

The Supreme Court has been emphatic in its insistence that, where arbitrability is delegated to the arbitrator, a court must compel arbitration so that the arbitrators decide those delegated threshold issues as well as the merits issues. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator. . . a court possesses no power to decide the arbitrability issue."). For this reason alone, the construction of Altenhofen's arbitration agreement's extension to agents such as Energy Transfer (wholly apart from estoppel and other equitable considerations) requires arbitration.

### III.   CONCLUSION

For these reasons, this Court should compel arbitration.

Respectfully submitted,

Date: _____, 2020

*/s/ Ryan O. Hemminger*
Ryan O. Hemminger
PA. I.D. No. 200809
Leech Tishman Fuscaldo & Lampl, LLC
525 William Penn Place, 28th Floor
Pittsburgh, PA 15219
(412) 261-1600 (phone)
(412) 227-5551 (fax)
rhemminger@leechtishman.com

Rachel B. Cowen, *Motion for Admission Pro Hac Vice forthcoming*
Joseph K. Mulherin, *Motion for Admission Pro Hac Vice forthcoming*
McDermott Will & Emery LLP
444 West Lake Street
Chicago, Illinois 60606
(312) 372-2000 (phone)
(312) 884-7700 (fax)
rcowen@mwe.com
jkmulherin@mwe.com