# Exhibit A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| JASON ALTONHOFEN, Individually and For Others Similar Situated, | ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) ) | Case No. 2:20-cv-200 |
| ENERGY TRANSFER PARTNERS, L.P., | ) ) | |
| Defendant. | ) ) ) | |
| | ) | |

## DECLARATION OF KEYTH PENGAL

1.     My name is Keyth Pengal.  I am over 18 years of age and competent in all respects to make this declaration pursuant to 28 U.S.C. § 1746.  I have personal knowledge of the facts in this declaration, can testify to their accuracy, and make this statement voluntarily.

2.     I am the Chief Executive Officer for FIS Operations, LLC d/b/a Frontier Integrity Solutions ("Frontier").

3.     Frontier provides oil and gas pipeline inspection and maintenance services.  It employs a wide range of inspection personnel who provide services to Frontier's customers.

4.     Energy Transfer Partners, L.P. ("Energy Transfer") is one of Frontier's customers.

5.     Frontier assigns its employees to provide the inspection services Energy Transfer requests.  Frontier and its employees supply the materials, equipment, and knowhow to complete the project for which they are contracted.

6.     Energy Transfer pays Frontier a stipulated rate to compensate Frontier for the services it provides; Frontier, in turn, uses a portion of these monies to pay its personnel assigned to the specific client project in the manner that it determines is warranted.

1

7.      Frontier hired Nicholas J. Nimmo ("Nimmo") as a Utility Inspector on or around April 13, 2017.

8.      In connection with Frontier hiring Nimmo, he executed a Mutual Voluntary Arbitration and Class Action Waiver Agreement ("Nimmo's Arbitration Agreement") on April 13, 2017.   A true and accurate copy of Nimmo's Arbitration Agreement is attached hereto as **Exhibit 1**.

9.      Frontier assigned Nimmo to provide inspection services on Frontier's behalf to Energy Transfer on April 16, 2017.   A true and accurate copy of the business record detailing this assignment is attached hereto as **Exhibit 2**.   Exhibit 2 is a record created and maintained by Frontier in the ordinary course of business.

10.     Nimmo was assigned to provide inspection services to Energy Transfer in Monroeville, Indiana.   Frontier did not assign Nimmo to work in Pennsylvania.

11.     Nimmo signed various employment documents as part of his employment with Frontier acknowledging, for example, that he would be subject to Frontier's various policies governing its employees.   These documents include:

- **Exhibit 3** (Application for Employment);
- **Exhibit 4** (Employee Handbook Acknowledgement);
- **Exhibit 5** (Consent to a Drug and Alcohol Test);
- **Exhibit 6** (Anti-Bribery and Corruption Policy);
- **Exhibit 7** (Code of Ethics and Business Conduct);
- **Exhibit 8** (Drug and Alcohol Policy);
- **Exhibit 9** (Trade Secrets);
- **Exhibit 10** (Driving Policy);

2

- **Exhibit 11** (Personal Safety Pledge);

- **Exhibit 12** (Employee Direct Deposit Authorization).

12.    Exhibits 1–12 are true and accurate copies of records created and maintained by Frontier in the ordinary course of business.

13.    Frontier determined Nimmo's rate of pay. Attached hereto as **Exhibit 13** is a true and accurate copy of pay stubs showing that Frontier paid Nimmo. Attached hereto as **Exhibit 14** is a true and accurate copy of the Form W-4 Nimmo furnished to Frontier in connection with being hired as an employee by Frontier.

14.    Frontier assigned Nimmo to provide inspection services to Energy Transfer, on behalf of Frontier, from approximately April 16, 2017 until on or around August 2, 2017.

15.    Nimmo's employment with Frontier ended on or around August 2, 2017.

16.    During Nimmo's employment with Frontier, from approximately April 13, 2017 to August 2, 2017, Frontier controlled and directed the means and manner of Nimmo's work.

17.    Frontier hired Dickie D. Foster ("Foster") as a Utility Inspector on or around March 7, 2018.

18.    In connection with Frontier hiring Foster, he executed a Mutual Voluntary Arbitration and Class Action Waiver Agreement ("Foster's Arbitration Agreement") on March 7, 2018. A true and accurate copy of Foster's Arbitration Agreement is attached hereto as **Exhibit 15**.

19.    Frontier assigned Foster to provide inspection services on Frontier's behalf to Energy Transfer on 3/5/2018. Frontier assigned Foster to provide inspection services in Louisiana for the Bayou Bridge project. Frontier did not assign Foster to work in Pennsylvania.

3

20.    Foster signed various employment documents as part of his employment with Frontier acknowledging, for example, that he would be subject to Frontier's various policies governing its employees.  These documents include:

- **Exhibit 16** (Application for Employment)

- **Exhibit 17** (Employee Handbook Acknowledgement);

- **Exhibit 18** (Consent to a Drug and Alcohol Test);

- **Exhibit 19** (Anti-Bribery and Corruption Policy);

- **Exhibit 20** (Code of Ethics and Business Conduct);

- **Exhibit 21** (Drug and Alcohol Policy);

- **Exhibit 22** (Trade Secrets);

- **Exhibit 23** (Driving Policy);

- **Exhibit 24** (Personal Safety Pledge);

- **Exhibit 25** (Employee Direct Deposit Authorization)

21.    Exhibits 16–25 are true and accurate copies of records created and maintained by Frontier in the ordinary course of business.

22.    Frontier determined Foster's rate of pay.  Attached hereto as **Exhibit 26** are true and accurate copies of pay stubs showing that Frontier paid Foster for work he performed while assigned to perform inspection services for Energy Transfer on behalf of Frontier.

23.    Frontier assigned Foster to provide inspection services to Energy Transfer, on behalf of Frontier, from approximately March 7, 2018 until on or around July 20, 2018.

24.    Foster's employment with Frontier ended on or around July 20, 2018.

25.    During Foster's employment with Frontier, from approximately March 7, 2018 to July 20, 2018, Frontier controlled and directed the means and manner of Foster's work.

4

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28 day of May, 2020.

_____
KEYTH PENGAL

3492920.V1

5

# Exhibit 1



## FIS OPERATIONS, LLC
## MUTUAL VOLUNTARY ARBITRATION AND
## AND CLASS ACTION WAIVER AGREEMENT

This Mutual Voluntary Arbitration and Class Action Waiver Agreement ("Agreement") is made and entered into by and between ___Nicholas Nimmo___ ("Employee") and FIS OPERATIONS, LLC (dba Frontier Integrity Solutions) and its affiliates ("the Company"). Employee and the Company may be collectively referred to herein as the parties. This Agreement shall be governed by the Federal Arbitration Act, and is to be construed as broadly as is permissible under applicable law.

The parties recognize that differences may arise between them during or following Employee's employment with the Company, and that those differences may or may not be related to Employee's employment. The parties understand and agree that by entering into this Agreement, they anticipate gaining the benefits of a speedy, impartial dispute-resolution procedure. Therefore in consideration for the foregoing and for Employee's employment and continued employment with Company, Employee and the Company hereby agree as follows:

Claims Covered by the Agreement

The Company and Employee mutually consent to the resolution by arbitration of all claims ("claims"), whether or not arising out of Employee's employment (or its termination), that the Company may have against Employee or that Employee may have against the Company or against its officers, directors, employees or agents in their capacity as such or otherwise. The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status, medical condition, or disability) under state or federal law; claims for benefits (except where an employee benefit or pension plan specifies that its claims procedure shall culminate in an arbitration procedure different from this one), and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims excluded in the Claims Not Covered section below.

Except as otherwise provided in this Agreement, the Parties agree that neither of them shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination) in any way related to any claim covered by this Agreement.

**As such, the parties, and each of them, understand that, by signing this Agreement, they are knowingly and voluntarily waiving their right to a trial by jury.**

Claims Not Covered by the Agreement

Claims that Employee may have for workers' compensation, unemployment compensation benefits, or claims deemed not subject to arbitration under law are not covered by this Agreement.

Upon a showing of reasonable cause, either party to this Agreement may petition a court of competent jurisdiction for immediate injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure or trade secrets or confidential information.



The contents of this document are considered proprietary and confidential and should not be disclosed, copied or exempted, in whole or in part, without the expressed written permission of FIS Operations LLC dba Frontier Integrity Solutions.



Required Notice of All Claims and Statute of Limitations

The parties agree that the aggrieved party must serve a formal demand for arbitration, containing all factual bases of any claim, to the other party within one (1) year of the termination or employment, or other date the aggrieved party first knows or should know of the event giving rise to the claim, or within the applicable statutory limits in which such claim may be made, whichever date is later. If either party fails to serve a formal demand within the period proscribed by this section, then the claim shall be void and deemed waived.

The formal demand for arbitration served on the Company, or its officers, directors, employees or agents, shall be sent to its CEO  Employee will be given written notice at the last address recorded in Employee's personnel file. The formal demand shall identify and describe the nature of all claims asserted and the facts upon which such claims are based.  The formal demand shall be sent to the other party by certified or registered mail, return receipt requested.

Arbitration Location and  Procedures

**The parties agree that the arbitration shall take place in the county of the state in which the Employee resided at the time of his or her employment.** The parties further agree that the arbitration will be administered by Judicial Arbitration and Mediation Services ("JAMS"), a national arbitration organization, (www.jamsadr.com), in accordance with the **JAMS Employment Arbitration Rules and Procedures ("JAMS Rules"),** for determination in accordance with the JAMS Employment Arbitration Rules & Procedures (the "Rules"), including any subsequent modifications or amendments to such Rules, as the exclusive remedy for such controversy, claim or dispute.  A copy of the Rules is available from Company's Human Resources Department and can also be found on-line at www.jamsadr.com/rules-employment-arbitration.

The Parties also agree that, except as provided in this Agreement, any arbitration shall be conducted by an Arbitrator who is licensed to practice law in the  state in which the claim arose  Employee resided at the time of his or her employment ("Arbitrator").  The Arbitrator shall be selected from a list of retired judges provided by JAMS.  JAMS shall give each party a list of labor-management dispute arbitrators.  Each party may strike all names on the list it deems unacceptable.  If only one common name remains on the lists of all parties, that individual shall be designated as the Arbitrator.  If more than one common name remains on the lists of all parties, the parties shall strike names alternately until only one name remains.  The party who did not initiate the claim shall strike first.  If no common name remains on the lists of all parties, JAMS shall furnish an additional list or lists until the Arbitrator is selected.

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted.  The applicable state in which the claim arose or  the Federal Rules of Evidence shall apply.  The Arbitrator, and not any federal, state, or local court or Company, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable.  The arbitration shall be final and binding upon the parties.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person as the Arbitrator deems necessary.  The



401 E. Broadway Suite 200, Sand Springs, OK 74063 • (918) 246-7100 • FAX: (918) 512-4992
The contents of this document are considered proprietary and confidential and should not be disclosed, copied or excepted, in whole or in part, without the expressed written permission of FIS Operations LLC dba Frontier Integrity Solutions.



Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such

Either party, at its expense, may arrange for and pay the cost of a court reporter to provide a stenographic record of proceedings.

Either party, upon request at the close of hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render a written award and opinion that reveals the essential findings and conclusions upon which the award is based.

Discovery

Except as otherwise provided herein, all discovery proceedings shall be governed by state rules and JAMS Rules. Each party shall have the right to take the deposition of one individual and any expert witness designated by the other party. Each party also shall have the right to propound requests for production of documents to any party and a request for witnesses' names. Additional discovery may be had only where the Arbitrator selected pursuant to this Agreement so orders, upon a showing of substantial need and in accordance with JAMS rules.

Designation of Witnesses and Exhibits

At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any expert witnesses, and copies of all exhibits intended to be used at the arbitration.

Subpoenas

Each party shall have the right to subpoena witnesses and documents for the arbitration.

Arbitration Fees and Costs

**The Company shall bear full responsibility for the Arbitrator's fees and costs.** Each party shall pay for its own costs and attorneys' fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees, or if there is a written agreement providing for fees, the Arbitrator may award reasonable fees to the prevailing party.

Judicial Review

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement, to enforce an arbitration award and/or to have judgment entered upon an award. A party opposing enforcement of an award may not do so in an enforcement proceeding, but must bring a separate action in any court of competent jurisdiction to set aside the award, where the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

Requirements for Modification or Revocation

This Agreement to arbitrate and class action waiver shall survive the termination of Employee's employment. It can only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify this Agreement.



401 E. Broadway Suite 200, Sand Springs, OK 74063 • (918) 246-7100 • FAX: (918) 512-4992
The contents of this document are considered proprietary and confidential and should not be disclosed, copied or excerpted, in whole or in part, without the expressed written permission of FIS Operations LLC dba Frontier Integrity Solutions.



**Class Action Waiver**

   Any claim covered by this Agreement shall be brought and conducted solely on an individual basis and not in a class, multiple plaintiff or representative action, or as a named or unnamed member in a class, consolidated, representative or private attorney general action. Similarly, the arbitrator may not consolidate more than one party's claims, and may not otherwise preside over any form of a class action or representative proceeding. Notwithstanding the foregoing, Employee is not waiving his or her rights under the National Labor Relations Act, and he or she will not be retaliated against for concertedly challenging the validity of this Agreement through class or collective actions.

Sole and Entire Agreement

  This is the complete agreement of the parties on the subject of arbitration of disputes, except for any arbitration agreement in connection with any pension or benefit plan. This Agreement supersedes any prior or contemporaneous oral or written understanding on the subject. No party is relying on any representations, oral or written, on the subject or the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

Construction/Severability

  If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement and any said illegal, invalid or unenforceable part, terms or provisions shall be deemed stricken and severed from this Agreement.

Consideration

  The promises by the Company and by Employee to arbitrate differences, rather than litigate them before courts or other bodies, provide consideration for each other.

Employment Agreement

  This Agreement is not, and shall not be construed to create, any contract of employment, express or implied. Nor does this agreement in any way alter the "at-will" status of Employee's employment with the Company. **This means either employee or the Company terminate the employment relationship at any time, with or without notice, for any reason or no reason at all.**

Severability

  This Agreement contains all the terms, obligations and understandings between the parties regarding its subject matter. If any portion, provision, or part of this Agreement is held, determined, or adjudicated to be invalid, unenforceable, or void for any reason whatsoever, each such portion, provision, or part will be severed from the remaining portions, provisions, or parts of this Agreement and will not affect the validity or enforceability of such remaining portions, provisions, or parts.



The contents of this document are considered proprietary and confidential and should not be disclosed, copied or excerpted, in whole or in part, without the expressed written permission of FIS Operations LLC dba Frontier Integrity Solutions.



### Knowing and Voluntary Agreement

THE PARTIES, AND EACH OF THEM, ACKNOWLEDGE THAT THEY HAVE CAREFULLY READ AND CONSIDERED THIS AGREEMENT, THAT THEY UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND EMPLOYEE RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT

If you wish to affirmatively opt out of this agreement and policy, you may do so **only** by executing and returning to the Company an Arbitration Opt-Out Form, available from Dori Brophy at (918) 246-7709 or dbrophy@frontierintegrity.com.

**EMPLOYEE**

Nicol Nimmo

Signature of Employee                          Date: 4/13/17

Nicholas Nimmo
Print Name of Employee

**FIS Operations, LLC**

Dori Brophy

Signature of Authorized Representative         Date: _____

Dori Brophy
Print Name of Representative

SR. HR. Administrator
Title of Representative

# Exhibit 2

# INSPECTION SERVICES PAY

HOURLY PAY CALCULATION

CLIENT: Energy Transfer
Backhaul
NAME: **Nicholas J. Nimmo**

EFFECTIVE DATE: 4/16/2017
SOCIAL SECURITY: ███████
EMP ID: 6022298

BILLING
CLASSIFICATION: Utility III

TYPE OF PROJECT: pipeline

LOCATION OF PROJECT: Monroeville, IN
Different OT Rules?: _____

DATE NEEDED: 4/16/2017

CLIENT CONTACT: Eric Estopinal

PHONE #: 4/16/2017

INVOICE ADDRESS: 9920 W. I-20 Suite 103
Midland, TX 79706

PAY PACKAGE: $171.00 Day Rate
$30.00 Communication Kit
$35.00 ATV per day used

$189.00 PER DIEM PCD
$0.535 MILEAGE
$120.00 Equip Package

Mob and Demob mileage paid @ current IRS rate.

INVOICE AMOUNT:

| | |
|---|---|
| $590.07 | PWD (assumes 6 days) includes per diem & equipment |
| $189.00 | 7th day per diem |
| $0.535 | mileage |
| $44,000 | ATV Per Day used |

COMMENTS: Expenses + 15%
MGR Approval: _(signature)_
Received by Payroll: _____

PWD - Per Work Day          PCD - Per Calendar Day          PW - Per Week

**Energy Transfer**
EFFECTIVE DATE: 4/16/2017
**Nicholas J. Nimmo**

| Current | |
|---|---|
| Current Day Rate | $ 510.00 |
| Less Per Diem built into base | $ (189.00) |
| Less equipment kit built into base | $ (120.00) |
| Less Communication Allowance built into base | $ (30.00) |
| Day Rate less Per Diem | $ 171.00 |
| Current Total per Period w/o Allowances | $ 1,026.00 |
| Equipment kit | $ 120.00 |
| Per Diem | $ 189.00 |
| Communication Kit | $ 30.00 |
| Computer PWD | $ - |
| Camera PWD | $ - |
| Current Total per Pay Period | $ 3,249.00 |

safety equip, inspector tools, supplies

| Assumed Days per Pay Period | 6 | Assumed Hours Per Day | 10 |
|---|---|---|---|

| NEW | | |
|---|---|---|
| New Hourly Rate | $ 14.6571 | |
| New OT Rate (HR x 1.5) | $ 21.9857 | |

| Regular Hours | 40 |
|---|---|
| Overtime Hours | 20 |
| Total Hours Per Pay Period | 60 |

| | | |
|---|---|---|
| Regular time Per Pay Period | $ 586.29 | |
| Overtime Per Pay Period | $ 439.71 | |
| New Total per Pay Period w/o Allowances | $ 1,026.00 | |
| Per Diem | $ 1,323.00 | |
| Communication Kit | $ 180.00 | |
| Equipment Kit | $ 720.00 | |
| | $ - | |

| Change New Pay vs Current Pay |
|---|
| 0.0% |

| New Total per Pay Period w/ Allowances | $ 3,249.00 |
|---|---|

Nimmo, Nicholas - 4-16-17 - energytransfer

Page 1 / 1

# Exhibit 3

Equal Opportunity Employer

# Application for Employment



www.FrontierIntegrity.com

Last Name Nimmo          First Name Nicholas          Middle Initial J

FIS Operations LLC, dba Frontier Integrity Solutions considers applicants for available positions without regard to race, color, religion, sex, national origin, age, marital or veteran status, the presence of a non-job related medical and physical condition or disabilities, or any other legally protected status.

****FRONTIER INTEGRITY SOLUTIONS CONDUCTS PRE-EMPLOYMENT SUBSTANCE TESTING****
Frontier maintains a drug-free work environment. Frontier follows The Drug Free Workplace Act of 1988. The Act prohibits the illegal use, possession, manufacture or distribution of controlled substances in the workplace and at any time while performing company business.

**Instructions:** Please complete all questions. Include any additional information that you feel would be helpful in our consideration of your application.

| Social Security No: ████████ | Date: 4/11/17 |
|---|---|

**Street Address:**

| City: ████ | State: ████ | Zip Code: | Home Phone No: ████ |
|---|---|---|---|

| Fax No: | Business Phone No: |
|---|---|

| Email: ████████ | Web Site Address: |
|---|---|

| Cellular Phone: ████████ | Drivers License and State: ████████ |
|---|---|

| How were you referred to our company? *Know Chief* | Are you over the age of 18? (YES)   NO |
|---|---|

Are there any other names under which your employment, educational records, references, and other information in the application may be verified?   YES   (NO)  If yes, list:

If hired, can you furnish proof that you are either a U.S. citizen, or otherwise legally permitted to work in the United States?  (YES)   NO

Have you ever been convicted of a crime?   YES   (NO)
If yes, explain:

Position Applying for: *Utility Inspector III*               Desired Starting Salary:

Applying for: (Full Time)   Part Time   Temporary   Contracting

Are you able to perform the essential functions of the job for which you are applying, with or without a reasonable accommodation?  (Yes)   No

**Education:** Your educational record will be considered only in the extent that it is relevant to the job sought.

| Name and address of High School: *Roosevelt High School* | | Did you graduate? (yes/no) *Yes* |
|---|---|---|

| Name and Address of College/Trade Schools (Include Military Schools) | GPA | Degree |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Computer Proficiencies:** Please list all software or programming languages, hardware and/or operating systems that qualify you for the position.

Software/Programming Languages
*Microsoft Office*

Hardware:

Operating Systems:

Other:

**Employment Experience:** Start with your current or last job. Include any job related military service assignments and volunteer activities. You may exclude organizations which indicate race, color, religion, gender, national origin, disabilities or other protected status. (**MUST BE COMPLETED EVEN IF YOU HAVE PROVIDED YOUR RESUME.**)

| Current Employer Name: | Dates Employed: | Work Performed: |
|---|---|---|
| Address: | From (MO/YR)<br>To (MO/YR) | |
| Telephone Number: | | |
| Job Title: | Salary/Bonuses: | |
| Name and Title of Supervisor: | Starting: | |
| Reason for Leaving | Ending: | May we contact:<br>YES    NO |
| Previous Employer Name:<br>HIFS (Houston Inspection) | Dates Employed:<br>**5**/16<br>From (MO/YR).<br>To (MO/YR)<br>2/17 | Work Performed:<br>Utility Inspector.<br>Watched over 35<br>Hydro test on a 195<br>miles of 42" pipe |
| Address:<br>7670 woodway Dr<br>Houston Tx 77063 | | |
| Telephone Number:<br>713-781-1230 | | |
| Job Title:<br>Utility 4 Inspector | Salary/Bonuses:<br>Starting: 545/day<br>Ending: 545/day | |
| Name and Title of Supervisor:<br>Bill Lathum  Asst Chief | | |
| Reason for Leaving<br>Lack of work (Job Finised) | | May we contact:<br>YES  NO |
| Previous Employer Name:<br>CBG Pipeline | Dates Employed:<br>From (MO/YR)<br>8/14<br>To (MO/YR)<br>4/16 | Work Performed:<br>Watched over<br>Formans on different<br>task building different<br>Size M.L pipelines<br>in north East PA<br>(Testing, Coating, Stringing<br>Tie ins, and utility) |
| Address:<br>527 Tower st NW<br>Clearbrook, MN 56634 | | |
| Telephone Number:<br>218-776-2279 | | |
| Job Title:<br>Asst Spread man | Salary/Bonuses:<br>Starting 28hr<br>150 Perdien<br>Ending: 32 hr<br>100 Perdiem | |
| Name and Title of Supervisor:<br>Steve Keen    Spread man | | |
| Reason for Leaving<br>Lack of work | | May we contact:<br>YES  NO |

**Additional Skills / Training:**

Contractor Safety Orientation
NUCA Excavation Safety and Competent Person Training Program

| Foreign Languages: | Fluent | Good | Fair |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

**References:** List individuals who can attest to your professional abilities/work accomplishments (Do not include individuals listed in Employment Background section or relatives).

| | Reference Name | Business Phone | Position |
|---|---|---|---|
| 1. | Mike Wallace | | Project Manager |
| 2. | Monty Siemore | | Chief Inspector |
| 3. | Alin Lindsy | | Inspector |

**Security Information**

Have you ever been employed by Frontier before?   YES   (NO)
If yes, give dates:

Do you have relatives employed by Frontier?   YES   (NO)
If yes, give name(s):

Do you presently hold a security clearance?   YES   (NO)
If yes, state level:

Have you ever held a security clearance?   YES   (NO)
If yes, state dates held:

Have you ever been denied a security clearance or had one revoked?   YES   (NO)
If yes, explain:

**Applicant's Statement** – By signing below, I certify that answers given herein are true and complete to the best of my knowledge. This application shall be considered active for up to 45 days. If I want to be considered for employment after 45 days, I should inquire as to whether or not applications are being accepted at that time.

I understand and acknowledge that, unless otherwise defined by applicable law, any employment relationship with this organization is of an "at will" nature, which means that the Employee may resign at any time and the Employer may discharge Employee at any time with or without cause. It is further understood that this "at will" employment relationship may not be changed by any written document or by conduct unless such change is acknowledged in writing by an authorized executive of this organization.

In the event of employment, I understand that false or misleading information given in my application or interview(s) may result in discharge. I understand, also that I am required to abide by all rules and regulations of the Employer.

As part of the initial employment application requirements and ongoing throughout my employment after an offer of employment has been made by the company and accepted by me, I do hereby give my permission for the company, or its designated contract representative, to inquire, on my behalf, regarding the following: Background, qualifications, work habits, work performance, experience, character, education, military status, credit history, along with State/Federal public records available in conjunction therewith.

In order to maintain a safe and secure work environment, Frontier's policies include a Drug-Free Workplace program. As part of the initial employment application, I do hereby give my permission for the company, or its designated contract representative, to conduct substance testing. Additionally, ongoing throughout my employment after an offer of employment has been made by the company and accepted by me, I do hereby give my permission for the company, or its designated contract representative, to conduct substance testing for post-accident and "for cause" situations. In addition, I acknowledge that the company may require as applicable to position, a post offer physical examination which may include x-rays, other lab analysis, and/or work sample exercises.

I also authorize any law enforcement agency, administrator state agency, institution, information service bureau, employer or Insurance Company that is contacted, to furnish, without hesitation or reservation, the above-mentioned information.

I further acknowledge that a telephonic fax or photographic copy shall be as valid as the original. Also, according to the Fair Credit Reporting Act, I am entitled to know if employment is denied or terminated because of information obtained by my prospective or current employer from a consumer-reporting agency. If so, I will be advised and given the name of the agency or source information.

This authorization is valid for the duration of my employment and/or as of the date of my signature below.

Applicant's Signature: _Niel Nimms_____   Date: _4/13/17_

## AFFIRMATIVE ACTION VOLUNTARY INFORMATION:
### Effective 01/01/2011

Completion of Information Below is Voluntary

We provide equal opportunity to all qualified applicants and employees by prohibiting discrimination in employment decisions because of race, color, religion, sex, national origin, age, veteran status or handicap. We request that you complete this data information form solely to assist us in complying with Federal and State Equal Employment Opportunity and Affirmative Action record keeping requirements. Refusal to provide the information will not subject you to any adverse treatment.

**PLEASE NOTE:** This survey is NOT a part of your official application for employment. The information you provide will be recorded and maintained in a confidential file, separate from all other records.

**Applicant Information:**

Name: _Nicholas Nimmo_        __✓__ Male _____ Female

Education: __X__ High School Grad. __✓__ GED ____ College Graduate _____ Degree Received

Position applied for: _Utility Inspector III_ _____

**Please check the appropriate Equal Opportunity Identification Group:**

_____ American Indian or Alaskan Native (not Hispanic or Latino)          __X__ White (not of Hispanic origin)

_____ Black or African American (not Hispanic or Latino)          _____ Hispanic or Latino

_____ Native Hawaiian or Pacific Islander (not Hispanic or Latino)          _____ Asian (not Hispanic or Latino)

_____ Two or more Races (not Hispanic or Latino)

**Referral Source:**

_____ Walk-In   _____ State Employment Office   _____ Private Employment Agency __X__ Employee

_____ Relative _____ School _____ _____ Advertisement-Source

_____ Other

**Covered Veteran Status:**

_____ **Special Disabled Veteran:** (A) veteran who is entitled to compensation (or who but for the receipt of military retired pay would be entitled to compensation) under laws administered by the Department of Veteran's Affairs for a disability (1) rated at 30 percent or more, or (ii) rated at 10 or 20 percent in the case of a veteran who has been handicap or (B) a person who was discharged or released from active duty because of a service-connected disability.

_____ **Veteran of the Vietnam Era:** (defined as a person who (a) served on active duty for a period of more than 180 days, any part of which occurred between February 28, 1961 to May 7, 1975, and was discharged or released there from with other than a dishonorable discharge or (b) was discharged or released from active duty for a service-connected disability if any part of his or her active duty was performed between February 28, 1961 to May 7, 1975).

_____ **Newly Separated Veterans:** any veteran who served on active duty in the U. S. military, ground, or naval or air service during the one-year period beginning on the date of such veteran's discharge or release from active duty. *If Newly Separated Veteran, please provide date of discharge or date released from active duty*

_____ **Other Covered Veteran:** (defined as a veteran who served on active duty during a war or in a campaign or expedition for which a campaign badge has been authorized).

# Exhibit 4



## Employee Handbook Acknowledgement

**Please Sign and Return This Acknowledgement Within One Week of Receipt**

I acknowledge that I have reviewed a copy of Frontier's Employee Handbook. I understand that the Employee Handbook contains important information about Frontier's personnel policies and my privileges, benefits and obligations as an employee. I acknowledge that I am required to read, understand, and comply with the policies as set forth in the Employee Handbook. I further understand that Frontier may change, rescind, or modify the Employee Handbook at its sole discretion, at any time, with or without prior notice.

I understand and acknowledge that I have no express or implied employment contract for any specified term with Frontier and that any benefits, policies, or procedures extended or implemented by Frontier are not intended to and do not create an express or implied contract of employment. I further understand that my employment relationship with Frontier is at-will. This means that Frontier and I each have the right to terminate the employment relationship at any time, with or without notice, with or without cause, for any reason whatsoever. Frontier does not promise that my employment relationship will continue for a set period of time or specific term, or that my employment relationship can be terminated only under particular circumstances. Frontier reserves discretion to change my rate of pay, hours of work, benefits, and job duties, and to impose disciplinary action when warranted.

I understand that during the period of my employment, no representative of Frontier other than the CEO or Board of Directors, has the authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing and that any such agreement must be in writing and signed by the CEO or Board of Directors and me.

I further understand and agree that this Acknowledgment of reviewing of the Employee Handbook contain a full and complete statement of the agreements and understandings that they recite, and that this Employee Handbook supersedes and replaces any earlier handbooks, personnel manuals, policies, practices, guidelines, written or oral descriptions of the terms or conditions of my employment and any previous agreements, whether written or oral, express or implied, relating to the subjects covered in this Acknowledgment and Employee Handbook.

Frontier Integrity Solutions Human Resources Department

Main Telephone Number: 918-246-7709

_____
Signature

_____
Printed Name

Date  4/11/17

*(Please return the acknowledgement Page to Human Resources)*

# Exhibit 5

# *Pipeline Testing Consortium, Inc.*

www.pipelinetesting.com

DOT Drug/Alcohol History Check

9 Compound Drive  •  Hutchinson, Kansas 67502  •  (800) 294-8758  •  FAX (620) 665-6376

## Applicant Authorization to Release DOT Drug/Alcohol Test Results
### SECTION 1: TO BE COMPLETED BY APPLICANT

Applicant/Employee: **Nicholas Nimmo**

Company Name: FIS OPERATIONS DBA FRONTIER INTEGRITY SOLUTIONS

I understand that as a condition of hire with the above named "Company", that I must consent to the release of all DOT mandated drug and alcohol information from all of the employers for which I worked in a DOT safety-sensitive position, or for which I took a DOT pre-employment drug test, during the previous two (2) years as required by DOT Part 40.25, (or three (3) years as required by Part 391.23 for any driver of a commercial motor vehicle). Pipeline Testing Consortium, Inc. (PTC), acting as the agent/representative for the hiring Company, will receive the information.

A Commercial Driver's License (CDL) is required for my employment: ☒ No   ☐ Yes

Check boxes only if applicable

☐ I have NOT worked in a DOT safety-sensitive position for a DOT regulated company in the past 2 years (3 years for CMV drivers, 5 years for pilots). Proceed to sign and date form below.

☐ I have tested positive, or refused to test, on a DOT pre-employment drug or alcohol test for an employer who did not hire me in the past two years (3 years for CMV drivers, 5 years for pilots). Please specify the company for which this occurred below.

I hereby authorize the following previous employer / company to furnish to PTC the DOT information requested in section 2 below.

Previous DOT Employer: **Houston Inspection Field Services**

Address: **7670 Woodway Dr**   City: **Houston**   St: **TX**   Zip: **77063**

Phone: **713-781-1230**   Fax: ___   E-mail: ___

Contact: ___   Dates of Employment: **4/16** to **2/17**

*(Complete additional form for each previous DOT employer)*

Certification: I have read and fully understand this authorization to release my previous drug and alcohol test information, identified by the questions below, to Pipeline Testing Consortium, Inc. I hereby acknowledge that failure to provide accurate information in response to this request for release of information could negatively affect my employment offer or subject me to disciplinary action up to and including termination if later discovered after my employment with the Company begins.

**Nic J Nimmo**   **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**   **4/13/17**
Signature of Applicant   SSN   Date

---

**Fax completed form(s) to the PTC HISTORY CHECK DEPT # 620-665-6376 or E-mail to: history@pipelinetesting.com**

## Release of Previous Employer's DOT Drug/Alcohol Testing Results
### SECTION 2: TO BE COMPLETED BY PREVIOUS EMPLOYER

In accordance with DOT regulations, the Company, named above, is required to obtain – and as a Previous Employer, you are required to release – DOT drug and alcohol information, listed below, concerning the Applicant/Employee, named above. This information request covers any period of employment of the Applicant/Employee by you going back 2 years (3 years for CMV drivers), from the date of this request. Please complete the following:

| YES | NO | |
|---|---|---|
| ___ | ___ | 1. Any DOT alcohol test results of 0.04 or greater? |
| ___ | ___ | 2. Any DOT positive drug test results? |
| ___ | ___ | 3. Refusal to submit to a DOT required drug / alcohol test? (incl. adulterated or substituted results) |
| ___ | ___ | 4. Other violations of DOT drug and alcohol testing regulations? |
| ___ | ___ | 5. Did a previous employer report a drug / alcohol rule violation to you? |
| ___ | ___ | 6. If "yes" for any of the above items, did the employee complete the return-to-duty process?* |
| | ☐ | 7. Was the Applicant/Employee employed by you but NOT subject to DOT regulations? |

*Note: If "yes" for item 5, you must provide the previous employer's report. If you answered "yes" for item 6, you must also transmit the appropriate return-to-duty documentation (e.g., SAP report(s), follow-up testing record).

| Name of Person Completing Form | Title | Phone | Date |
|---|---|---|---|

*A reproduction of this authorization shall be deemed as effective and valid as an original. Rev. 2016

# Exhibit 6



Appendix E
FIS Operations LLC., dba Frontier Integrity Solutions Anti-Bribery and Corruption Policy

## EMPLOYEE ACKNOWLEDGMENT STATEMENT
## ANTI-BRIBERY AND CORRUPTION POLICY

I acknowledge that I have received and reviewed the *Anti-Bribery and Corruption Policy* (the "Policy") of Frontier Integrity Solutions (the "Company"). I fully understand that, as an employee, I have an obligation to adhere to these policies and principles. In particular, I acknowledge and affirm that:

1.  In carrying out my responsibilities for the Company, I shall not pay, offer or promise to pay, or authorize the payment directly or indirectly through any other person or firm, of any money or anything of value to any government official or employee, public international organization officer or employee, political party or official of such party, or any candidate for political office, for the purpose of inducing or rewarding favorable action or the exercise of influence by such official, party or candidate or the securing of any improper advantage.

2.  In carrying out my responsibilities for the Company, I shall ensure that all accounting records, expenditures, expense reports, invoices, vouchers, gifts, business entertainment, and any other business records are accurately and reliably reported and recorded. I shall also ensure that all payments by or on behalf of the Company are made only on the basis of appropriate supporting documentation and for the purposes specified in the documentation.

3.  In carrying out my responsibilities for the Company, I have not violated the provisions of Paragraphs 1 and 2 above, and I am not aware of any violations which have been committed by other employees of the Company or by any agent, representative or consultant of the Company.

4.  When I have a concern about a possible violation of the Policy, I will report the concern to my supervisor, the Director (or Head) of Internal Audit (as the designee of the Audit Committee of the Board of Directors), the Chief Compliance Officer.

5.  I understand that violations of the Policy will result in disciplinary action by the Company, including termination from employment, personal financial penalties and other disciplinary actions, as appropriate.

6.  Signing this Acknowledgment Statement does not directly or indirectly confer any right of employment nor in any manner alter the Company's policy of employment at will.

Nicholas Nimmo
Printed Name

Signature of Employee

4/13/17
Date

# Exhibit 7



# FIS Operations LLC dba Frontier Integrity Solutions
# Code of Ethics and Business Conduct
# Employee Certification

FIS Operations LLC., dba Frontier Integrity Solutions (the "Company") is committed to adhering to the highest ethical standards with respect to its management and the disclosure of information in connection with the business and operations of the Company. Accordingly, as an employee of the Company, I have received and reviewed the Company's Code of Ethics and Business Conduct (the "Code of Ethics"), which provides principles to which I am expected to adhere and advocate. The Code of Ethics embodies rules regarding individual and peer responsibilities, as well as responsibilities to the Company, the shareholders and the public. I certify to you that I adhere to and advocate the Code of Ethics, including the following principles and responsibilities governing my professional and ethical conduct, to the best of my knowledge and ability:

1. I actively engage in and promote honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships.

2. I avoid conflicts of interest and disclose to the appropriate persons with the Company any material transaction or relationship that reasonably could be expected to give rise to such a conflict.

3. I respect the confidentiality of information acquired in the course of business except when authorized or otherwise legally obligated to disclose the information. I acknowledge that confidential information acquired in the course of business is not to be used for personal advantage.

4. I promote the protection and preservation of the Company's assets and resources, strive to ensure their efficient use and assist the Company in its efforts to control costs.

5. I conduct myself with fairness, honesty, integrity and professionalism; proactively promote such ethical behavior among employees at the Company and as a responsible partner with industry peers and associates and endeavor to deal fairly with the Company's customers, suppliers, competitors and employees.

6. I provide communications that are both accurate and forthright when promoting the Company and its products.

7. I act in good faith, responsibly, with due care, competence and diligence, without misrepresenting material facts or allowing my independent judgment to be subordinated.



401 E. Broadway Street; Suite 200, Sand Springs, OK 74063 ● (918) 246-7100 ● FAX: (918) 512-4992
The contents of this document are considered proprietary and confidential and should not be disclosed, copied or excerpted, in whole or in part, without the expressed written permission of FIS Operations LLC dba Frontier Integrity Solutions.



8. I will not (a) use for personal gain or take for myself opportunities that are discovered through the use of Company property, information or position; (b) use Company property, information or position for personal gain; or (c) compete with the Company.

9. I will promptly report to the appropriate persons with the Company or the Board of Directors any violations of the Code of Ethics of which I become aware.

10. I am accountable for adherence to the Code of Ethics.

Signature: *Nick Nimmo*

Name: *Nicholas Nimmo*

Title: *Utility III*

Date: *4/13/17*

Plan Revision Date: January 4,

## VIII. Appendix A -- Acknowledgement/Receipt Form

I acknowledge, by signing this form, that my full compliance with the Anti-Drug and Alcohol Misuse Prevention Plan (the "Plan") and DOT drug and alcohol regulation requirements is a condition of my initial and continued employment with the Company. I understand and agree that I may be discharged or otherwise disciplined for any drug and/or alcohol violation, committed by me, as cited in the Plan and/or in the DOT drug and alcohol regulatory requirements.

I also acknowledge, by signing this form, that a copy of the Plan has been made available to me and that I have read and understand the requirements of the Company and DOT drug and alcohol program. I have also been provided with informational material on the dangers and problems of drug abuse and alcohol misuse.

Signed, this the 13 day of April , 20 17 .

Nicholas Nimmo
**Employee Name (Please Print)**

N. of Nimmo
**Employee Signature**

Don Brophy
**Company Representative Name (Please Print)**

Don Brophy
**Company Representative Signature**

# Exhibit 8



## ACKNOWLEDGEMENT

## CONTRABAND AND DRUG/ALCOHOL-FREE WORKPLACE POLICY

By my signature below, I hereby acknowledge that I have read and understand the drug/alcohol screening and contraband policy of **Frontier Integrity Solutions**, which outlines the Company's position regarding the use or possession of drugs, alcohol, contraband and related items. Frontier's stance is '*No Tolerance.*' I understand that the Company requires employees to submit specimens to be analyzed for the presence of drugs/alcohol. I realize that the presence of a detectable trace of any unauthorized substance is grounds for disciplinary action, including termination of my employment.

The use, consumption, possession, distribution or sale of illegal drugs, or any legal drug used illegally or misuse of alcohol while on duty, on or off Company property, is strictly prohibited. Furmanite also prohibits contraband including firearms, ammunition, explosives, weapons; and illicit drug equipment or paraphernalia. Company property, within the meaning of this policy, shall include, but is not limited to, all land, occupied or vacant buildings, structures, installation, automobiles, trucks, or any other vehicle operated for Company purposes and Customer's property. Any individual found to be in violation of this policy will be subject to immediate disciplinary action from the Company relevant to all applicable local, state, and federal regulations in effect at the time.

**Illegal or prohibited substances include:**

    a. A drug which is not legally obtainable;
    b. A drug which is legally obtainable, but has not been legally obtained.
    c. Prescription medication taken illegally (expired or prescribed for someone else).
    d. Misuse of Alcohol.

By my signature below, I also give my permission to Frontier Integrity Solutions, to send out, on an as needed basis, drug/alcohol results as requested by our customers.

*I agree to abide by this Program as a condition of employment and understand that any violation of this Program may subject me to disciplinary action, up to and including termination of employment.*

_____    _____
        Signature                                                        Date
                                                               4/13/17

_____
        Name (Printed)

# Exhibit 9



## TRADE SECRETS, CONFIDENTIAL INFORMATION AND
## INVENTION ASSIGNMENT AGREEMENT

I, the undersigned employee, hereby execute and deliver this Trade Secrets, Confidential Information and Invention Assignment Agreement ("Agreement") as of April 3, 2017 in favor and for the benefit of by FIS Operations LLC dba Frontier Integrity Solutions and Affiliates (collectively referred to herein as "Frontier" or "the Company"). I acknowledge that the Company considered and relied upon my willingness to sign, execute and abide by the terms of this Agreement in continuing my employment with the Company, and that my continued employment constitutes good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

1.    **Definitions.**

For purposes of this Agreement, "Affiliate" means, with respect to any individual, corporation, partnership, limited liability company, association, trust or other entity or organization (each, a "Person"), any other Person directly or indirectly controlling, controlled by, or under common control with such Person.

For purposes of this Agreement, "Parent Entity" means FIS Holdings, LLC, and/or any of its Affiliates.

2.    **Confidential Information.**

With respect to confidential or proprietary information and/or trade secrets that I have access to or acquire by any means during the course of my employment with the Company, including confidential and proprietary information and/or trade secrets belonging to any Parent Entity, I agree that:

(a)    I am currently aware of and will continue, during the course of my ongoing employment, to acquire further access to and familiarity with confidential or proprietary information and/or trade secrets ("Confidential Information") that is valuable and gives a competitive advantage to the Company.

(b)    For the purposes of this Agreement, "Confidential Information" shall include any and all (i) confidential knowledge, data or information related to the Company's or the Parent Entities' business or actual or anticipated research or development, including, but not limited to, business and strategic plans; methodologies and methods of doing business; software programs and subroutines; computer source and object code; algorithms; technology; data; formulae; programs; improvements; discoveries; developments, designs, and techniques; manufacturing know-how; product development and other research information; sources of supply; customer and vendor relationships and agreements; information regarding competitors; marketing, sales and expansion plans; financial plans and other financial information; pricing forecasts; cost margin analyses; management agreements; contractual agreements; intellectual property rights; copyrights; and trade secrets; (ii) information regarding the personal data, skills and/or compensation of the Company's or any Parent Entity's employees, contractors, and any other service providers; (iii) any other confidential information of the Company or any Parent Entity, including but not limited to any confidential information acquired by the Company from Furmanite America, Inc. and (iv) any confidential information of third parties to which the Company or Parent Entity has confidentiality obligations and use restrictions.



(c)     Both during and after my employment with the Company, I will retain all Confidential Information in strict confidence and in compliance with the specific terms and conditions of this Agreement and will not, directly or indirectly, disclose, divulge or communicate in any manner the Confidential Information I have acquired during my employment with the Company to any third person, nor will I use Confidential Information for any purpose but for the benefit of the Company. During my employment with the Company, (i) I will use Confidential Information only to the extent necessary to enable me to perform my assigned duties of the Company; (ii) I will take steps to protect any Confidential Information and/or other Company-related data on my Company-issued computer and other equipment; and (iii) I will not remove from the Company's business premises or reproduce any documents, recordings, data or materials containing or embodying any Confidential Information, except to the extent such removal and/or reproduction is appropriate for, and directly in connection with, the performance by me of my assigned duties for the Company, and in the event of such permitted removal or reproduction, I shall take all reasonable steps to safeguard such materials. Upon the termination of my employment, I agree to return to the Company immediately, and not retain, all Confidential Information, documents, images, or audio/video recordings or other data that contain Confidential Information, whether in electronic form or hard copy, and all copies thereof, and to provide written verification that I have complied in full with this requirement.

(d)     Notwithstanding anything in this Agreement, I may disclose, without violating the terms of this Agreement, Confidential Information that I am specifically required by court order, subpoena or law to disclose, but I agree to disclose only that portion of Confidential Information that is legally required to be disclosed.

(e)     As required by the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1833(b), I acknowledge that I will not be held criminally liable or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made under circumstances described therein, including: (1) in confidence to a government official or an attorney for the sole purpose of reporting or investigating a suspected violation of law; (2) in a complaint or other document filed in a legal proceeding, so long as such document is filed under seal; or (3) should I file a lawsuit against the Company for purported retaliation for reporting a suspected violation of law, then to my attorney, or in that court proceeding, so long as any document I file containing the trade secret is filed under seal and I do not disclose the trade secret except pursuant to court order. Unless expressly provided, the DTSA does not authorize, or limit liability for, an act that is otherwise prohibited by law, such as the unlawful access of material by unauthorized means.

(f)     I acknowledge and agree that the Company owns all right, title, and interest in and to all Confidential Information (except as set forth in Section 2(b)(iv)). I hereby assign and agree to assign to the Company any rights I may have or acquire in any and all Confidential Information and recognize that all Confidential Information shall be the sole and exclusive property of the Company.

3.     **Inventions and Intellectual Property.**

(a)     I have attached hereto, as Exhibit 1, a list describing in full detail (or in as much detail as possible, consistent with my obligation (if any) to maintain the confidentiality of other entities' proprietary materials and trade secrets) all inventions, original works of authorship, developments, improvements, patents, and trade secrets which were first conceived, reduced to practice, made or fixed in a tangible form by me prior to my service with the Company, which I now own or in which I maintain a controlling interest, either directly or indirectly, which relate to any matter, thing process or method connected in any way with my work or with tests carried on by the Company, or which is within the scope of their business, products or research and development, and which are not assigned to the Company hereunder (collectively referred to as "Prior IP"). If I fail to provide such a list, it shall be presumed that

2



Confidential

there is no such Prior IP. I will not, without the Company's prior written consent, incorporate or permit to be incorporated any Prior IP into any invention, discovery, original work of authorship, development, concept of improvement, trade secret, and all other patent, trademark, copyright and other intellectual property rights created by or behalf of the Company (collectively referred to as "New IP"). Nevertheless, if Prior IP at any time (i) is incorporated into a Company product, process or machine, or (ii) is useful to the Company in its business, the Company is hereby granted a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license (i) to reproduce, create derivative works, distribute, publicly perform, publicly display, digitally transmit, and otherwise use the applicable Prior IP in any medium or format, whether now known or hereafter discovered; (ii) to make, have made, modify, use and sell, offer to sell, import, and otherwise exploit any product or service based on, embodying, incorporating, or derived from, in whole or in part, the applicable Prior IP; and (iii) to exercise any and all other present or future rights in the applicable Prior IP.

(b)     Furthermore, I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all right, title, and interest in and to any and all New IP made, conceived, reduced to practice or developed by me (whether alone or jointly with others), which relates to any matter, thing process or method connected in any way with my work or with tests carried on by the Company, or which is within the scope of the Company's business, products or research and development, whether or not patentable or registerable under copyright or similar laws during my employment with the Company. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of service with the Company and which are protected by copyright are "works made for hire," as that term is defined in the United States Copyright Act. If any intellectual property rights, including moral rights, in any New IP cannot (as a matter of law) be assigned by me to the Company then (i) I unconditionally and irrevocably waive the enforcement of such rights and all claims and causes of action of any kind against the Company or any of its customers, licensees, successors, assigns or nominees with respect to such rights; and (ii) to the extent I cannot (as a matter of law) make such waiver, I unconditionally grant to the Company an exclusive, royalty-free, irrevocable, perpetual, worldwide license under any and all such intellectual property rights (A) to reproduce, create derivative works, distribute, publicly perform, publicly display, digitally transmit, and otherwise use the applicable New IP in any medium or format, whether now known or hereafter discovered; (B) to make, have made, modify, use and sell, offer to sell, import, and otherwise exploit any product or service based on, embodying, incorporating, or derived from, in whole or in part, the applicable New IP; and (C) to exercise any and all other present or future rights in the applicable New IP.

(c)     I agree to assign to the United States government all my right, title, and interest in and to any and all inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

(d)     I agree to maintain adequate and current written records of all New IP made by me (solely or jointly with others) during the term of my service with the Company and to disclose all New IP promptly to the Company. The records will be in a form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

(e)     I agree to assist the Company or its designee, at the Company's expense, in every proper way to secure Company's rights in the New IP and any copyrights, patents, or other intellectual property rights relating thereto in any all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and

3



Confidential

obtain such rights in an order to assign and convey to the Company, its successors, assigns and nominees the sole and exclusive rights, title and interest in such New IP, and any copyrights, patents, or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed when it is in my power to do so, any such instrument, or papers shall continue after the termination of my employment. I will also give all reasonable assistance to the Company, or its designee, regarding any litigation or controversy in connection with the New IP, all expenses incident thereto to be assumed by the Company. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyrighted registrations covering New IP or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agents and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by me.

(f)     I understand that the provisions of this Agreement requiring assignments of New IP to the Company do not apply to any invention which qualifies fully under the type of provisions delineated in the California Labor Code Section 2870 (attached as Exhibit 2) or comparable state law. I will advise the Company promptly in writing of any inventions that I believe meet the criteria in California Labor Code Section 2870 and are not otherwise disclosed on Exhibit 1.

4.     **Confidential Information of Outside Entities.**

(a)     I agree that I will not, during my employment with the Company, improperly use or disclose any confidential, proprietary, or trade secret information of any of my former employers or other entities or persons to whom I have confidentiality obligations, with the exception of any such information previously owned or possessed by Furmanite America, Inc., nor shall I cause any such information to enter the servers, email systems, or other physical or electronic premises of the Company. I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

(b)     I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

5.     **Conflicting Employment.** I represent that my employment with the Company does not and will not breach any agreement with any former employer or other third party, including any non-compete agreement or any agreement to keep in confidence or refrain from using information acquired by me prior to my employment by Company. I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of my employment.

6.     **Returning Company Documents.** I agree that at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) all Confidential Information, including but not limited to any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, documents or other forms of stored information, or reproductions of any aforementioned items

4



developed by me pursuant to my employment with the Company or otherwise belonging to or obtained during my work for the Company. In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto as Exhibit 3.

7.    **Notification of New Employer.** In the event that I leave the employ of the Company, I hereby consent to notification by the Company to my new employer of my rights and obligations under this Agreement.

8.    **Non-Solicitation.**

(a)    Employees. I agree that while employed and for a period of two (2) years immediately following the termination of my relationship with the Company for any reason, whether such termination occurs at my instigation or the instigation of the Company, I shall not either directly or indirectly, on my own behalf or on behalf of any individual or entity, recruit, solicit, hire or attempt to recruit, solicit, or hire, directly or by assisting others, any persons employed by or associated with the Company, nor shall I contact or communicate with any such persons for the purpose of inducing such persons to terminate their employment or association with the Company. For purposes of this covenant, the "persons" covered by this prohibition include permanent employees, temporary employees, or consultants who were employed by, doing business with, or associated with the Company within six (6) months of the time of the attempted recruiting, solicitation, or hiring.

(b)    Third Parties. I agree that while employed and for a period of two (2) years immediately following the termination of my employment with the Company for any reason, whether such termination occurs at my instigation or the instigation of the Company, I shall not directly or indirectly, on my own behalf or on behalf of any individual or entity, solicit, induce, or attempt to solicit or induce, the business of any distributor, vendor, supplier or contractor of the Company (i) in a manner that damages or disrupts the Company's relationship with such party or (ii) in a manner that persuades or causes a party to discontinue that party's relationship with or to the Company, or to reduce the volume of business it does or reduce the level of services it provides to the Company.

(c)    Clients and Customers. I agree that for two (2) years immediately following the termination of employment with the Company for any reason, whether such termination occurs at my instigation or the instigation of the Company, I shall not, directly or indirectly, on my own behalf or on behalf of any individual or entity:

(i)    Solicit the sale of products or services that are the same or similar to the Business of the Company to any Customer or Prospective Customer;

(ii)    Request, advise, induce or attempt to induce any past or present Customer of the Company to alter, limit, decrease or cancel their business with the Company;

(iii)    When used herein, "Customer" means any entity for which Company has supplied products or services at any time in the previous three (3) year period. When used herein "Prospective Customer" means any individual or entity, with whom Company had discussions or negotiations (however extensive or numerous the contact, and whether or not resulting in business) concerning Company's products or services, within the previous one (1) year period. When used herein, "Business of the Company" means (A) any service or product offered by the Company during Employee's employment with the Company and (B) any prospective service or product to be offered by the Company of which Employee either had actual knowledge or access to relevant Confidential Information regarding such prospective service or product during employment with the Company.

5



**Confidential**

9.    **Representations and Acknowledgments.**

(a)    I acknowledge that the foregoing restrictions will not prevent me from obtaining gainful employment in my occupation or field of expertise or cause me undue hardship; and that there are numerous other employment and business opportunities available to me that are not affected by the foregoing restrictions. I further acknowledge that the foregoing restrictions are reasonable and necessary in order to protect the Company's legitimate interest, and that any violation thereof would result in serious and irreparable injury to the Company.

(b)    I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent that I am not restricted or prevented by any agreement from working for the Company and that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence confidential and proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith. I further acknowledge and represent that I have been given the opportunity to discuss this Agreement with my own legal counsel and have availed myself of that opportunity to the extent I wish to do so.

(c)    I expressly acknowledge that new fair and valuable consideration has been given by the Company and received by me including, without limitation, being employed by the Company and being entitled to participate in the Company's benefit plans, to the extent eligible. Such consideration being adequate and sufficient to bind me to all of the covenants made by me under this Agreement.

10.    **Liability for Disclosure of Confidential Information.**

I acknowledge that each of the restrictions contained in this Agreement relating to the non-disclosure of Confidential Information is reasonable and necessary in order to protect the legitimate and reasonable competitive business interests of the Company and that any violation of these restrictions would cause irreparable injury to the Company. I acknowledge and agree that in the event of a violation of these restrictions, the Company shall be authorized and entitled to obtain from any court of competent jurisdiction preliminary and permanent injunctive relief as described in Section 11, as well as an equitable accounting of all profits and benefits arising out of such violation and any damages resulting from the breach which may be applicable. These rights and remedies shall be independent, severable and cumulative and shall be in addition to any other rights and remedies to which the Company may be entitled. I acknowledge that the covenants contained in this Section 1 and my liability for breach of such covenants and restrictions shall survive the expiration and the termination of my association with the Company.

11.    **Equitable Relief.**

I agree that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants set forth herein. Accordingly, I agree that if I breach any of such sections, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and/or ordering specific performance of any such provisions of the Agreement. I further agree that no bond or other security shall be required in obtaining such equitable relief, and I hereby consent to the issuance of such injunction and to the ordering of specific performance.



**Confidential**

12.    **General Provisions**

(a)     Any claim or judicial proceeding arising from or related to this Agreement initiated by me or by the Company shall be filed in a state or federal court located in the county in which I last worked on a regular basis for the Company in Oklahoma. Any such proceeding or claim shall be governed by Oklahoma law, without regard to Oklahoma choice-of-law principles.

(b)     The invalidity of any provision of this Agreement shall not affect the validity of the remainder of any such provision or other remaining provisions of this Agreement. Nothing contained in this document shall be construed to supersede, modify or affect the terms or provisions of any existing executive or employee benefit plan.

(c)     I acknowledge that this statement does not, and will not, alter my status as an at-will employee of the Company, and I understand that my employment is not guaranteed for any specified period, and that either the Company or I may terminate the employment relationship at any time for any reason, with or without cause, and with or without advance notice. I acknowledge that the at-will nature of my employment cannot be changed except through a writing signed by both me and the Company.

(d)     My decision to sign this Agreement was made voluntarily and freely, and in consideration of my continued employment with the Company and eligibility for the compensation and benefits connected therewith.

(e)     The provisions of this Agreement constitute the entire understanding and agreement of the parties as to the subject matter herein and there are no other oral or written understandings or agreements between the Company and me.

(f)     This Agreement may not be changed or amended except by a subsequent writing signed by both parties that specifically addresses the subject matter herein.

(g)     Any waiver or failure to enforce any provision of this Agreement on one occasion will not be deemed a waiver of that provision or any other provision on any other occasion.

(h)     This Agreement shall survive the termination of my employment and the assignment of this Agreement by Company to any successor or other assignee and be binding upon my heirs and legal representatives. I acknowledge and agree that the Company shall have the right to assign this Agreement, in whole or in part, at the Company's sole discretion.

Date: ____4/13/17_____

Signature _____

Nicholas Nimmo
Name of Employee (typed or printed)

7



Confidential

## EXHIBIT 1

## LISTS OF PRIOR IP

| Title: | Date: | Identifying Number and Description*: |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

___X___ No inventions or improvements

_____ Additional sheets attached

Signature of Employee: _N. of Nmmo_

Print Name of Employee: _Nicholas Nimmo_

Date: __4/13/17__

* Please describe in full detail or, if the Prior IP is confidential and/or proprietary, please describe in as much detail as possible, consistent with your obligation to maintain the confidentiality of such Prior IP. Additionally, please clearly indicate any and all Prior IP you believe meet the criteria set forth in California Labor Code Section 2870.

Ex. 1-1



Confidential

## EXHIBIT 2

## CALIFORNIA LABOR CODE SECTION 2870 EMPLOYMENT AGREEMENTS; ASSIGNMENT OF RIGHTS

"(a)      Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1)      Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2)      Result from any work performed by the employee for the employer.

(b)      To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."



Confidential

## EXHIBIT 3

## TERMINATION CERTIFICATION

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, or other document of property, or reproductions of any aforementioned items belonging to or obtained via my work for FIS Operations, LLC (dba Frontier Integrity Solutions and/or FIS ) (the "Company"), FIS Holdings, LLC, _____., and any of their affiliates.

I further certify that I complied with all the terms of the Company's policies and with the Trade Secrets, Confidential Information and Invention Assignment Agreement ("Agreement"), including the reporting of any inventions and original works of authorship (as defined therein), conceived or made by me (solely or jointly with others) covered by that Agreement.

I further agree that, in accordance with the Company's policies and in compliance with the Agreement, I will preserve as confidential, and will not use or disclose for any purpose, all Confidential Information (as defined in the Agreement) that I obtained in the course of my work for the Company.

I further agree that for the period of twenty four (24) months following the termination of my employment relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly: (a) personally or through any other person, encourage, induce, attempt to induce, recruit, solicit, attempt to solicit (on my own behalf or on behalf of any other person), or take any other action that is intended to induce or encourage, any Company Employee (as defined in the Agreement) who worked for the Company during my employment  to leave his or her employment or service with the Company; or (b) personally or through any other person, encourage, induce, attempt to induce, recruit, solicit, attempt to solicit (on my own behalf or on behalf of any other person), or take any other action that is intended to induce or encourage any Company Employee to engage in any activity in which I am prohibited from engaging.

Date:  ___4/13/17___      ___Nick Nimmo___
                          Employee Signature

                          ___Nicholas J Nimmo___
                          (Type/print Employee's Name)

Ex. 3 -1

# Exhibit 10



## DRIVING POLICY ACKNOWLEDGMENT FORM

*I acknowledge that I have received a copy of the Frontier Integrity Solutions, driving policy.*

I understand and agree to the following:

1.  I am responsible for reading and abiding by the rules set out in the policy and these regulations and that failure to follow will result in disciplinary action up to and including termination of employment.
2.  I will not drive any Frontier vehicle unless approved by my Operations or Department Manager.
3.  I am responsible for notifying my Operations or Department Manager should there be any change to the status of my driver's license.
4.  I am responsible for immediately notifying my Operations or Department Manager if I am involved in a vehicle accident involving a Frontier Integrity Solutions vehicle or while driving a personal vehicle for business.
5.  Company vehicles are to be used for the purpose of Frontier's business. Vehicles are not to be used for personal use.
    a.  Vehicle custodians are to drive vehicles to their homes and park them after the business day is complete.
    b.  Company vehicles are not to be used to move an employee's belongings from one residence to another.
    c.  If an employee is out of town on company business, the company vehicle is to be used to and from the job site. The employee may use the vehicle for transportation for the purpose of obtaining groceries/meals, laundry, and other errands that are necessary functions of life. This does not include social type activities (i.e. drinking in the local pub, etc.).

In the event the Company vehicle is involved in an accident while not on Company business, employee agrees (in addition to possible loss of driving privileges and/or discipline action) to reimburse Frontier for any expenses, damages or costs resulting from or connected with such accident. Further, employee agrees that the reimbursement amount may be deducted from paychecks or other sums due to employee, to the maximum amount allowed by law.

Accidents that are preventable such as backing, running stop signs, rear ending others, etc. will be investigated. If, through the course of the investigation, it is determined that the employee could have prevented said accident then the employee will be charged $1000.00 through payroll deduction. If it is determined that the employee is under the influence of drugs or alcohol at the time of the accident, whether or not the employee is found at fault, employment will be immediately terminated.

6.  Employees are to alert the Operations Manager to any repairs that may be required to keep the vehicle in good working order and are responsible for ensuring that all preventative maintenance is done on timely basis.
7.  Company vehicles are not to be used by non-employees of Frontier. Temporary employees, spouses, and children are not authorized drivers. Do not allow unauthorized drivers to operate the company vehicle at **ANY** time, including moving the vehicle from the driveway. Accidents have happened this way.
8.  Hired Casual Labor employees (those that are classified as employees on an as-needed basis, but paid with a Frontier check) are not to operate company vehicles.
9.  Operating a company vehicle while under the influence of drugs or alcohol is strictly prohibited.
10. *Company vehicles are to be operated only by licensed drivers. If a driver's license is suspended, he/she must immediately notify the Operations Manager/HR.*
11. In the event the employee operates a company vehicle after being denied authorization, he/she will be subject to disciplinary action, up to and including termination.
12. Employee acknowledges and agrees that he/she is responsible for any traffic violation fine and/or penalty.
13. By my signature below, I authorize Frontier Integrity Solutions to obtain information and reports with respect to my driving history as it pertains to my status to drive a company vehicle or personal vehicle for company business.



401 E. Broadway St.; Suite 200, Sand Springs, OK 74063 • (918) 246-7100 • FAX: (918) 512-4992
The contents of this document are considered proprietary and confidential and should not be disclosed, copied or excerpted, in whole or in part, without the expressed written permission of FS Operations LLC dba Frontier Integrity Solutions.



*Employees who do not strictly adhere to the regulations will be subject to disciplinary action, up to and including termination.*

*I have read and understand the preceding regulations for operating company vehicles.*

Nicholas Nimmo
PRINTED NAME

Nic Nimmo
SIGNATURE

4/13/17
DATE

The contents of this document are considered proprietary and confidential and should not be disclosed, copied or excepted, in whole or in part, without the expressed written permission of FIS Operations LLC dba Frontier Integrity Solutions.

# Exhibit 11



# Personal Safety Pledge

As an employee of Frontier Integrity Solutions, I realize that my actions and behaviors must reflect our company's core values and understand that they are significant to the success of the company. However, I also realize that unsafe behaviors or actions in violation of Frontier Integrity Solution's policy could result in personal injury, injury to other colleagues, and/or impact the professional reputation and financial goals of the company.

Therefore, I pledge to take responsibility for my actions and commit to perform my job safely, efficiently, and to the highest quality and ethical standards. I make this pledge to protect the environment and to ensure my own personal safety, as well as that of my colleagues and the general public.

In addition, if I witness work of poor quality, unsafe behaviors, or other actions which may be detrimental to the company and/or employees, it is not only my right, but my **obligation** to speak-out and voice the concern to the appropriate Supervisor or Manager.

To demonstrate my commitment, I take personal responsibility for the following:

- Perform every job safely and to the highest quality standards in a professional and ethical manner;
- Stop and question all unsafe work and conditions
- Report non-conforming conditions, workplace accidents, incidents and near misses immediately.
- Comply with all safety and quality policies and procedures;
- Perform thorough hazard assessments for every job;
- Wear the proper PPE at all times;
- Operate vehicles/equipment in a safe and responsible manner

By signing below, I pledge to take personal responsibility and accountability for my actions. I pledge to uphold safety and quality as core values of my work and understand that failure to abide by this pledge is a condition of my employment.

| | | |
|---|---|---|
| _Nicholas Nimmo_ | _N. Nimo_ | _4/13/17_ |
| Employee Name (Print) | Employee Signature | Date |
| _Deri Brophy_ | _Deri Brophy_ | _4/17/17_ |
| Manager Name (Print) | Manager Signature | Date |

# Exhibit 12



**Enrollment/Change Form**

... in Sand Springs Oklahoma.  Attach a voided
... account, ask your bank to give you the
... number on a savings deposit slip.  This will help ensure that
... necessary to complete this form can be found.

| | Checking Account # | Check #<br>(this number matches the number in<br>the upper right corner of the check—<br>not needed for sign-up) |
|---|---|---|

**Account Information**

The last item must be for the remaining amount owed to you if you choose to deposit your pay into more than one account.

Make sure to indicate what kind of account, along with the amount to be deposited, if less than your total net paycheck.

1.  Bank Name/City/State: **PS Bank   Wysox, PA**

    Routing/Transit #: ▓▓▓▓▓▓▓▓    Account Number: ▓▓▓▓▓▓▓▓

    ☒ Checking   ☐ Savings   ☐ Other     I wish to deposit: $_____ or ☒ Entire Net Amount

2.  Bank Name/City/State: _____

    Routing/Transit #: _____    Account Number: _____

    ☐ Checking   ☐ Savings   ☐ Other     I wish to deposit: $_____ or ☐ Entire Net Amount

3.  Bank Name/City/State: _____

    Routing/Transit #: _____    Account Number: _____

    ☐ Checking   ☐ Savings   ☐ Other     I wish to deposit: $_____ or ☐ Entire Net Amount

**Authorization Agreement**

I hereby authorize Frontier Integrity Solutions, either directly or through its payroll service provider, to deposit any amounts owed to me, by initiating credit entries to my account at the financial institution (hereinafter "Bank") indicated on this form.  Further, I authorize Bank to accept and to credit any credit entries indicated by Frontier Integrity Solutions, either directly or through its payroll service provider, to my account.  In the event that Frontier Integrity Solutions deposits funds erroneously into my account, I authorize Frontier Integrity Solutions, either directly or through its payroll service provider, to debit my account for an amount not to exceed the original amount of the erroneous error.  This authorization is to remain in full force and effect until Frontier Integrity Solutions and Bank have received written notice from me of its termination in such time and in such manner as to afford Frontier Integrity Solutions and Bank reasonable opportunity to act on it.

☒ I elect to waive pre-note

☐ I elect to stop my direct deposit

☐ I do not wish to select direct deposit

Employee Signature: *Nick Nimmo*                 Social Security #: ▓▓▓▓▓▓▓▓

Employee Name: *Nicholas J. Nimmo*              Date: 4/13/17

# Exhibit 13



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 07/31/2017 |
| Period End Date | 08/06/2017 |
| Pay Date | 08/11/2017 |
| Document | 5630 |
| Net Pay | $1,719.11 |

## Pay Details

| Nicholas J Nimmo | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Employee Number | 602293 | Pay Group | FIS - Weekly | Federal Income Tax | M | 1 |
| | SSN | XXX-XX-XXXX | Location | Monroeville, IN | PA State Income Tax (Residence) | M | 0 |
| | Job | Inspector | Department | D800 - Field Services | IN State Income Tax (Work) | M | 0 |
| USA | Pay Rate | $0.00 | | | | | |
| | Pay Frequency | Weekly | | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| Comm Equip Exp | | | $90.00 | $3,000.00 |
| Equipment | | | $360.00 | $12,000.00 |
| Mileage | | | $278.74 | $3,916.22 |
| Non Taxable Per | | | $567.00 | $20,601.00 |
| Regular - Days | 3.0000 | $0.0000 | $513.00 | $17,100.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee | | Employer | |
|---|---|---|---|---|---|---|
| | | | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $513.00 | $26.88 | $1,670.73 |
| Employee Medicare | $513.00 | $7.44 | $247.95 |
| Social Security Employee Tax | $513.00 | $31.81 | $1,060.20 |
| IN State Income Tax | $513.00 | $16.57 | $552.31 |
| Allen | $513.00 | $6.93 | $230.85 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxxx9663 | Checking | $1,719.11 |
| Total | | $1,719.11 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $1,808.74 | $513.00 | $89.63 | $0.00 | $1,719.11 |
| YTD | $56,617.22 | $17,100.00 | $3,762.04 | $0.00 | $52,855.18 |



FRONTIER INTEGRITY
SOLUTIONS

401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
| --- | --- |
| Period Start Date | 07/24/2017 |
| Period End Date | 07/30/2017 |
| Pay Date | 08/04/2017 |
| Document | 5316 |
| Net Pay | $3,024.19 |

## Pay Details

| Nicholas J Nimmo | Employee Number | 602293 | Pay Group | FIS - Weekly | Federal Income Tax | M 1 |
| --- | --- | --- | --- | --- | --- | --- |
| | SSN | XXX-XX-XXXX | Location | Monroeville, IN | PA State Income Tax (Residence) | M 0 |
| | Job | Inspector | Department | D800 - Field Services | IN State Income Tax (Work) | M 0 |
| USA | Pay Rate | $0.00 | | | | |
| | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
| --- | --- | --- | --- | --- |
| Comm Equip Exp | | | $180.00 | $2,910.00 |
| Equipment | | | $720.00 | $11,640.00 |
| Mileage | 0.0000 | $0.0000 | $0.00 | $3,637.48 |
| Non Taxable Per | | | $1,323.00 | $20,034.00 |
| Regular - Days | 6.0000 | $0.0000 | $1,026.00 | $16,587.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee Current | Employee YTD | Employer Current | Employer YTD |
| --- | --- | --- | --- | --- | --- | --- |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
| --- | --- | --- | --- |
| Federal Income Tax | $1,026.00 | $99.33 | $1,643.85 |
| Employee Medicare | $1,026.00 | $14.88 | $240.51 |
| Social Security Employee Tax | $1,026.00 | $63.61 | $1,028.39 |
| IN State Income Tax | $1,026.00 | $33.14 | $535.74 |
| Allen | $1,026.00 | $13.85 | $223.92 |

## Paid Time Off

| Plan | Current | Balance |
| --- | --- | --- |
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
| --- | --- | --- |
| xxxxxx9663 | Checking | $3,024.19 |
| Total | | $3,024.19 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
| --- | --- | --- | --- | --- | --- |
| Current | $3,249.00 | $1,026.00 | $224.81 | $0.00 | $3,024.19 |
| YTD | $54,808.48 | $16,587.00 | $3,672.41 | $0.00 | $51,136.07 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
| --- | --- |
| Period Start Date | 07/17/2017 |
| Period End Date | 07/23/2017 |
| Pay Date | 07/28/2017 |
| Document | 5030 |
| Net Pay | $3,024.20 |

## Pay Details

| Nicholas J Nimmo | | | | | |
| --- | --- | --- | --- | --- | --- |
| | Employee Number | 602293 | Pay Group | FIS - Weekly | Federal Income Tax | M  1 |
| | SSN | XXX-XX-XXXX | Location | Monroeville, IN | PA State Income Tax (Residence) | M  0 |
| | Job | Inspector | Department | D800 - Field Services | IN  State Income Tax (Work) | M  0 |
| USA | Pay Rate | $0.00 | | | |
| | Pay Frequency | Weekly | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
| --- | --- | --- | --- | --- |
| Comm Equip Exp | | | $180.00 | $2,730.00 |
| Equipment | | | $720.00 | $10,920.00 |
| Mileage | 0.0000 | $0.0000 | $0.00 | $3,637.48 |
| Non Taxable Per | | | $1,323.00 | $18,711.00 |
| Regular - Days | 6.0000 | $0.0000 | $1,026.00 | $15,561.00 |

Total Hours  0.0000

## Deductions

| | | | Employee | | Employer | |
| --- | --- | --- | --- | --- | --- | --- |
| Deduction | Based On | Pre-Tax | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
| --- | --- | --- | --- |
| Federal Income Tax | $1,026.00 | $99.33 | $1,544.52 |
| Employee Medicare | $1,026.00 | $14.87 | $225.63 |
| Social Security Employee Tax | $1,026.00 | $63.61 | $964.78 |
| IN State Income Tax | $1,026.00 | $33.14 | $502.60 |
| Allen | $1,026.00 | $13.85 | $210.07 |

| Paid Time Off | | | Net Pay Distribution | | |
| --- | --- | --- | --- | --- | --- |
| Plan | Current | Balance | Account Number | Account Type | Amount |
| No records found | | | xxxxxx9663 | Checking | $3,024.20 |
| | | | Total | | $3,024.20 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
| --- | --- | --- | --- | --- | --- |
| Current | $3,249.00 | $1,026.00 | $224.80 | $0.00 | $3,024.20 |
| YTD | $51,559.48 | $15,561.00 | $3,447.60 | $0.00 | $48,111.88 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 07/10/2017 |
| Period End Date | 07/16/2017 |
| Pay Date | 07/21/2017 |
| Document | 4705 |
| Net Pay | $3,024.19 |

## Pay Details

| Nicholas J Nimmo | | Employee Number | 602293 | Pay Group | FIS - Weekly | Federal Income Tax | M 1 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Monroeville, IN | PA State Income Tax (Residence) | M 0 |
| | | Job | Inspector | Department | D800 - Field Services | IN State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.00 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| Comm Equip Exp | | | $180.00 | $2,550.00 |
| Equipment | | | $720.00 | $10,200.00 |
| Mileage | 0.0000 | $0.0000 | $0.00 | $3,637.48 |
| Non Taxable Per | | | $1,323.00 | $17,388.00 |
| Regular - Days | 6.0000 | $0.0000 | $1,026.00 | $14,535.00 |

Total Hours  0.0000

## Deductions

| | | | Employee | | Employer | |
|---|---|---|---|---|---|---|
| Deduction | Based On | Pre-Tax | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $1,026.00 | $99.33 | $1,445.19 |
| Employee Medicare | $1,026.00 | $14.88 | $210.76 |
| Social Security Employee Tax | $1,026.00 | $63.61 | $901.17 |
| IN State Income Tax | $1,026.00 | $33.14 | $469.46 |
| Allen | $1,026.00 | $13.85 | $196.22 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxxx9663 | Checking | $3,024.19 |
| Total | | $3,024.19 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,249.00 | $1,026.00 | $224.81 | $0.00 | $3,024.19 |
| YTD | $48,310.48 | $14,535.00 | $3,222.80 | $0.00 | $45,087.68 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 07/03/2017 |
| Period End Date | 07/09/2017 |
| Pay Date | 07/14/2017 |
| Document | 4413 |
| Net Pay | $3,298.62 |

## Pay Details

| Nicholas J Nimmo | | Employee Number | 602293 | Pay Group | FIS - Weekly | Federal Income Tax | M 1 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Monroeville, IN | PA State Income Tax (Residence) | M 0 |
| | | Job | Inspector | Department | D800 - Field Services | IN State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.00 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| Comm Equip Exp | | | $210.00 | $2,370.00 |
| Equipment | | | $840.00 | $9,480.00 |
| Mileage | 0.0000 | $0.0000 | $0.00 | $3,637.48 |
| Non Taxable Per | | | $1,323.00 | $16,065.00 |
| Regular - Days | 7.0000 | $0.0000 | $1,197.00 | $13,509.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee Current | Employee YTD | Employer Current | Employer YTD |
|---|---|---|---|---|---|---|
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $1,197.00 | $124.98 | $1,345.86 |
| Employee Medicare | $1,197.00 | $17.36 | $195.88 |
| Social Security Employee Tax | $1,197.00 | $74.22 | $837.56 |
| IN State Income Tax | $1,197.00 | $38.66 | $436.32 |
| Allen | $1,197.00 | $16.16 | $182.37 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxxx9663 | Checking | $3,298.62 |
| Total | | $3,298.62 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,570.00 | $1,197.00 | $271.38 | $0.00 | $3,298.62 |
| YTD | $45,061.48 | $13,509.00 | $2,997.99 | $0.00 | $42,063.49 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
| --- | --- |
| Period Start Date | 06/26/2017 |
| Period End Date | 07/02/2017 |
| Pay Date | 07/07/2017 |
| Document | 4083 |
| Net Pay | $3,298.64 |

## Pay Details

| Nicholas J Nimmo | Employee Number | 602293 | Pay Group | FIS - Weekly | Federal Income Tax | M 1 |
| --- | --- | --- | --- | --- | --- | --- |
| | SSN | XXX-XX-XXXX | Location | Monroeville, IN | PA State Income Tax (Residence) | M 0 |
| | Job | Inspector | Department | D800 - Field Services | IN State Income Tax (Work) | M 0 |
| USA | Pay Rate | $0.00 | | | | |
| | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
| --- | --- | --- | --- | --- |
| Comm Equip Exp | | | $210.00 | $2,160.00 |
| Equipment | | | $840.00 | $8,640.00 |
| Mileage | 0.0000 | $0.0000 | $0.00 | $3,637.48 |
| Non Taxable Per | | | $1,323.00 | $14,742.00 |
| Regular - Days | 7.0000 | $0.0000 | $1,197.00 | $12,312.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee | | Employer | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
| --- | --- | --- | --- |
| Federal Income Tax | $1,197.00 | $124.98 | $1,220.88 |
| Employee Medicare | $1,197.00 | $17.35 | $178.52 |
| Social Security Employee Tax | $1,197.00 | $74.21 | $763.36 |
| IN State Income Tax | $1,197.00 | $38.66 | $397.66 |
| Allen | $1,197.00 | $16.16 | $166.21 |

## Paid Time Off

| Plan | Current | Balance |
| --- | --- | --- |
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
| --- | --- | --- |
| xxxxxx9663 | Checking | $3,298.64 |
| Total | | $3,298.64 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
| --- | --- | --- | --- | --- | --- |
| Current | $3,570.00 | $1,197.00 | $271.36 | $0.00 | $3,298.64 |
| YTD | $41,491.48 | $12,312.00 | $2,726.61 | $0.00 | $38,764.87 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 06/19/2017 |
| Period End Date | 06/25/2017 |
| Pay Date | 06/30/2017 |
| Document | 3750 |
| Net Pay | $3,298.63 |

## Pay Details

| Nicholas J Nimmo | | Employee Number | 602293 | Pay Group | FIS - Weekly | Federal Income Tax | M 1 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Monroeville, IN | PA State Income Tax (Residence) | M 0 |
| | | Job | Inspector | Department | D800 - Field Services | IN State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.00 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| Comm Equip Exp | | | $210.00 | $1,950.00 |
| Equipment | | | $840.00 | $7,800.00 |
| Mileage | 0.0000 | $0.0000 | $0.00 | $3,637.48 |
| Non Taxable Per | | | $1,323.00 | $13,419.00 |
| Regular - Days | 7.0000 | $0.0000 | $1,197.00 | $11,115.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee | | Employer | |
|---|---|---|---|---|---|---|
| | | | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $1,197.00 | $124.98 | $1,095.90 |
| Employee Medicare | $1,197.00 | $17.36 | $161.17 |
| Social Security Employee Tax | $1,197.00 | $74.21 | $689.13 |
| IN State Income Tax | $1,197.00 | $38.66 | $359.00 |
| Allen | $1,197.00 | $16.16 | $150.05 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxxx9663 | Checking | $3,298.63 |
| Total | | $3,298.63 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,570.00 | $1,197.00 | $271.37 | $0.00 | $3,298.63 |
| YTD | $37,921.48 | $11,115.00 | $2,455.25 | $0.00 | $35,466.23 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 06/12/2017 |
| Period End Date | 06/18/2017 |
| Pay Date | 06/23/2017 |
| Document | 3451 |
| Net Pay | $3,298.62 |

## Pay Details

| Nicholas J Nimmo | | Employee Number | 602293 | Pay Group | FIS - Weekly | Federal Income Tax | M 1 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Monroeville, IN | PA State Income Tax (Residence) | M 0 |
| | | Job | Inspector | Department | D800 - Field Services | IN State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.00 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| Comm Equip Exp | | | $210.00 | $1,740.00 |
| Equipment | | | $840.00 | $6,960.00 |
| Mileage | 0.0000 | $0.0000 | $0.00 | $3,637.48 |
| Non Taxable Per | | | $1,323.00 | $12,096.00 |
| Regular - Days | 7.0000 | $0.0000 | $1,197.00 | $9,918.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee Current | Employee YTD | Employer Current | Employer YTD |
|---|---|---|---|---|---|---|
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $1,197.00 | $124.98 | $970.92 |
| Employee Medicare | $1,197.00 | $17.36 | $143.81 |
| Social Security Employee Tax | $1,197.00 | $74.22 | $614.92 |
| IN State Income Tax | $1,197.00 | $38.66 | $320.34 |
| Allen | $1,197.00 | $16.16 | $133.89 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxxx9663 | Checking | $3,298.62 |
| Total | | $3,298.62 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,570.00 | $1,197.00 | $271.38 | $0.00 | $3,298.62 |
| YTD | $34,351.48 | $9,918.00 | $2,183.88 | $0.00 | $32,167.60 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 06/05/2017 |
| Period End Date | 06/11/2017 |
| Pay Date | 06/16/2017 |
| Document | 3144 |
| Net Pay | $3,510.50 |

## Pay Details

| Nicholas J Nimmo | | Employee Number | 602293 | Pay Group | FIS - Weekly | Federal Income Tax | M 1 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Monroeville, IN | PA State Income Tax (Residence) | M 0 |
| | | Job | Inspector | Department | D800 - Field Services | IN State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.00 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| Comm Equip Exp | | | $210.00 | $1,530.00 |
| Equipment | | | $840.00 | $6,120.00 |
| Mileage | | | $211.86 | $3,637.48 |
| Non Taxable Per | | | $1,323.00 | $10,773.00 |
| Regular - Days | 7.0000 | $0.0000 | $1,197.00 | $8,721.00 |

Total Hours 0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee Current | Employee YTD | Employer Current | Employer YTD |
|---|---|---|---|---|---|---|
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $1,197.00 | $124.98 | $845.94 |
| Employee Medicare | $1,197.00 | $17.35 | $126.45 |
| Social Security Employee Tax | $1,197.00 | $74.21 | $540.70 |
| IN State Income Tax | $1,197.00 | $38.66 | $281.68 |
| Allen | $1,197.00 | $16.16 | $117.73 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxxx9663 | Checking | $3,510.50 |
| Total | | $3,510.50 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,781.86 | $1,197.00 | $271.36 | $0.00 | $3,510.50 |
| YTD | $30,781.48 | $8,721.00 | $1,912.50 | $0.00 | $28,868.98 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
| --- | --- |
| Period Start Date | 05/29/2017 |
| Period End Date | 06/04/2017 |
| Pay Date | 06/09/2017 |
| Document | 2798 |
| Net Pay | $3,844.32 |

## Pay Details

Nicholas J Nimmo

USA

| Employee Number | 602293 | Pay Group | FIS - Weekly | Federal Income Tax | M  1 |
| --- | --- | --- | --- | --- | --- |
| SSN | XXX-XX-XXXX | Location | Monroeville, IN | PA State Income Tax (Residence) | M  0 |
| Job | Inspector | Department | D800 - Field Services | IN State Income Tax (Work) | M  0 |
| Pay Rate | $0.00 | | | | |
| Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
| --- | --- | --- | --- | --- |
| Comm Equip Exp | | | $210.00 | $1,320.00 |
| Equipment | | | $840.00 | $5,280.00 |
| Mileage | | | $545.70 | $3,425.62 |
| Non Taxable Per | | | $1,323.00 | $9,450.00 |
| Regular - Days | 7.0000 | $0.0000 | $1,197.00 | $7,524.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee | | Employer | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
| --- | --- | --- | --- |
| Federal Income Tax | $1,197.00 | $124.98 | $720.96 |
| Employee Medicare | $1,197.00 | $17.36 | $109.10 |
| Social Security Employee Tax | $1,197.00 | $74.22 | $466.49 |
| IN State Income Tax | $1,197.00 | $38.66 | $243.02 |
| Allen | $1,197.00 | $16.16 | $101.57 |

## Paid Time Off

| Plan | Current | Balance |
| --- | --- | --- |
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
| --- | --- | --- |
| xxxxxx9663 | Checking | $3,844.32 |
| Total | | $3,844.32 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
| --- | --- | --- | --- | --- | --- |
| Current | $4,115.70 | $1,197.00 | $271.38 | $0.00 | $3,844.32 |
| YTD | $26,999.62 | $7,524.00 | $1,641.14 | $0.00 | $25,358.48 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
| --- | --- |
| Period Start Date | 05/22/2017 |
| Period End Date | 05/28/2017 |
| Pay Date | 06/02/2017 |
| Document | 2496 |
| Net Pay | $3,679.03 |

## Pay Details

| Nicholas J Nimmo | | | | | |
| --- | --- | --- | --- | --- | --- |
| | Employee Number | 602293 | Pay Group | FIS - Weekly | |
| | SSN | XXX-XX-XXXX | Location | Monroeville, IN | |
| | Job | Inspector | Department | D800 - Field Services | |
| USA | Pay Rate | $0.00 | | | |
| | Pay Frequency | Weekly | | | |

| | | |
| --- | --- | --- |
| Federal Income Tax | M | 1 |
| PA State Income Tax (Residence) | M | 0 |
| IN State Income Tax (Work) | M | 0 |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
| --- | --- | --- | --- | --- |
| Comm Equip Exp | | | $180.00 | $1,110.00 |
| Equipment | | | $720.00 | $4,440.00 |
| Mileage | | | $654.84 | $2,879.92 |
| Non Taxable Per | | | $1,323.00 | $8,127.00 |
| Regular - Days | 6.0000 | $0.0000 | $1,026.00 | $6,327.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee | | Employer | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
| --- | --- | --- | --- |
| Federal Income Tax | $1,026.00 | $99.33 | $595.98 |
| Employee Medicare | $1,026.00 | $14.88 | $91.74 |
| Social Security Employee Tax | $1,026.00 | $63.61 | $392.27 |
| IN State Income Tax | $1,026.00 | $33.14 | $204.36 |
| Allen | $1,026.00 | $13.85 | $85.41 |

## Paid Time Off

| Plan | Current | Balance |
| --- | --- | --- |
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
| --- | --- | --- |
| xxxxxx9663 | Checking | $3,679.03 |
| Total | | $3,679.03 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
| --- | --- | --- | --- | --- | --- |
| Current | $3,903.84 | $1,026.00 | $224.81 | $0.00 | $3,679.03 |
| YTD | $22,883.92 | $6,327.00 | $1,369.76 | $0.00 | $21,514.16 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
| --- | --- |
| Period Start Date | 05/15/2017 |
| Period End Date | 05/21/2017 |
| Pay Date | 05/26/2017 |
| Document | 2163 |
| Net Pay | $3,679.04 |

## Pay Details

| Nicholas J Nimmo | | | | | |
| --- | --- | --- | --- | --- | --- |
| | Employee Number | 602293 | Pay Group | FIS - Weekly | Federal Income Tax | M 1 |
| | SSN | XXX-XX-XXXX | Location | Monroeville, IN | PA State Income Tax (Residence) | M 0 |
| USA | Job | Inspector | Department | D800 - Field Services | IN State Income Tax (Work) | M 0 |
| | Pay Rate | $0.00 | | | |
| | Pay Frequency | Weekly | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
| --- | --- | --- | --- | --- |
| Comm Equip Exp | | | $180.00 | $930.00 |
| Equipment | | | $720.00 | $3,720.00 |
| Mileage | | | $654.84 | $2,225.08 |
| Non Taxable Per | | | $1,323.00 | $6,804.00 |
| Regular - Days | 6.0000 | $0.0000 | $1,026.00 | $5,301.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee | | Employer | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
| --- | --- | --- | --- |
| Federal Income Tax | $1,026.00 | $99.33 | $496.65 |
| Employee Medicare | $1,026.00 | $14.87 | $76.86 |
| Social Security Employee Tax | $1,026.00 | $63.61 | $328.66 |
| IN State Income Tax | $1,026.00 | $33.14 | $171.22 |
| Allen | $1,026.00 | $13.85 | $71.56 |

## Paid Time Off

| Plan | Current | Balance |
| --- | --- | --- |
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
| --- | --- | --- |
| xxxxxx9663 | Checking | $3,679.04 |
| Total | | $3,679.04 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
| --- | --- | --- | --- | --- | --- |
| Current | $3,903.84 | $1,026.00 | $224.80 | $0.00 | $3,679.04 |
| YTD | $18,980.08 | $5,301.00 | $1,144.95 | $0.00 | $17,835.13 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 05/08/2017 |
| Period End Date | 05/14/2017 |
| Pay Date | 05/19/2017 |
| Document | 1863 |
| Net Pay | $3,391.74 |

## Pay Details

| Nicholas J Nimmo | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Employee Number | 602293 | Pay Group | FIS - Weekly | Federal Income Tax | M | 1 |
| | SSN | XXX-XX-XXXX | Location | Monroeville, IN | PA State Income Tax (Residence) | M | 0 |
| | Job | Inspector | Department | D800 - Field Services | IN State Income Tax (Work) | M | 0 |
| USA | Pay Rate | $0.00 | | | | | |
| | Pay Frequency | Weekly | | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| Comm Equip Exp | | | $180.00 | $750.00 |
| Equipment | | | $720.00 | $3,000.00 |
| Mileage | | | $367.55 | $1,570.24 |
| Non Taxable Per | | | $1,323.00 | $5,481.00 |
| Regular - Days | 6.0000 | $0.0000 | $1,026.00 | $4,275.00 |

Total Hours  0.0000

## Deductions

| | | | Employee | | Employer | |
|---|---|---|---|---|---|---|
| Deduction | Based On | Pre-Tax | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $1,026.00 | $99.33 | $397.32 |
| Employee Medicare | $1,026.00 | $14.88 | $61.99 |
| Social Security Employee Tax | $1,026.00 | $63.61 | $265.05 |
| IN State Income Tax | $1,026.00 | $33.14 | $138.08 |
| Allen | $1,026.00 | $13.85 | $57.71 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxxx9663 | Checking | $3,391.74 |
| Total | | $3,391.74 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,616.55 | $1,026.00 | $224.81 | $0.00 | $3,391.74 |
| YTD | $15,076.24 | $4,275.00 | $920.15 | $0.00 | $14,156.09 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| | |
|---|---|
| **Pay Statement** | |
| Period Start Date | 05/01/2017 |
| Period End Date | 05/07/2017 |
| Pay Date | 05/12/2017 |
| Document | 1538 |
| Net Pay | $3,280.99 |

## Pay Details

Nicholas J Nimmo

USA

| | | | | | |
|---|---|---|---|---|---|
| Employee Number | 602293 | Pay Group | FIS - Weekly | Federal Income Tax | M 1 |
| SSN | XXX-XX-XXXX | Location | Monroeville, IN | PA State Income Tax (Residence) | M 0 |
| Job | Inspector | Department | D800 - Field Services | IN State Income Tax (Work) | M 0 |
| Pay Rate | $0.00 | | | | |
| Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| Comm Equip Exp | | | $180.00 | $570.00 |
| Equipment | | | $720.00 | $2,280.00 |
| Mileage | | | $256.80 | $1,202.69 |
| Non Taxable Per | | | $1,323.00 | $4,158.00 |
| Regular - Days | 6.0000 | $0.0000 | $1,026.00 | $3,249.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee Current | Employee YTD | Employer Current | Employer YTD |
|---|---|---|---|---|---|---|
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $1,026.00 | $99.33 | $297.99 |
| Employee Medicare | $1,026.00 | $14.88 | $47.11 |
| Social Security Employee Tax | $1,026.00 | $63.61 | $201.44 |
| IN State Income Tax | $1,026.00 | $33.14 | $104.94 |
| Allen | $1,026.00 | $13.85 | $43.86 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxxx9663 | Checking | $3,280.99 |
| Total | | $3,280.99 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,505.80 | $1,026.00 | $224.81 | $0.00 | $3,280.99 |
| YTD | $11,459.69 | $3,249.00 | $695.34 | $0.00 | $10,764.35 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 04/24/2017 |
| Period End Date | 04/30/2017 |
| Pay Date | 05/05/2017 |
| Document | 1245 |
| Net Pay | $3,358.03 |

## Pay Details

| Nicholas J Nimmo | | Employee Number | 602293 | Pay Group | FIS - Weekly | Federal Income Tax | M 1 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Monroeville, IN | PA State Income Tax (Residence) | M 0 |
| | | Job | Inspector | Department | D800 - Field Services | IN State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.00 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| Comm Equip Exp | | | $180.00 | $390.00 |
| Equipment | | | $720.00 | $1,560.00 |
| Mileage | | | $333.84 | $945.89 |
| Non Taxable Per | | | $1,323.00 | $2,835.00 |
| Regular - Days | 6.0000 | $0.0000 | $1,026.00 | $2,223.00 |

Total Hours  0.0000

## Deductions

| | | | Employee | | Employer | |
|---|---|---|---|---|---|---|
| Deduction | Based On | Pre-Tax | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $1,026.00 | $99.33 | $198.66 |
| Employee Medicare | $1,026.00 | $14.87 | $32.23 |
| Social Security Employee Tax | $1,026.00 | $63.62 | $137.83 |
| IN State Income Tax | $1,026.00 | $33.14 | $71.80 |
| Allen | $1,026.00 | $13.85 | $30.01 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxxx9663 | Checking | $3,358.03 |
| Total | | $3,358.03 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,582.84 | $1,026.00 | $224.81 | $0.00 | $3,358.03 |
| YTD | $7,953.89 | $2,223.00 | $470.53 | $0.00 | $7,483.36 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
| --- | --- |
| Period Start Date | 04/17/2017 |
| Period End Date | 04/23/2017 |
| Pay Date | 04/28/2017 |
| Document | 932 |
| Net Pay | $3,359.64 |

## Pay Details

| Nicholas J Nimmo | Employee Number | 602293 | Pay Group | FIS - Weekly | Federal Income Tax | M 1 |
| --- | --- | --- | --- | --- | --- | --- |
| | SSN | XXX-XX-XXXX | Location | Monroeville, IN | PA State Income Tax (Residence) | M 0 |
| USA | Job | Inspector | Department | D800 - Field Services | IN State Income Tax (Work) | M 0 |
| | Pay Rate | $0.00 | | | | |
| | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
| --- | --- | --- | --- | --- |
| Comm Equip Exp | | | $180.00 | $210.00 |
| Equipment | | | $720.00 | $840.00 |
| Mileage | | | $335.45 | $612.05 |
| Non Taxable Per | | | $1,323.00 | $1,512.00 |
| Regular - Days | 6.0000 | $0.0000 | $1,026.00 | $1,197.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee Current | Employee YTD | Employer Current | Employer YTD |
| --- | --- | --- | --- | --- | --- | --- |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
| --- | --- | --- | --- |
| Federal Income Tax | $1,026.00 | $99.33 | $99.33 |
| Employee Medicare | $1,026.00 | $14.88 | $17.36 |
| Social Security Employee Tax | $1,026.00 | $63.61 | $74.21 |
| IN State Income Tax | $1,026.00 | $33.14 | $38.66 |
| Allen | $1,026.00 | $13.85 | $16.16 |

## Paid Time Off

| Plan | Current | Balance |
| --- | --- | --- |
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
| --- | --- | --- |
| xxxxxx9663 | Checking | $3,359.64 |
| Total | | $3,359.64 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
| --- | --- | --- | --- | --- | --- |
| Current | $3,584.45 | $1,026.00 | $224.81 | $0.00 | $3,359.64 |
| YTD | $4,371.05 | $1,197.00 | $245.72 | $0.00 | $4,125.33 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 04/10/2017 |
| Period End Date | 04/16/2017 |
| Pay Date | 04/21/2017 |
| Document | 650 |
| Net Pay | $765.69 |

## Pay Details

| Nicholas J Nimmo | | Employee Number | 602293 | Pay Group | FIS - Weekly | Federal Income Tax | M 1 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Monroeville, IN | PA State Income Tax (Residence) | M 0 |
| | | Job | Inspector | Department | D800 - Field Services | IN State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.00 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| Comm Equip Exp | | | $30.00 | $30.00 |
| Equipment | | | $120.00 | $120.00 |
| Mileage | | | $276.60 | $276.60 |
| Non Taxable Per | | | $189.00 | $189.00 |
| Regular - Days | 1.0000 | $0.0000 | $171.00 | $171.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee | | Employer | |
|---|---|---|---|---|---|---|
| | | | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Employee Medicare | $171.00 | $2.48 | $2.48 |
| Social Security Employee Tax | $171.00 | $10.60 | $10.60 |
| IN State Income Tax | $171.00 | $5.52 | $5.52 |
| Allen | $171.00 | $2.31 | $2.31 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxxx9663 | Checking | $765.69 |
| Total | | $765.69 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $786.60 | $171.00 | $20.91 | $0.00 | $765.69 |
| YTD | $786.60 | $171.00 | $20.91 | $0.00 | $765.69 |

# Exhibit 14

# Form W-4 (2017)

**Purpose.** Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay. Consider completing a new Form W-4 each year and when your personal or financial situation changes.

**Exemption from withholding.** If you are exempt, complete only lines 1, 2, 3, 4, and 7 and sign the form to validate it. Your exemption for 2017 expires February 15, 2018. See Pub. 505, Tax Withholding and Estimated Tax.

**Note:** If another person can claim you as a dependent on his or her tax return, you can't claim exemption from withholding if your total income exceeds $1,050 and includes more than $350 of unearned income (for example, interest and dividends).

**Exceptions.** An employee may be able to claim exemption from withholding even if the employee is a dependent, if the employee:

• Is age 65 or older,
• Is blind, or
• Will claim adjustments to income; tax credits; or itemized deductions, on his or her tax return.

The exceptions don't apply to supplemental wages greater than $1,000,000.

**Basic instructions.** If you aren't exempt, complete the **Personal Allowances Worksheet** below. The worksheets on page 2 further adjust your withholding allowances based on itemized deductions, certain credits, adjustments to income, or two-earners/multiple jobs situations.

Complete all worksheets that apply. However, you may claim fewer (or zero) allowances. For regular wages, withholding must be based on allowances you claimed and may not be a flat amount or percentage of wages.

**Head of household.** Generally, you can claim head of household filing status on your tax return only if you are unmarried and pay more than 50% of the costs of keeping up a home for yourself and your dependent(s) or other qualifying individuals. See Pub. 501, Exemptions, Standard Deduction, and Filing Information, for information.

**Tax credits.** You can take projected tax credits into account in figuring your allowable number of withholding allowances. Credits for child or dependent care expenses and the child tax credit may be claimed using the **Personal Allowances Worksheet** below. See Pub. 505 for information on converting your other credits into withholding allowances.

**Nonwage income.** If you have a large amount of nonwage income, such as interest or dividends, consider making estimated tax payments using Form 1040-ES, Estimated Tax for Individuals. Otherwise, you may owe additional tax. If you have pension or annuity income, see Pub. 505 to find out if you should adjust your withholding on Form W-4 or W-4P.

**Two earners or multiple jobs.** If you have a working spouse or more than one job, figure the total number of allowances you are entitled to claim on all jobs using worksheets from only one Form W-4. Your withholding usually will be most accurate when all allowances are claimed on the Form W-4 for the highest paying job and zero allowances are claimed on the others. See Pub. 505 for details.

**Nonresident alien.** If you are a nonresident alien, see Notice 1392, Supplemental Form W-4 Instructions for Nonresident Aliens, before completing this form.

**Check your withholding.** After your Form W-4 takes effect, use Pub. 505 to see how the amount you are having withheld compares to your projected total tax for 2017. See Pub. 505, especially if your earnings exceed $130,000 (Single) or $180,000 (Married).

**Future developments.** Information about any future developments affecting Form W-4 (such as legislation enacted after we release it) will be posted at www.irs.gov/w4.

---

## Personal Allowances Worksheet (Keep for your records.)

| | | | |
|---|---|---|---|
| A | Enter "1" for **yourself** if no one else can claim you as a dependent . . . . . . . . . . . . . | A | 1 |
| B | Enter "1" if: { • You're single and have only one job; or • You're married, have only one job, and your spouse doesn't work; or • Your wages from a second job or your spouse's wages (or the total of both) are $1,500 or less. } | B | 1 |
| C | Enter "1" for your **spouse**. But, you may choose to enter "-0-" if you are married and have either a working spouse or more than one job. (Entering "-0-" may help you avoid having too little tax withheld.) . . . . | C | 0 |
| D | Enter number of **dependents** (other than your spouse or yourself) you will claim on your tax return . . | D | 6 |
| E | Enter "1" if you will file as **head of household** on your tax return (see conditions under **Head of household** above) . . | E | 0 |
| F | Enter "1" if you have at least $2,000 of **child or dependent care expenses** for which you plan to claim a credit . . | F | 0 |
| | (**Note:** Do **not** include child support payments. See Pub. 503, Child and Dependent Care Expenses, for details.) | | |
| G | **Child Tax Credit** (including additional child tax credit). See Pub. 972, Child Tax Credit, for more information. | | |
| | • If your total income will be less than $70,000 ($100,000 if married), enter "2" for each eligible child; then **less** "1" if you have two to four eligible children or **less** "2" if you have five or more eligible children. | | |
| | • If your total income will be between $70,000 and $84,000 ($100,000 and $119,000 if married), enter "1" for each eligible child. | G | 0 |
| H | Add lines A through G and enter total here. (**Note:** This may be different from the number of exemptions you claim on your tax return.) ▶ | H | 1 |

| | |
|---|---|
| For accuracy, complete all worksheets that apply. | • If you plan to **itemize or claim adjustments to income** and want to reduce your withholding, see the **Deductions and Adjustments Worksheet** on page 2. <br> • If you are **single and have more than one job or are married and you and your spouse both work** and the combined earnings from all jobs exceed $50,000 ($20,000 if married), see the **Two-Earners/Multiple Jobs Worksheet** on page 2 to avoid having too little tax withheld. <br> • If **neither** of the above situations applies, **stop here** and enter the number from line H on line 5 of Form W-4 below. |

---------- Separate here and give Form W-4 to your employer. Keep the top part for your records. ----------

## Form W-4 — Employee's Withholding Allowance Certificate

Department of the Treasury Internal Revenue Service

OMB No. 1545-0074   **2017**

▶ Whether you are entitled to claim a certain number of allowances or exemption from withholding is subject to review by the IRS. Your employer may be required to send a copy of this form to the IRS.

| 1  Your first name and middle initial | Last name | 2  Your social security number |
|---|---|---|
| Nicholas      J | Nimmo | ▮▮▮▮▮ |

Home address (number and street or rural route)

▮▮▮▮▮▮▮▮▮

| 3 ☐ Single  ☒ Married  ☐ Married, but withhold at higher Single rate. |
|---|
| **Note:** If married, but legally separated, or spouse is a nonresident alien, check the "Single" box. |
| 4  If your last name differs from that shown on your social security card, check here. You must call 1-800-772-1213 for a replacement card. ▶ ☐ |

| 5 | Total number of allowances you are claiming (from line H above or from the applicable worksheet on page 2) | 5 | 1 |
|---|---|---|---|
| 6 | Additional amount, if any, you want withheld from each paycheck . . . . . . . . . . . | 6 | $ 0 |
| 7 | I claim exemption from withholding for 2017, and I certify that I meet **both** of the following conditions for exemption. | | |
| | • Last year I had a right to a refund of **all** federal income tax withheld because I had **no** tax liability, **and** | | |
| | • This year I expect a refund of **all** federal income tax withheld because I expect to have **no** tax liability. | | |
| | If you meet both conditions, write "Exempt" here . . . . . . . . . . ▶ | 7 | |

Under penalties of perjury, I declare that I have examined this certificate and, to the best of my knowledge and belief, it is true, correct, and complete.

Employee's signature
(This form is not valid unless you sign it.) ▶ *Nick Nimmo*    Date ▶ 4/13/17

| 8  Employer's name and address (Employer: Complete lines 8 and 10 only if sending to the IRS.) | 9  Office code (optional) | 10  Employer identification number (EIN) |
|---|---|---|
| | | |

For Privacy Act and Paperwork Reduction Act Notice, see page 2.    Cat. No. 10220Q    Form **W-4** (2017)

**Form WH-4**
State Form 48845
(R3 / 5-15)

**State of Indiana**
**Employee's Withholding Exemption and County Status Certificate**
This form is for the employer's records. Do not send this form to the Department of Revenue.
The completed form should be returned to your employer.

Full Name  Nicholas Nimmo                                      Social Security Number or ITIN  ▮▮▮▮▮▮

Home Address  ▮▮▮▮▮▮          City  ▮▮▮▮▮▮        State  ▮▮    Zip Code  ▮▮▮▮▮▮

Indiana County of Residence as of January 1: _____  (See instructions)

Indiana County of Principal Employment as of January 1: _____  (See instructions)

---

**How to Claim Your Withholding Exemptions**

1. You are entitled to one exemption. If you wish to claim the exemption, enter "1" .......................................... 0

   Nonresident aliens must skip lines 2 through 6. See instructions

2. If you are married and your spouse does not claim his/her exemption, you may claim it, enter "1" ...................... 0

3. You are allowed one (1) exemption for each dependent. Enter number claimed........................................ 0

4. Additional exemptions are allowed if:  (a) you and/or your spouse are over the age of 65 and/or
   (b) if you and/or your spouse are legally blind.

   Check box(es) for additional exemptions: You are 65 or older ☐ or blind ☐ Spouse is 65 or older ☐ or blind ☐
   Enter the total number of boxes checked.............................................................................

5. Add lines 1, 2, 3, and 4. Enter the total here ...........................................................▶ 0

6. You are entitled to claim an additional exemption for each qualifying dependent (see instructions)...........▶ 0

7. Enter the amount of additional state withholding (if any) you want withheld each pay period ...................... $ 0

8. Enter the amount of additional county withholding (if any) you want withheld each pay period ...................... $ 0

I hereby declare that to the best of my knowledge the above statements are true.

Signature:  N. A. Nimmo                                      Date:  4/17/17

### Instructions for Completing Form WH-4

This form should be completed by all resident and nonresident employees having income subject to Indiana state and/or county income tax.

Print or type your full name, Social Security number or ITIN and home address. Enter your Indiana county of residence and county of principal employment as of January 1 of the current year. If you neither lived nor worked in Indiana on January 1 of the current year, enter 'not applicable' on the line(s). If you move to (or work in) another county after January 1, your county status will not change until the next calendar tax year.

**Nonresident alien limitation.** A nonresident alien is allowed to claim only one exemption for withholding tax purposes. If you are a nonresident alien, enter "1" on line 1, then skip to line 7. You are considered to be a nonresident alien if you are not a citizen of the United States and do not meet the green card test and the substantial presence test (get Publication 519 from www.irs.gov for information about these tests).

All other employees should complete lines 1 through 7.

Lines 1 & 2 - You are allowed to claim one exemption for yourself and one for your spouse (if he/she does not claim the exemption for him/herself). If a parent or legal guardian claims you on their federal tax return, you may still claim an exemption for yourself for Indiana purposes. You cannot claim more than the correct number of exemptions; however, you are permitted to claim a lesser number of exemptions if you wish additional withholding to be deducted.

Line 3 - Dependent Exemptions: You are allowed one exemption for each of your dependents based on state and federal guidelines. To qualify as your dependent, a person must receive more than one-half of his/her support from you for the tax year and must have less than $1,000 gross income during the tax year (unless the person is your child and is under age 19 or under age 24 and a full-time student at least during 5 months of the tax year at a qualified educational institution).

Line 4 - Additional Exemptions. You are also allowed one exemption each for you and/or your spouse if either is 65 or older and/or blind.

Line 5 - Add the total of exemptions claimed on lines 1, 2, 3, and 4. Enter the total in the box provided.

Line 6 - Additional Dependent Exemptions. An additional exemption is allowed for certain dependent children that are included on line 3. The dependent child must be a son, stepson, daughter, stepdaughter and/or foster child.

Lines 7 & 8 - If you would like an additional amount to be withheld from your wages each pay period, enter the amount on the line provided. NOTE: An entry on this line does not obligate your employer to withhold the amount. You are still liable for any additional taxes due at the end of the tax year. If the employer does withhold the additional amount, it should be submitted along with the regular state and county tax withholding.

You may file a new Form WH-4 at any time if the number of exemptions increases. You must file a new Form WH-4 within 10 days if the number of exemptions previously claimed by you decreases for any of the following reasons:
(a) you divorce (or are legally separated from) your spouse for whom you have been claiming an exemption or your spouse claims him/herself on a separate Form WH-4;
(b) someone else takes over the support of a dependent you claim or you no longer provide more than one-half of the person's support for the tax year; or
(c) the person who you claim as an exemption will receive more than $1,000 of income during the tax year.

Penalties are imposed for willingly supplying false information or information which would reduce the withholding exemption.

Exhibit 15



## FIS OPERATIONS, LLC
## MUTUAL VOLUNTARY ARBITRATION AND
## AND CLASS ACTION WAIVER AGREEMENT

This Mutual Voluntary Arbitration and Class Action Waiver Agreement ("Agreement") is made and entered into by and between _____ ("Employee") and FIS OPERATIONS, LLC (dba Frontier Integrity Solutions) and its affiliates ("the Company"). Employee and the Company may be collectively referred to herein as the parties. This Agreement shall be governed by the Federal Arbitration Act, and is to be construed as broadly as is permissible under applicable law.

The parties recognize that differences may arise between them during or following Employee's employment with the Company, and that those differences may or may not be related to Employee's employment. The parties understand and agree that by entering into this Agreement, they anticipate gaining the benefits of a speedy, impartial dispute-resolution procedure. Therefore in consideration for the foregoing and for Employee's employment and continued employment with Company, Employee and the Company hereby agree as follows:

Claims Covered by the Agreement

The Company and Employee mutually consent to the resolution by arbitration of all claims ("claims"), whether or not arising out of Employee's employment (or its termination), that the Company may have against Employee or that Employee may have against the Company or against its officers, directors, employees or agents in their capacity as such or otherwise. The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status, medical condition, or disability) under state or federal law; claims for benefits (except where an employee benefit or pension plan specifies that its claims procedure shall culminate in an arbitration procedure different from this one), and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims excluded in the Claims Not Covered section below.

Except as otherwise provided in this Agreement, the Parties agree that neither of them shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination) in any way related to any claim covered by this Agreement.

As such, the parties, and each of them, understand that, by signing this Agreement, they are knowingly and voluntarily waiving their right to a trial by jury.

Claims Not Covered by the Agreement

Claims that Employee may have for workers' compensation, unemployment compensation benefits, or claims deemed not subject to arbitration under law are not covered by this Agreement.

Upon a showing of reasonable cause, either party to this Agreement may petition a court of competent jurisdiction for immediate injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure or trade secrets or confidential information.



The contents of this document are considered proprietary and confidential and should not be disclosed, copied or accepted, in whole or in part, without the expressed written permission of FIS Operations LLC dba Frontier Integrity Solutions.



<u>Required Notice of All Claims and Statute of Limitations</u>

The parties agree that the aggrieved party must serve a formal demand for arbitration, containing all factual bases of any claim, to the other party within one (1) year of the termination or employment, or other date the aggrieved party first knows or should know of the event giving rise to the claim, or within the applicable statutory limits in which such claim may be made, whichever date is later. If either party fails to serve a formal demand within the period proscribed by this section, then the claim shall be void and deemed waived.

The formal demand for arbitration served on the Company, or its officers, directors, employees or agents, shall be sent to its CEO Employee will be given written notice at the last address recorded in Employee's personnel file. The formal demand shall identify and describe the nature of all claims asserted and the facts upon which such claims are based. The formal demand shall be sent to the other party by certified or registered mail, return receipt requested.

<u>Arbitration Location and Procedures</u>

The parties agree that the arbitration shall take place in the county of the state in which the Employee resided at the time of his or her employment. The parties further agree that the arbitration will be administered by Judicial Arbitration and Mediation Services ("JAMS"), a national arbitration organization, (www.jamsadr.com), in accordance with the JAMS Employment Arbitration Rules and Procedures ("JAMS Rules"), for determination in accordance with the JAMS Employment Arbitration Rules & Procedures (the "Rules"), including any subsequent modifications or amendments to such Rules, as the exclusive remedy for such controversy, claim or dispute. A copy of the Rules is available from Company's Human Resources Department and can also be found on-line at www.jamsadr.com/rules-employment-arbitration.

The Parties also agree that, except as provided in this Agreement, any arbitration shall be conducted by an Arbitrator who is licensed to practice law in the state in which the claim arose Employee resided at the time of his or her employment ("Arbitrator"). The Arbitrator shall be selected from a list of retired judges provided by JAMS. JAMS shall give each party a list of labor-management dispute arbitrators. Each party may strike all names on the list it deems unacceptable. If only one common name remains on the lists of all parties, that individual shall be designated as the Arbitrator. If more than one common name remains on the lists of all parties, the parties shall strike names alternately until only one remains. The party who did not initiate the claim shall strike first. If no common name remains on the lists of all parties, JAMS shall furnish an additional list or lists until the Arbitrator is selected.

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The applicable state in which the claim arose or the Federal Rules of Evidence shall apply. The Arbitrator, and not any federal, state, or local court or Company, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable. The arbitration shall be final and binding upon the parties.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person as the Arbitrator deems necessary. The



The contents of this document are considered proprietary and confidential and should not be disclosed, copied or excerpted, in whole or in part, without the expressed written permission of FIS Operations LLC dba Frontier Integrity Solutions.



Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such

Either party, at its expense, may arrange for and pay the cost of a court reporter to provide a stenographic record of proceedings.

Either party, upon request at the close of hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render a written award and opinion that reveals the essential findings and conclusions upon which the award is based.

Discovery

Except as otherwise provided herein, all discovery proceedings shall be governed by state rules and JAMS Rules. Each party shall have the right to take the deposition of one individual and any expert witness designated by the other party. Each party also shall have the right to propound requests for production of documents to any party and a request for witnesses' names. Additional discovery may be had only where the Arbitrator selected pursuant to this Agreement so orders, upon a showing of substantial need and in accordance with JAMS rules.

Designation of Witnesses and Exhibits

At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any expert witnesses, and copies of all exhibits intended to be used at the arbitration.

Subpoenas

Each party shall have the right to subpoena witnesses and documents for the arbitration.

Arbitration Fees and Costs

The Company shall bear full responsibility for the Arbitrator's fees and costs. Each party shall pay for its own costs and attorneys' fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees, or if there is a written agreement providing for fees, the Arbitrator may award reasonable fees to the prevailing party.

Judicial Review

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement, to enforce an arbitration award and/or to have judgment entered upon an award. A party opposing enforcement of an award may not do so in an enforcement proceeding, but must bring a separate action in any court of competent jurisdiction to set aside the award, where the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

Requirements for Modification or Revocation

This Agreement to arbitrate and class action waiver shall survive the termination of Employee's employment. It can only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify this Agreement.



401 E. Broadway Suite 200, Sand Springs, OK 74063 • (918) 246-7100 • FAX: (918) 512-4992
The contents of this document are considered proprietary and confidential and should not be disclosed, copied or excerpted, in whole or in part, without the expressed written permission of FIS Operations LLC dba Frontier Integrity Solutions.



### Class Action Waiver

Any claim covered by this Agreement shall be brought and conducted solely on an individual basis and not in a class, multiple plaintiff or representative action, or as a named or unnamed member in a class, consolidated, representative or private attorney general action. Similarly, the arbitrator may not consolidate more than one party's claims, and may not otherwise preside over any form of a class action or representative proceeding. Notwithstanding the foregoing, Employee is not waiving his or her rights under the National Labor Relations Act, and he or she will not be retaliated against for concertedly challenging the validity of this Agreement through class or collective actions.

### Sole and Entire Agreement

This is the complete agreement of the parties on the subject of arbitration of disputes, except for any arbitration agreement in connection with any pension or benefit plan. This Agreement supersedes any prior or contemporaneous oral or written understanding on the subject. No party is relying on any representations, oral or written, on the subject or the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

### Construction/Severability

If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement and any said illegal, invalid or unenforceable part, terms or provisions shall be deemed stricken and severed from this Agreement.

### Consideration

The promises by the Company and by Employee to arbitrate differences, rather than litigate them before courts or other bodies, provide consideration for each other.

### Employment Agreement

This Agreement is not, and shall not be construed to create, any contract of employment, express or implied. Nor does this agreement in any way alter the "at-will" status of Employee's employment with the Company. This means either employee or the Company terminate the employment relationship at any time, with or without notice, for any reason or no reason at all.

### Severability

This Agreement contains all the terms, obligations and understandings between the parties regarding its subject matter. If any portion, provision, or part of this Agreement is held, determined, or adjudicated to be invalid, unenforceable, or void for any reason whatsoever, each such portion, provision, or part will be severed from the remaining portions, provisions, or parts of this Agreement and will not affect the validity or enforceability of such remaining portions, provisions, or parts.



401 E. Broadway Suite 200, Sand Springs, OK 74063 • (918) 246-7100 • FAX: (918) 552-4992
The contents of this document are considered proprietary and confidential and should not be disclosed, copied or excerpted, in whole or in part, without the expressed written permission of its Operations LLC d.b.a Frontier Integrity Solutions.



## Knowing and Voluntary Agreement

THE PARTIES, AND EACH OF THEM, ACKNOWLEDGE THAT THEY HAVE CAREFULLY READ AND CONSIDERED THIS AGREEMENT, THAT THEY UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND EMPLOYEE RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT

If you wish to affirmatively opt out of this agreement and policy, you may do so **only** by executing and returning to the Company an Arbitration Opt-Out Form, available from Dori Brophy at (918) 246-7709 or dbrophy@frontierintegrity.com.

**EMPLOYEE**

_Dickie D. Foster_
Signature of Employee

Date: 3-7-18

_Dickie D. Foster_
Print Name of Employee

**FIS Operations, LLC**

_S. Garcia_
Signature of Authorized Representative

Date: 3/12/18

_Savanna Garcia_
Print Name of Representative

_HR_
Title of Representative

Exhibit 16

Equal Opportunity Employer

# Application for Employment



www.FrontierIntegrity.com

Foster                    DicKie                    D.

Last Name          First Name          Middle Initial

FIS Operations LLC, dba Frontier Integrity Solutions considers applicants for
available positions without regard to race, color, religion, sex, national origin,
age, marital or veteran status, the presence of a non-job related medical and
physical condition or disabilities, or any other legally protected status.

****FRONTIER INTEGRITY SOLUTIONS CONDUCTS PRE-EMPLOYMENT
SUBSTANCE TESTING****

Frontier maintains a drug-free work environment. Frontier follows The Drug
Free Workplace Act of 1988. The Act prohibits the illegal use, possession,
manufacture or distribution of controlled substances in the workplace and at
any time while performing company business.

**Instructions:** Please complete all questions. Include any additional information that you feel would be helpful in our consideration of your application.

| Social Security No. ███████ | Date: 3-7-18 |
|---|---|

Street: ███████

| City: ███████ | State: ███ | Zip Code: ███████ | Home Phone No: |
|---|---|---|---|

| Fax No: | Business Phone No: |
|---|---|

| Email: ███████ | Web Site Address: |
|---|---|

| Cellular Phone: ███████ | Drivers License and State: Tx. |
|---|---|

| How were you referred to our company? | Are you over the age of 18?  (YES)   NO |
|---|---|

Are there any other names under which your employment, educational records, references, and other information in the application may be verified?   YES   (NO)   If yes, list:

If hired, can you furnish proof that you are either a U.S. citizen, or otherwise legally permitted to work in the United States?   (YES)   NO

Have you ever been convicted of a crime?   YES   (NO)
If yes, explain:

| Position Applying for: utility Insp̃t. | Desired Starting Salary: |
|---|---|

Applying for: (Full Time)   Part Time   ·   Temporary   Contracting

Are you able to perform the essential functions of the job for which you are applying, with or without a reasonable accommodation?  (Yes)   No

**Education:** Your educational record will be considered only in the extent that it is relevant to the job sought.

| Name and address of High School: Sarepta High   Sarepta La. | | Did you graduate? (yes/no) |
|---|---|---|
| Name and Address of College/Trade Schools (Include Military Schools) | GPA | Degree | |
| | | | |
| | | | |
| | | | |

**Computer Proficiencies:** Please list all software or programming languages, hardware and/or operating systems that qualify you for the position.

| Software/Programming Languages |
|---|
| Hardware: |
| Operating Systems: |
| Other: |

**Employment Experience: Start with your current or last job. Include any job related military service assignments and volunteer activities. You may exclude organizations which indicate race, color, religion, gender, national origin, disabilities or other protected status. (MUST BE COMPLETED EVEN IF YOU HAVE PROVIDED YOUR RESUME.)**

| Current Employer Name: | Dates Employed: | Work Performed: |
|---|---|---|
| Q I S | Sept. 2017 | New const. |
| Address: | From (MO/YR) | 24" pipe line |
| Guymon   OK. | To (MO/YR) | Williams Transco |
| Telephone Number: 580-468-6601 | Dec. 2017 | |
| Job Title: Welding + utility | Salary/Bonuses: | |
| Name and Title of Supervisor: Kirk Reynolds | Starting: | |
| | Ending: | May we contact: |
| Reason for Leaving Job complete | | (YES)   NO |
| Previous Employer Name: Tulsa Inspt. | Dates Employed: | Work Performed: Replacement |
| Address: Tulsa, OK. | From (MO/YR). To (MO/YR) | DcP Plant |
| Telephone Number: | | |
| Job Title: Welding + utility | Salary/Bonuses: | |
| Name and Title of Supervisor: Shae Manot DCP Engr. | Starting: Ending: | May we contact: |
| Reason for Leaving Job complete | | (YES)   NO |
| Previous Employer Name: | Dates Employed: | Work Performed: |
| Address: | From (MO/YR) To (MO/YR) | |
| Telephone Number: | | |
| Job Title: | Salary/Bonuses: | |
| Name and Title of Supervisor: | Starting: | |
| Reason for Leaving | Ending: | May we contact: YES   NO |

# Dick Foster

## Experience

| Jan – Dec 2017 | QIS Inspection | Winston, GA |

- Worked as a Certified Welding Inspector through QIS Inspection on Project Dalton Expansion South William Transco. Laid total of 60 miles of line. 54 miles of 24" pipe and 6 miles of 30".

| Oct – Dec 2016 | Tulsa Inspection | Carthage, TX |

- Worked as a Certified Welding Inspector, Utility Inspector and Hydro-testing Inspector for DCP Midstream on the Plant ETGP installation of 5 new projects in the plant. Including pipe installation and new fabrication.

| Jan – May 2016 | Wilcrest Inspection Company | Odessa, TX |

- Worked as a Certified Welding Inspector laying 67 miles of 24" pipe for Energy Transfer Co. Also worked fabrication on each end of line in the plants.

| May – Nov. 2015 | McDaniel Technical Services, Inc. | Snow Shoe, PA |

- Worked as a senior welding inspector laying 24in., 16 in. & 8in. pipeline consisting of 11 miles for Superior Gas. Managed hydro testing; did fab and compressor work on pipeline. Also, took over chief position and laid an additional 3 mi of 8" pipe.

| Jan 2015 – May 2015 | Double M Inspection (Abbeville, LA) | Savannah, GA |

- Working as a certified welding inspection laying 10 miles of 8" pipe for Atlanta Gas and Light.

| Nov. – Dec. 2014 | Wilcrest Inspection Company | Cheneyville, LA |

- Worked as a certified welding inspector in compressor station and on 24in. mainline for Enterprise Products Incorporated. Also did hydro testing on main line and fab work on compressor station.

| March – July 2014 | QIS Inspection | Sylacauga, AL |

- Worked as a certified welding inspector laying 32 miles of 24" pipeline for Southern Company into Williams Gas Plant. Also completed hydro testing of pipe after completion.

| August 2013–Jan. 2014 | Wilcrest Inspection Company | South of Houston, TX |

- Worked as welding and testing inspector on new construction for Enterprise Gas Company. 61 miles of 36 inch crude line on sea-way project south of Houston, TX.

| Dec. 2012 – April 2013 | Cleveland Inspection Services | Enid, OK |

- Worked as a welding inspector laying 16" pipeline from Cushion, OK to Kansas for Plains All American Pipeline.

| August – October 2012 | Onshore & Offshore | Cheyenne, WY |

- Worked as a welding inspector laying 12" pipeline for Oneok Gas Company in Cheyenne, WY.

| July 2011 – July 2012 | McDaniel Technical Services, Inc. | Bentleyville, PA |

- Worked as a welding inspector for McDaniel Technical Services, Inc. laying 54 miles of 24 in. for Dominion Gas Co. out of Bentleyville, PA.

| Feb. 2012 – Jan. 2011 | Cindero Consulting | Pennsylvania |

- Worked as assistant chief welding inspector for Cindero Consulting laying 32 miles of 8" line for Mark West Liberty Midstream & Resources, LLC Gas Co. Also laid approximately 15 miles of 20" line, 7 miles of 16" line and 6 miles of 4" line all in the same right-of-way in Western Pennsylvania.

| July – December 2009 | Cindero Consulting | Pennsylvania |

- Worked as a welding inspector for Cindero for SWN Gas Co.; Laid and tied in 4.5 miles 10" lateral to 12" main feed line as well as laying and tying in 16" .375 wall pipe from one compressor station to another

| April – July 2009 | Janx Spection, LLC | Michigan |

- Worked as a welding inspector for Janx Spection, LLC for Consumer Energy. Laid 2 miles of 20" pipeline and 6.5 miles of 36" pipeline in Michigan.

| May 2008 – Jan. 2009 | Onshore Quality Control | Homer, LA |

- Welding inspector for Onshore Quality Control for Gulf South Gas Co. Ran the pipe gang in Homer, LA (Gulf Crossing Spread 4 & 5)

| Feb. – May 2008 | Englobal | Meridian, MS |

- Welding and pipe testing inspector for Englobal for Gulf South Gas Co.; Laid 42" line in Meridian, MS.

| March 2007 – Feb 2008 | Gulf Interstate | Wamsutter, WY |

- Chief Inspector for Gulf Interstate for KinderMorgan. Laid 16" and 24" lateral lines off existing 42" line in Wamsutter, WY. Also installed two meter stations to connect service.

| Sept. 2006 – Jan. 2007 | Gulf Interstate |

- Welding Inspector for Gulf Interstate for KinderMorgan. Laid 42" pipeline.

| March – Aug. 2006 | Windsor Energy |

- Welded tie-ins and all visual inspection on fabrication for Windsor Energy.

| April 2004 – March 2006 | Ark-La-Tex Energy |

- Inspection for pipelines and well hook-ups from kick-off to completion for Ark-La-Tex Energy in East Texas.

| 1975 – April 2004 |

- Worked as a welder in the oilfield around the country. I did fabrication of gathering systems and meter stations, as well as pipelines and well hook-ups. Before pipeline welding, I was a barge engineer for Penrod Drlg. In Brazil.

## Capabilities

I have CWI certification as a welding inspector, as well as experience. I can also do pipe fabrication on oilfield pipeline work. I have the ability to read and understand blueprints and complete all required documentation by the owners and D.O.T. This also includes Hydro-Testing and other testing.

- **Sarepta, LA High School Graduate 1970**

Additional Skills / Training: *Pipe line welding & utility*

| Foreign Languages: | Fluent | Good | Fair |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

References: List individuals who can attest to your professional abilities/work accomplishments (Do not include individuals listed in Employment Background section or relatives).

| Reference Name | Business Phone | Position |
|---|---|---|
| 1. *Shae Manot* | ████████ | *Engr.* |
| 2. | | |
| 3. | | |

### Security Information

Have you ever been employed by Frontier before?   YES   (NO)
If yes, give dates:

Do you have relatives employed by Frontier?   YES   (NO)
If yes, give name(s):

Do you presently hold a security clearance?   YES   (NO)
If yes, state level:

Have you ever held a security clearance?   YES   (NO)
If yes, state dates held:

Have you ever been denied a security clearance or had one revoked?   YES   (NO)
If yes, explain:

**Applicant's Statement** -- By signing below, I certify that answers given herein are true and complete to the best of my knowledge. This application shall be considered active for up to 45 days. If I want to be considered for employment after 45 days, I should inquire as to whether or not applications are being accepted at that time.

I understand and acknowledge that, unless otherwise defined by applicable law, any employment relationship with this organization is of an "at will" nature, which means that the Employee may resign at any time and the Employer may discharge Employee at any time with or without cause. It is further understood that this "at will" employment relationship may not be changed by any written document or by conduct unless such change is acknowledged in writing by an authorized executive of this organization.

In the event of employment, I understand that false or misleading information given in my application or interview(s) may result in discharge. I understand, also that I am required to abide by all rules and regulations of the Employer.

As part of the initial employment application requirements and ongoing throughout my employment after an offer of employment has been made by the company and accepted by me, I do hereby give my permission for the company, or its designated contract representative, to inquire, on my behalf, regarding the following: Background, qualifications, work habits, work performance, experience, character, education, military status, credit history, along with State/Federal public records available in conjunction therewith.

In order to maintain a safe and secure work environment, Frontier's policies include a Drug-Free Workplace program. As part of the initial employment application, I do hereby give my permission for the company, or its designated contract representative, to conduct substance testing. Additionally, ongoing throughout my employment after an offer of employment has been made by the company and accepted by me, I do hereby give my permission for the company, or its designated contract representative, to conduct substance testing for post-accident and "for cause" situations. In addition, I acknowledge that the company may require as applicable to position, a post offer physical examination which may include x-rays, other lab analysis, and/or work sample exercises.

I also authorize any law enforcement agency, administrator state agency, institution, information service bureau, employer or Insurance Company that is contacted, to furnish, without hesitation or reservation, the above-mentioned information.

I further acknowledge that a telephonic fax or photographic copy shall be as valid as the original. Also, according to the Fair Credit Reporting Act, I am entitled to know if employment is denied or terminated because of information obtained by my prospective or current employer from a consumer-reporting agency. If so, I will be advised and given the name of the agency or source information.

This authorization is valid for the duration of my employment and/or as of the date of my signature below.

Applicant's Signature: _____   Date: _3-7-18_

# Exhibit 17



## Employee Handbook Acknowledgement

### Please Sign and Return This Acknowledgement Within One Week of Receipt

I acknowledge that I have reviewed a copy of Frontier's Employee Handbook. I understand that the Employee Handbook contains important information about Frontier's personnel policies and my privileges, benefits and obligations as an employee. I acknowledge that I am required to read, understand, and comply with the policies as set forth in the Employee Handbook. I further understand that Frontier may change, rescind, or modify the Employee Handbook at its sole discretion, at any time, with or without prior notice.

I understand and acknowledge that I have no express or implied employment contract for any specified term with Frontier and that any benefits, policies, or procedures extended or implemented by Frontier are not intended to and do not create an express or implied contract of employment. I further understand that my employment relationship with Frontier is at-will. This means that Frontier and I each have the right to terminate the employment relationship at any time, with or without notice, with or without cause, for any reason whatsoever. Frontier does not promise that my employment relationship will continue for a set period of time or specific term, or that my employment relationship can be terminated only under particular circumstances. Frontier reserves discretion to change my rate of pay, hours of work, benefits, and job duties, and to impose disciplinary action when warranted.

I understand that during the period of my employment, no representative of Frontier other than the CEO or Board of Directors, has the authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing and that any such agreement must be in writing and signed by the CEO or Board of Directors and me.

I further understand and agree that this Acknowledgment of reviewing of the Employee Handbook contain a full and complete statement of the agreements and understandings that they recite, and that this Employee Handbook supersedes and replaces any earlier handbooks, personnel manuals, policies, practices, guidelines, written or oral descriptions of the terms or conditions of my employment and any previous agreements, whether written or oral, express or implied, relating to the subjects covered in this Acknowledgment and Employee Handbook.

Frontier Integrity Solutions Human Resources Department

Main Telephone Number: 918-246-7709

Signature: *Dickie Foster*                     Date: 3-7-18

Printed Name: *Dickie Foster*

### *(Please return the acknowledgement Page to Human Resources)*

# Exhibit 18

# *Pipeline Testing Consortium, Inc.*

DOT Drug/Alcohol History Check

www.pipelinetesting.com

9 Compound Drive   •   Hutchinson, Kansas 67502   •   (800) 294-8758   •   FAX (620) 665-8376

## Applicant Authorization to Release DOT Drug/Alcohol Test Results
### SECTION 1: TO BE COMPLETED BY APPLICANT

Applicant/Employee: **Dickie D. Foster**

Company Name: FIS OPERATIONS DBA FRONTIER INTEGRITY SOLUTIONS

I understand that as a condition of hire with the above named "Company", that I must consent to the release of all DOT mandated drug and alcohol information from all of the employers for which I worked in a DOT safety-sensitive position; or for which I took a DOT pre-employment drug test, during the previous two (2) years as required by DOT Part 40.25, (or three (3) years as required by Part 391.23 for any driver of a commercial motor vehicle). Pipeline Testing Consortium, Inc. (PTC), acting as the agent/representative for the hiring Company, will receive the information.

A Commercial Driver's License (CDL) is required for my employment: [X] No   [ ] Yes

Check boxes only if applicable

[ ] I have NOT worked in a DOT safety-sensitive position for a DOT regulated company in the past 2 years (3 years for CMV drivers, 5 years for pilots). Proceed to sign and date form below.

[ ] I have tested positive, or refused to test, on a DOT pre-employment drug or alcohol test for an employer who did not hire me in the past two years (3 years for CMV drivers, 5 years for pilots). Please specify the company for which this occurred below.

I hereby authorize the following previous employer / company to furnish to PTC the DOT information requested in section 2 below.

Previous DOT Employer: **QIS**

Address: _____ City: **Guymon** St: **OK** Zip: _____

Phone: _____ Fax: _____ E-mail: _____

Contact: **Clark Perdy** Dates of Employment: **Jan.** to **Dec. 2017**
(Complete additional form for each previous DOT employer)

Certification: I have read and fully understand this authorization to release my previous drug and alcohol test information, identified by the questions below, to Pipeline Testing Consortium, Inc. I hereby acknowledge that failure to provide accurate information in response to this request for release of information could negatively affect my employment offer or subject me to disciplinary action up to and including termination if later discovered during my employment with the Company begins.

Signature of Applicant: **Dickie D. Foster**   SSN: ████████   Date: **3-7-18**

---

Fax completed form(s) to the PTC HISTORY CHECK DEPT # 620-665-6376 or
E-mail to: history@pipelinetesting.com

## Release of Previous Employer's DOT Drug/Alcohol Testing Results
### SECTION 2: TO BE COMPLETED BY PREVIOUS EMPLOYER

In accordance with DOT regulations, the Company, named above, is required to obtain -- and as a Previous Employer, you are required to release -- DOT drug and alcohol information, listed below, concerning the Applicant/Employee, named above. This information request covers any period of employment of the Applicant/Employee by you going back 2 years (3 years for CMV drivers), from the date of this request. Please complete the following:

| YES | NO | |
|---|---|---|
| _____ | _____ | 1. Any DOT alcohol test results of 0.04 or greater? |
| _____ | _____ | 2. Any DOT positive drug test results? |
| _____ | _____ | 3. Refusal to submit to a DOT required drug / alcohol test? (incl. adulterated or substituted results) |
| _____ | _____ | 4. Other violations of DOT drug and alcohol testing regulations? |
| _____ | _____ | 5. Did a previous employer report a drug / alcohol rule violation to you? |
| _____ | _____ | 6. If "yes" for any of the above items, did the employee complete the return-to-duty process?* |

[ ] 7. Was the Applicant/Employee employed by you but NOT subject to DOT regulations?

*Note: If "yes" for item 5, you must provide the previous employer's report. If you answered "yes" for item 6, you must also transmit the appropriate return-to-duty documentation (e.g., SAP report(s), follow-up testing record).

Name of Person Completing Form _____ Title _____ Phone _____ Date _____

*A reproduction of this authorization shall be deemed as effective and valid as an original. Rev. 2016

# Exhibit 19



Appendix E
FIS Operations LLC., dba Frontier Integrity Solutions Anti-Bribery and Corruption Policy

EMPLOYEE ACKNOWLEDGMENT STATEMENT
ANTI-BRIBERY AND CORRUPTION POLICY

I acknowledge that I have received and reviewed the *Anti-Bribery and Corruption Policy* (the "Policy") of Frontier Integrity Solutions (the "Company"). I fully understand that, as an employee, I have an obligation to adhere to these policies and principles. In particular, I acknowledge and affirm that:

1. In carrying out my responsibilities for the Company, I shall not pay, offer or promise to pay, or authorize the payment directly or indirectly through any other person or firm, of any money or anything of value to any government official or employee, public international organization officer or employee, political party or official of such party, or any candidate for political office, for the purpose of inducing or rewarding favorable action or the exercise of influence by such official, party or candidate or the securing of any improper advantage.

2. In carrying out my responsibilities for the Company, I shall ensure that all accounting records, expenditures, expense reports, invoices, vouchers, gifts, business entertainment, and any other business records are accurately and reliably reported and recorded. I shall also ensure that all payments by or on behalf of the Company are made only on the basis of appropriate supporting documentation and for the purposes specified in the documentation.

3. In carrying out my responsibilities for the Company, I have not violated the provisions of Paragraphs 1 and 2 above, and I am not aware of any violations which have been committed by other employees of the Company or by any agent, representative or consultant of the Company.

4. When I have a concern about a possible violation of the Policy, I will report the concern to my supervisor, the Director (or Head) of Internal Audit (as the designee of the Audit Committee of the Board of Directors), the Chief Compliance Officer.

5. I understand that violations of the Policy will result in disciplinary action by the Company, including termination from employment, personal financial penalties and other disciplinary actions, as appropriate.

6. Signing this Acknowledgment Statement does not directly or indirectly confer any right of employment nor in any manner alter the Company's policy of employment at will.

DicKie Foster
Printed Name

Dickie Foster
Signature of Employee

3 - 7 - 18
Date

# Exhibit 20



# FIS Operations LLC dba Frontier Integrity Solutions
## Code of Ethics and Business Conduct
### Employee Certification

FIS Operations LLC., dba Frontier Integrity Solutions (the "Company") is committed to adhering to the highest ethical standards with respect to its management and the disclosure of information in connection with the business and operations of the Company. Accordingly, as an employee of the Company, I have received and reviewed the Company's Code of Ethics and Business Conduct (the "Code of Ethics"), which provides principles to which I am expected to adhere and advocate. The Code of Ethics embodies rules regarding individual and peer responsibilities, as well as responsibilities to the Company, the shareholders and the public. I certify to you that I adhere to and advocate the Code of Ethics, including the following principles and responsibilities governing my professional and ethical conduct, to the best of my knowledge and ability:

1.  I actively engage in and promote honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships.

2.  I avoid conflicts of interest and disclose to the appropriate persons with the Company any material transaction or relationship that reasonably could be expected to give rise to such a conflict.

3.  I respect the confidentiality of information acquired in the course of business except when authorized or otherwise legally obligated to disclose the information. I acknowledge that confidential information acquired in the course of business is not to be used for personal advantage.

4.  I promote the protection and preservation of the Company's assets and resources, strive to ensure their efficient use and assist the Company in its efforts to control costs.

5.  I conduct myself with fairness, honesty, integrity and professionalism; proactively promote such ethical behavior among employees at the Company and as a responsible partner with industry peers and associates and endeavor to deal fairly with the Company's customers, suppliers, competitors and employees.

6.  I provide communications that are both accurate and forthright when promoting the Company and its products.

7.  I act in good faith, responsibly, with due care, competence and diligence, without misrepresenting material facts or allowing my independent judgment to be subordinated.



8. I will not (a) use for personal gain or take for myself opportunities that are discovered through the use of Company property, information or position; (b) use Company property, information or position for personal gain; or (c) compete with the Company.

9. I will promptly report to the appropriate persons with the Company or the Board of Directors any violations of the Code of Ethics of which I become aware.

10. I am accountable for adherence to the Code of Ethics.

Signature: _Dickie D. Foster_

Name: _Dickie O. Foster_

Title: _utility Inspt._

Date: _3 - 7 - 18_

401 E. Broadway Street, Suite 200, Sand Springs, OK 74063 • (918) 245-7100 • FAX: (918) 512-4992
The contents of this document are considered proprietary and confidential and should not be disclosed, copied or accepted, in whole or in part, without the expressed written permission of FIS Operations LLC dba Frontier Integrity Solutions.

Plan Revision Date: January 4,

## VIII. Appendix A - Acknowledgement/Receipt Form

I acknowledge, by signing this form, that my full compliance with the Anti-Drug and Alcohol Misuse Prevention Plan (the "Plan") and DOT drug and alcohol regulation requirements is a condition of my initial and continued employment with the Company. I understand and agree that I may be discharged or otherwise disciplined for any drug and/or alcohol violation, committed by me, as cited in the Plan and/or in the DOT drug and alcohol regulatory requirements.

I also acknowledge, by signing this form, that a copy of the Plan has been made available to me and that I have read and understand the requirements of the Company and DOT drug and alcohol program. I have also been provided with informational material on the dangers and problems of drug abuse and alcohol misuse.

Signed, this the __7__ day of __March__, 20 __18__ .

__Dickie D. Foster__
Employee Name (Please Print)

__Dickie D. Foster__
Employee Signature

__Savanna Garcia__
Company Representative Name (Please Print)

__S. Garcia__
Company Representative Signature

FIS OPERATIONS DBA FRONTIER INTEGRITY SOLUTIONS

Exhibit 21



## ACKNOWLEDGEMENT

## CONTRABAND AND DRUG/ALCOHOL-FREE WORKPLACE POLICY

By my signature below, I hereby acknowledge that I have read and understand the drug/alcohol screening and contraband policy of Frontier Integrity Solutions, which outlines the Company's position regarding the use or possession of drugs, alcohol, contraband and related items. Frontier's stance is 'No Tolerance.' I understand that the Company requires employees to submit specimens to be analyzed for the presence of drugs/alcohol. I realize that the presence of a detectable trace of any unauthorized substance is grounds for disciplinary action, including termination of my employment.

The use, consumption, possession, distribution or sale of illegal drugs, or any legal drug used illegally or misuse of alcohol while on duty, on or off Company property, is strictly prohibited. Furmanite also prohibits contraband including firearms, ammunition, explosives, weapons; and illicit drug equipment or paraphernalia. Company property, within the meaning of this policy, shall include, but is not limited to, all land, occupied or vacant buildings, structures, installation, automobiles, trucks, or any other vehicle operated for Company purposes and Customer's property. Any individual found to be in violation of this policy will be subject to immediate disciplinary action from the Company relevant to all applicable local, state, and federal regulations in effect at the time.

Illegal or prohibited substances include:

    a.  A drug which is not legally obtainable;
    b.  A drug which is legally obtainable, but has not been legally obtained.
    c.  Prescription medication taken illegally (expired or prescribed for someone else).
    d.  Misuse of Alcohol.

By my signature below, I also give my permission to Frontier Integrity Solutions, to send out, on an as needed basis, drug/alcohol results as requested by our customers.

*I agree to abide by this Program as a condition of employment and understand that any violation of this Program may subject me to disciplinary action, up to and including termination of employment.*

_Dickie D. Foster_
Signature

_3-7-18_
Date

_Dickie D. Foster_
Name (Printed)

401 E. Broadway Suite 200, Sand Springs, OK 74063 • (918) 246-7100 • FAX: (918) 512-4992
The contents of this document are considered proprietary and confidential and should not be disclosed, copied or excerpted, in whole or in part, without the expressed written permission of FIS Operations LLC dba Frontier Integrity Solutions.

# Exhibit 22



Confidential

## TRADE SECRETS, CONFIDENTIAL INFORMATION AND
## INVENTION ASSIGNMENT AGREEMENT

I, the undersigned employee, hereby execute and deliver this Trade Secrets, Confidential Information and Invention Assignment Agreement ("Agreement") as of April 3, 2017 in favor and for the benefit of by FIS Operations LLC dba Frontier Integrity Solutions and Affiliates (collectively referred to herein as "Frontier" or "the Company"). I acknowledge that the Company considered and relied upon my willingness to sign, execute and abide by the terms of this Agreement in continuing my employment with the Company, and that my continued employment constitutes good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

**1.    Definitions.**

For purposes of this Agreement, "Affiliate" means, with respect to any individual, corporation, partnership, limited liability company, association, trust or other entity or organization (each, a "Person"), any other Person directly or indirectly controlling, controlled by, or under common control with such Person.

For purposes of this Agreement, "Parent Entity" means FIS Holdings, LLC, and/or any of its Affiliates.

**2.    Confidential Information.**

With respect to confidential or proprietary information and/or trade secrets that I have access to or acquire by any means during the course of my employment with the Company, including confidential and proprietary information and/or trade secrets belonging to any Parent Entity, I agree that:

(a)    I am currently aware of and will continue, during the course of my ongoing employment, to acquire further access to and familiarity with confidential or proprietary information and/or trade secrets ("Confidential Information") that is valuable and gives a competitive advantage to the Company.

(b)    For the purposes of this Agreement, "Confidential Information" shall include any and all (i) confidential knowledge, data or information related to the Company's or the Parent Entities' business or actual or anticipated research or development, including, but not limited to, business and strategic plans; methodologies and methods of doing business; software programs and subroutines; computer source and object code; algorithms; technology; data; formulae; programs; improvements; discoveries; developments, designs, and techniques; manufacturing know-how; product development and other research information; sources of supply; customer and vendor relationships and agreements; information regarding competitors; marketing, sales and expansion plans; financial plans and other financial information; pricing forecasts; cost margin analyses; management agreements; contractual agreements; intellectual property rights; copyrights; and trade secrets; (ii) information regarding the personal data, skills and/or compensation of the Company's or any Parent Entity's employees, contractors, and any other service providers; (iii) any other confidential information of the Company or any Parent Entity, including but not limited to any confidential information acquired by the Company from Furmanite America, Inc. and (iv) any confidential information of third parties to which the Company or Parent Entity has confidentiality obligations and use restrictions.

1



(c)     Both during and after my employment with the Company, I will retain all Confidential Information in strict confidence and in compliance with the specific terms and conditions of this Agreement and will not, directly or indirectly, disclose, divulge or communicate in any manner the Confidential Information I have acquired during my employment with the Company to any third person, nor will I use Confidential Information for any purpose but for the benefit of the Company. During my employment with the Company, (i) I will use Confidential Information only to the extent necessary to enable me to perform my assigned duties of the Company; (ii) I will take steps to protect any Confidential Information and/or other Company-related data on my Company-issued computer and other equipment; and (iii) I will not remove from the Company's business premises or reproduce any documents, recordings, data or materials containing or embodying any Confidential Information, except to the extent such removal and/or reproduction is appropriate for, and directly in connection with, the performance by me of my assigned duties for the Company, and in the event of such permitted removal or reproduction, I shall take all reasonable steps to safeguard such materials. Upon the termination of my employment, I agree to return to the Company immediately, and not retain, all Confidential Information, documents, images, or audio/video recordings or other data that contain Confidential Information, whether in electronic form or hard copy, and all copies thereof, and to provide written verification that I have complied in full with this requirement.

(d)     Notwithstanding anything in this Agreement, I may disclose, without violating the terms of this Agreement, Confidential Information that I am specifically required by court order, subpoena or law to disclose, but I agree to disclose only that portion of Confidential Information that is legally required to be disclosed.

(e)     As required by the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1833(b), I acknowledge that I will not be held criminally liable or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made under circumstances described therein, including: (1) in confidence to a government official or an attorney for the sole purpose of reporting or investigating a suspected violation of law; (2) in a complaint or other document filed in a legal proceeding, so long as such document is filed under seal; or (3) should I file a lawsuit against the Company for purported retaliation for reporting a suspected violation of law, then to my attorney, or in that court proceeding, so long as any document I file containing the trade secret is filed under seal and I do not disclose the trade secret except pursuant to court order. Unless expressly provided, the DTSA does not authorize, or limit liability for, an act that is otherwise prohibited by law, such as the unlawful access of material by unauthorized means.

(f)     I acknowledge and agree that the Company owns all right, title, and interest in and to all Confidential Information (except as set forth in Section 2(b)(iv)). I hereby assign and agree to assign to the Company any rights I may have or acquire in any and all Confidential Information and recognize that all Confidential Information shall be the sole and exclusive property of the Company.

3.     **Inventions and Intellectual Property.**

(a)     I have attached hereto, as Exhibit 1, a list describing in full detail (or in as much detail as possible, consistent with my obligation (if any) to maintain the confidentiality of other entities' proprietary materials and trade secrets) all inventions, original works of authorship, developments, improvements, patents, and trade secrets which were first conceived, reduced to practice, made or fixed in a tangible form by me prior to my service with the Company, which I now own or in which I maintain a controlling interest, either directly or indirectly, which relate to any matter, thing process or method connected in any way with my work or with tests carried on by the Company, or which is within the scope of their business, products or research and development, and which are not assigned to the Company hereunder (collectively referred to as "Prior IP"). If I fail to provide such a list, it shall be presumed that

2



Confidential

there is no such Prior IP. I will not, without the Company's prior written consent, incorporate or permit to be incorporated any Prior IP into any invention, discovery, original work of authorship, development, concept of improvement, trade secret, and all other patent, trademark, copyright and other intellectual property rights created by or behalf of the Company (collectively referred to as "New IP"). Nevertheless, if Prior IP at any time (i) is incorporated into a Company product, process or machine, or (ii) is useful to the Company in its business, the Company is hereby granted a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license (i) to reproduce, create derivative works, distribute, publicly perform, publicly display, digitally transmit, and otherwise use the applicable Prior IP in any medium or format, whether now known or hereafter discovered; (ii) to make, have made, modify, use and sell, offer to sell, import, and otherwise exploit any product or service based on, embodying, incorporating, or derived from, in whole or in part, the applicable Prior IP; and (iii) to exercise any and all other present or future rights in the applicable Prior IP.

(b)     Furthermore, I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all right, title, and interest in and to any and all New IP made, conceived, reduced to practice or developed by me (whether alone or jointly with others), which relates to any matter, thing process or method connected in any way with my work or with tests carried on by the Company, or which is within the scope of the Company's business, products or research and development, whether or not patentable or registerable under copyright or similar laws during my employment with the Company. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of service with the Company and which are protected by copyright are "works made for hire," as that term is defined in the United States Copyright Act. If any intellectual property rights, including moral rights, in any New IP cannot (as a matter of law) be assigned by me to the Company then (i) I unconditionally and irrevocably waive the enforcement of such rights and all claims and causes of action of any kind against the Company or any of its customers, licensees, successors, assigns or nominees with respect to such rights; and (ii) to the extent I cannot (as a matter of law) make such waiver, I unconditionally grant to the Company an exclusive, royalty-free, irrevocable, perpetual, worldwide license under any and all such intellectual property rights (A) to reproduce, create derivative works, distribute, publicly perform, publicly display, digitally transmit, and otherwise use the applicable New IP in any medium or format, whether now known or hereafter discovered; (B) to make, have made, modify, use and sell, offer to sell, import, and otherwise exploit any product or service based on, embodying, incorporating, or derived from, in whole or in part, the applicable New IP; and (C) to exercise any and all other present or future rights in the applicable New IP.

(c)     I agree to assign to the United States government all my right, title, and interest in and to any and all inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

(d)     I agree to maintain adequate and current written records of all New IP made by me (solely or jointly with others) during the term of my service with the Company and to disclose all New IP promptly to the Company. The records will be in a form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

(e)     I agree to assist the Company or its designee, at the Company's expense, in every proper way to secure Company's rights in the New IP and any copyrights, patents, or other intellectual property rights relating thereto in any all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and

3



obtain such rights in an order to assign and convey to the Company, its successors, assigns and nominees the sole and exclusive rights, title and interest in such New IP, and any copyrights, patents, or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed when it is in my power to do so, any such instrument, or papers shall continue after the termination of my employment. I will also give all reasonable assistance to the Company, or its designee, regarding any litigation or controversy in connection with the New IP, all expenses incident thereto to be assumed by the Company. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyrighted registrations covering New IP or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agents and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by me.

        (f)     I understand that the provisions of this Agreement requiring assignments of New IP to the Company do not apply to any invention which qualifies fully under the type of provisions delineated in the California Labor Code Section 2870 (attached as Exhibit 2) or comparable state law. I will advise the Company promptly in writing of any inventions that I believe meet the criteria in California Labor Code Section 2870 and are not otherwise disclosed on Exhibit 1.

    4.    **Confidential Information of Outside Entities.**

        (a)     I agree that I will not, during my employment with the Company, improperly use or disclose any confidential, proprietary, or trade secret information of any of my former employers or other entities or persons to whom I have confidentiality obligations, with the exception of any such information previously owned or possessed by Furmanite America, Inc., nor shall I cause any such information to enter the servers, email systems, or other physical or electronic premises of the Company. I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

        (b)     I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

    5.    **Conflicting Employment.** I represent that my employment with the Company does not and will not breach any agreement with any former employer or other third party, including any non-compete agreement or any agreement to keep in confidence or refrain from using information acquired by me prior to my employment by Company. I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of my employment.

    6.    **Returning Company Documents.** I agree that at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) all Confidential Information, including but not limited to any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, documents or other forms of stored information, or reproductions of any aforementioned items

4



developed by me pursuant to my employment with the Company or otherwise belonging to or obtained during my work for the Company. In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto as Exhibit 3.

   7.    Notification of New Employer.  In the event that I leave the employ of the Company, I hereby consent to notification by the Company to my new employer of my rights and obligations under this Agreement.

   8.    Non-Solicitation.

      (a)    Employees.  I agree that while employed and for a period of two (2) years immediately following the termination of my relationship with the Company for any reason, whether such termination occurs at my instigation or the instigation of the Company, I shall not either directly or indirectly, on my own behalf or on behalf of any individual or entity, recruit, solicit, hire or attempt to recruit, solicit, or hire, directly or by assisting others, any persons employed by or associated with the Company, nor shall I contact or communicate with any such persons for the purpose of inducing such persons to terminate their employment or association with the Company. For purposes of this covenant, the "persons" covered by this prohibition include permanent employees, temporary employees, or consultants who were employed by, doing business with, or associated with the Company within six (6) months of the time of the attempted recruiting, solicitation, or hiring.

      (b)    Third Parties.  I agree that while employed and for a period of two (2) years immediately following the termination of my employment with the Company for any reason, whether such termination occurs at my instigation or the instigation of the Company, I shall not directly or indirectly, on my own behalf or on behalf of any individual or entity, solicit, induce, or attempt to solicit or induce, the business of any distributor, vendor, supplier or contractor of the Company (i) in a manner that damages or disrupts the Company's relationship with such party or (ii) in a manner that persuades or causes a party to discontinue that party's relationship with or to the Company, or to reduce the volume of business it does or reduce the level of services it provides to the Company.

      (c)    Clients and Customers.  I agree that for two (2) years immediately following the termination of employment with the Company for any reason, whether such termination occurs at my instigation or the instigation of the Company, I shall not, directly or indirectly, on my own behalf or on behalf of any individual or entity:

         (i)    Solicit the sale of products or services that are the same or similar to the Business of the Company to any Customer or Prospective Customer;

         (ii)    Request, advise, induce or attempt to induce any past or present Customer of the Company to alter, limit, decrease or cancel their business with the Company;

         (iii)    When used herein, "Customer" means any entity for which Company has supplied products or services at any time in the previous three (3) year period. When used herein "Prospective Customer" means any individual or entity, with whom Company had discussions or negotiations (however extensive or numerous the contact, and whether or not resulting in business) concerning Company's products or services, within the previous one (1) year period. When used herein, "Business of the Company" means (A) any service or product offered by the Company during Employee's employment with the Company and (B) any prospective service or product to be offered by the Company of which Employee either had actual knowledge or access to relevant Confidential Information regarding such prospective service or product during employment with the Company.

5



9.     **Representations and Acknowledgments.**

(a)     I acknowledge that the foregoing restrictions will not prevent me from obtaining gainful employment in my occupation or field of expertise or cause me undue hardship; and that there are numerous other employment and business opportunities available to me that are not affected by the foregoing restrictions. I further acknowledge that the foregoing restrictions are reasonable and necessary in order to protect the Company's legitimate interest, and that any violation thereof would result in serious and irreparable injury to the Company.

(b)     I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent that I am not restricted or prevented by any agreement from working for the Company and that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence confidential and proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith. I further acknowledge and represent that I have been given the opportunity to discuss this Agreement with my own legal counsel and have availed myself of that opportunity to the extent I wish to do so.

(c)     I expressly acknowledge that now fair and valuable consideration has been given by the Company and received by me including, without limitation, being employed by the Company and being entitled to participate in the Company's benefit plans, to the extent eligible. Such consideration being adequate and sufficient to bind me to all of the covenants made by me under this Agreement.

10.     **Liability for Disclosure of Confidential Information.**

I acknowledge that each of the restrictions contained in this Agreement relating to the non-disclosure of Confidential Information is reasonable and necessary in order to protect the legitimate and reasonable competitive business interests of the Company and that any violation of these restrictions would cause irreparable injury to the Company. I acknowledge and agree that in the event of a violation of these restrictions, the Company shall be authorized and entitled to obtain from any court of competent jurisdiction preliminary and permanent injunctive relief as described in Section 11, as well as an equitable accounting of all profits and benefits arising out of such violation and any damages resulting from the breach which may be applicable. These rights and remedies shall be independent, severable and cumulative and shall be in addition to any other rights and remedies to which the Company may be entitled. I acknowledge that the covenants contained in this Section 1 and my liability for breach of such covenants and restrictions shall survive the expiration and the termination of my association with the Company.

11.     **Equitable Relief.**

I agree that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants set forth herein. Accordingly, I agree that if I breach any of such sections, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and/or ordering specific performance of any such provisions of the Agreement. I further agree that no bond or other security shall be required in obtaining such equitable relief, and I hereby consent to the issuance of such injunction and to the ordering of specific performance.



Confidential

12.    General Provisions

(a)    Any claim or judicial proceeding arising from or related to this Agreement initiated by me or by the Company shall be filed in a state or federal court located in the county in which I last worked on a regular basis for the Company in Oklahoma. Any such proceeding or claim shall be governed by Oklahoma law, without regard to Oklahoma choice-of-law principles.

(b)    The invalidity of any provision of this Agreement shall not affect the validity of the remainder of any such provision or other remaining provisions of this Agreement. Nothing contained in this document shall be construed to supersede, modify or affect the terms or provisions of any existing executive or employee benefit plan.

(c)    I acknowledge that this statement does not, and will not, alter my status as an at-will employee of the Company, and I understand that my employment is not guaranteed for any specified period, and that either the Company or I may terminate the employment relationship at any time for any reason, with or without cause, and with or without advance notice. I acknowledge that the at-will nature of my employment cannot be changed except through a writing signed by both me and the Company.

(d)    My decision to sign this Agreement was made voluntarily and freely, and in consideration of my continued employment with the Company and eligibility for the compensation and benefits connected therewith.

(e)    The provisions of this Agreement constitute the entire understanding and agreement of the parties as to the subject matter herein and there are no other oral or written understandings or agreements between the Company and me.

(f)    This Agreement may not be changed or amended except by a subsequent writing signed by both parties that specifically addresses the subject matter herein.

(g)    Any waiver or failure to enforce any provision of this Agreement on one occasion will not be deemed a waiver of that provision or any other provision on any other occasion.

(h)    This Agreement shall survive the termination of my employment and the assignment of this Agreement by Company to any successor or other assignee and be binding upon my heirs and legal representatives. I acknowledge and agree that the Company shall have the right to assign this Agreement, in whole or in part, at the Company's sole discretion.

Date:   3 - 7 - 18

Signature

Dickie D. Foster
Name of Employee (typed or printed)

7

                                                     Confidential

## EXHIBIT 1

### LISTS OF PRIOR IP

| Title: | Date: | Identifying Number and Description*: |
|---|---|---|
| Welding + utility | Jan - Dec. 2017 | OIS |
| Welding + utility | Sep. - Dec 2016 | Tulsa Ingot. |
| | | |
| | | |
| | | |
| | | |

_____ No inventions or improvements

_____ Additional sheets attached

Signature of Employee: _Dickie D. Foster_

Print Name of Employee: _Dickie D. Foster_

Date: _3 - 7 - 18_

* Please describe in full detail or, if the Prior IP is confidential and/or proprietary, please describe in as much detail as possible, consistent with your obligation to maintain the confidentiality of such Prior IP. Additionally, please clearly indicate any and all Prior IP you believe meet the criteria set forth in California Labor Code Section 2870.

 **Confidential**

## EXHIBIT 2

## CALIFORNIA LABOR CODE SECTION 2870 EMPLOYMENT AGREEMENTS; ASSIGNMENT OF RIGHTS

"(a)    Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1)    Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2)    Result from any work performed by the employee for the employer.

(b)    To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."



## EXHIBIT 3

### TERMINATION CERTIFICATION

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, or other document of property, or reproductions of any aforementioned items belonging to or obtained via my work for FIS Operations, LLC (dba Frontier Integrity Solutions and/or FIS ) (the "Company"), FIS Holdings, LLC, _____, and any of their affiliates.

I further certify that I complied with all the terms of the Company's policies and with the Trade Secrets, Confidential Information and Invention Assignment Agreement ("Agreement"), including the reporting of any inventions and original works of authorship (as defined therein), conceived or made by me (solely or jointly with others) covered by that Agreement.

I further agree that, in accordance with the Company's policies and in compliance with the Agreement, I will preserve as confidential, and will not use or disclose for any purpose, all Confidential Information (as defined in the Agreement) that I obtained in the course of my work for the Company.

I further agree that for the period of twenty four (24) months following the termination of my employment relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly: (a) personally or through any other person, encourage, induce, attempt to induce, recruit, solicit, attempt to solicit (on my own behalf or on behalf of any other person), or take any other action that is intended to induce or encourage, any Company Employee (as defined in the Agreement) who worked for the Company during my employment to leave his or her employment or service with the Company; or (b) personally or through any other person, encourage, induce, attempt to induce, recruit, solicit, attempt to solicit (on my own behalf or on behalf of any other person), or take any other action that is intended to induce or encourage any Company Employee to engage in any activity in which I am prohibited from engaging.

Date: __3 - 7 - 18__

_Dickie D. Foster_
Employee Signature

_Dickie D. Foster_
(Type/print Employee's Name)

# Exhibit 23

# Exhibit 24



### DRIVING POLICY ACKNOWLEDGMENT FORM

*I acknowledge that I have received a copy of the Frontier Integrity Solutions, driving policy.*

I understand and agree to the following:

1. I am responsible for reading and abiding by the rules set out in the policy and these regulations and that failure to follow will result in disciplinary action up to and including termination of employment.
2. I will not drive any Frontier vehicle unless approved by my Operations or Department Manager.
3. I am responsible for notifying my Operations or Department Manager should there be any change to the status of my driver's license.
4. I am responsible for immediately notifying my Operations or Department Manager if I am involved in a vehicle accident involving a Frontier Integrity Solutions vehicle or while driving a personal vehicle for business.
5. Company vehicles are to be used for the purpose of Frontier's business. Vehicles are not to be used for personal use.
   a. Vehicle custodians are to drive vehicles to their homes and park them after the business day is complete.
   b. Company vehicles are not to be used to move an employee's belongings from one residence to another.
   c. If an employee is out of town on company business, the company vehicle is to be used to and from the job site. The employee may use the vehicle for transportation for the purpose of obtaining groceries/meals, laundry, and other errands that are necessary functions of life. This does not include social type activities (i.e. drinking in the local pub, etc.).

In the event the Company vehicle is involved in an accident while not on Company business, employee agrees (in addition to possible loss of driving privileges and/or discipline action) to reimburse Frontier for any expenses, damages or costs resulting from or connected with such accident. Further, employee agrees that the reimbursement amount may be deducted from paychecks or other sums due to employee, to the maximum amount allowed by law.

Accidents that are preventable such as backing, running stop signs, rear ending others, etc. will be investigated. If, through the course of the investigation, it is determined that the employee could have prevented said accident then the employee will be charged $1000.00 through payroll deduction. If it is determined that the employee is under the influence of drugs or alcohol at the time of the accident, whether or not the employee is found at fault, employment will be immediately terminated.

6. Employees are to alert the Operations Manager to any repairs that may be required to keep the vehicle in good working order and are responsible for ensuring that all preventative maintenance is done on timely basis.
7. Company vehicles are not to be used by non-employees of Frontier. Temporary employees, spouses, and children are not authorized drivers. Do not allow unauthorized drivers to operate the company vehicle at <u>ANY</u> time, including moving the vehicle from the driveway. Accidents have happened this way.
8. Hired Casual Labor employees (those that are classified as employees on an as-needed basis, but paid with a Frontier check) are not to operate company vehicles.
9. Operating a company vehicle while under the influence of drugs or alcohol is strictly prohibited.
10. *Company vehicles are to be operated only by licensed drivers. If a driver's license is suspended, he/she must immediately notify the Operations Manager/HR.*
11. In the event the employee operates a company vehicle after being denied authorization, he/she will be subject to disciplinary action, up to and including termination.
12. Employee acknowledges and agrees that he/she is responsible for any traffic violation fine and/or penalty.
13. By my signature below, I authorize Frontier Integrity Solutions to obtain information and reports with respect to my driving history as it pertains to my status to drive a company vehicle or personal vehicle for company business.

FIS FRONTIER
INTEGRITY SOLUTIONS

401 E. Broadway St.| Suite 200, Sand Springs, OK 74063 • (918) 245-7109 • FAX: (918) 512-4992
The contents of this document are considered proprietary and confidential and should not be disclosed, copied or excerpted, in whole or in part, without the expressed written permission of FIS Operations LLC dba Frontier Integrity Solutions.



*Employees who do not strictly adhere to the regulations will be subject to disciplinary action, up to and including termination.*

*I have read and understand the preceding regulations for operating company vehicles.*

Dickie D. Foster
PRINTED NAME

*[signature]*
SIGNATURE

3-7-78
DATE

401 E. Broadway St., Suite 200, Sand Springs, OK 74063 ● (918) 246-7100 ● FAX: (918) 552-4992
The contents of this document are considered proprietary and confidential and should not be disclosed, copied or accepted, in whole or in part, without the expressed written permission of FIS Operations LLC dba Frontier Integrity Solutions.

# Exhibit 25



## Employee Direct Deposit Enrollment/Change Form

To enroll in Direct Deposit, simply fill out this form and send it to the Payroll Department in Sand Springs Oklahoma. Attach a voided check for each checking account – not a deposit slip. If depositing to a savings account, ask your bank to give you the Routing/Transit Number for your account. It isn't always the same as the number on a savings deposit slip. This will help ensure that you are paid correctly.

Below is a sample check MICR line, detailing where the information necessary to complete this form can be found.

Menu

⑆01 23456 78⑆ 1 2345 6789⑈ 0 1 0 1

| Routing/Transit # (A 9-digit number always between these two marks) | Checking Account # | Check # (this number matches the number in the upper right corner of the check— not needed for sign-up) |

---

**Account Information**

The last item must be for the remaining amount owed to you if you choose to deposit your pay into more than one account.

Make sure to indicate what kind of account, along with the amount to be deposited, if less than your total net paycheck.

1.   Bank Name/City/State: ___C H A S E___

    Routing/Transit #: ████████    Account Number: ████████

☒ Checking  ☐ Savings  ☐ Other    I wish to deposit: $_____.___ or ☒ Entire Net Amount

2.   Bank Name/City/State: _____

    Routing/Transit #: _ _ _ _ _ _ _ _ _    Account Number: _____

☐ Checking  ☐ Savings  ☐ Other    I wish to deposit: $_____.___ or ☐ Entire Net Amount

3.   Bank Name/City/State: _____

    Routing/Transit #: _ _ _ _ _ _ _ _ _    Account Number: _____

☐ Checking  ☐ Savings  ☐ Other    I wish to deposit: $_____.___ or ☐ Entire Net Amount

---

**Authorization Agreement**

I hereby authorize Frontier Integrity Solutions, either directly or through its payroll service provider, to deposit any amounts owed to me, by initiating credit entries to my account at the financial institution (hereinafter "Bank") indicated on this form. Further, I authorize Bank to accept and to credit any credit entries indicated by Frontier Integrity Solutions, either directly or through its payroll service provider, to my account. In the event that Frontier Integrity Solutions deposits funds erroneously into my account, I authorize Frontier Integrity Solutions, either directly or through its payroll service provider, to debit my account for an amount not to exceed the original amount of the erroneous error. This authorization is to remain in full force and effect until Frontier Integrity Solutions and Bank have received written notice from me of its termination in such time and in such manner as to afford Frontier Integrity Solutions and Bank reasonable opportunity to act on it.

☐ I elect to waive pre-note

☐ I elect to stop my direct deposit

☐ I do not wish to select direct deposit

Employee Signature: *Dickie D. Foster*    Social Security #: ████████

Employee Name: *Dickie D. Foster*    Date: 3-7-18

Exhibit 26



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 07/09/2018 |
| Period End Date | 07/15/2018 |
| Pay Date | 07/20/2018 |
| Document | 21849 |
| Net Pay | $3,551.99 |

## Pay Details

| Dickie D Foster | | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.0000 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| ATV Rent Reimb | | | $120.00 | $1,120.00 |
| Equipment | | | $900.00 | $17,100.00 |
| Mileage | | | $408.21 | $5,884.41 |
| Non Taxable Per | | | $1,337.00 | $25,212.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $18,126.00 |

Total Hours  0.0000

## Deductions

| | | | | Employee | | Employer | |
|---|---|---|---|---|---|---|---|
| Deduction | Based On | Pre-Tax | | Current | YTD | Current | YTD |
| No records found | | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $954.00 | $61.35 | $1,165.65 |
| Employee Medicare | $954.00 | $13.84 | $262.83 |
| Social Security Employee Tax | $954.00 | $59.15 | $1,123.81 |
| LA State Income Tax | $954.00 | $32.88 | $627.22 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxx5043 | Checking | $3,551.99 |
| Total | | $3,551.99 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,719.21 | $954.00 | $167.22 | $0.00 | $3,551.99 |
| YTD | $67,442.41 | $18,126.00 | $3,179.51 | $0.00 | $64,262.90 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 07/02/2018 |
| Period End Date | 07/08/2018 |
| Pay Date | 07/13/2018 |
| Document | 21400 |
| Net Pay | $3,824.01 |

## Pay Details

| Dickie D Foster | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
|---|---|---|---|---|---|---|
| | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | M 0 |
| USA | Pay Rate | $0.0000 | | | | |
| | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| ATV Rent Reimb | | | $160.00 | $1,000.00 |
| Equipment | | | $1,050.00 | $16,200.00 |
| Mileage | | | $371.15 | $5,476.20 |
| Non Taxable Per | | | $1,337.00 | $23,875.00 |
| Regular - Days | 7.0000 | $0.0000 | $1,113.00 | $17,172.00 |

Total Hours  0.0000

## Deductions

| | | | | Employee | | Employer | |
|---|---|---|---|---|---|---|---|
| Deduction | Based On | Pre-Tax | | Current | YTD | Current | YTD |
| No records found | | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $1,113.00 | $80.43 | $1,104.30 |
| Employee Medicare | $1,113.00 | $16.13 | $248.99 |
| Social Security Employee Tax | $1,113.00 | $69.00 | $1,064.66 |
| LA State Income Tax | $1,113.00 | $41.58 | $594.34 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxx5043 | Checking | $3,824.01 |
| Total | | $3,824.01 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $4,031.15 | $1,113.00 | $207.14 | $0.00 | $3,824.01 |
| YTD | $63,723.20 | $17,172.00 | $3,012.29 | $0.00 | $60,710.91 |



FRONTIER INTEGRITY
SOLUTIONS

401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 06/25/2018 |
| Period End Date | 07/01/2018 |
| Pay Date | 07/06/2018 |
| Document | 20939 |
| Net Pay | $3,324.62 |

## Pay Details

| Dickie D Foster | | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.0000 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| ATV Rent Reimb | 0.0000 | $0.0000 | $0.00 | $840.00 |
| Equipment | | | $900.00 | $15,150.00 |
| Mileage | | | $300.84 | $5,105.05 |
| Non Taxable Per | | | $1,337.00 | $22,538.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $16,059.00 |

Total Hours  0.0000

## Deductions

| | | | | Employee | | Employer | |
|---|---|---|---|---|---|---|---|
| Deduction | Based On | Pre-Tax | | Current | YTD | Current | YTD |
| No records found | | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $954.00 | $61.35 | $1,023.87 |
| Employee Medicare | $954.00 | $13.84 | $232.86 |
| Social Security Employee Tax | $954.00 | $59.15 | $995.66 |
| LA State Income Tax | $954.00 | $32.88 | $552.76 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxx5043 | Checking | $3,324.62 |
| Total | | $3,324.62 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,491.84 | $954.00 | $167.22 | $0.00 | $3,324.62 |
| YTD | $59,692.05 | $16,059.00 | $2,805.15 | $0.00 | $56,886.90 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 06/18/2018 |
| Period End Date | 06/24/2018 |
| Pay Date | 06/29/2018 |
| Document | 20506 |
| Net Pay | $3,279.40 |

## Pay Details

| Dickie D Foster | | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.0000 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| ATV Rent Reimb | 0.0000 | $0.0000 | $0.00 | $840.00 |
| Equipment | | | $900.00 | $14,250.00 |
| Mileage | | | $255.61 | $4,804.21 |
| Non Taxable Per | | | $1,337.00 | $21,201.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $15,105.00 |

| Total Hours | 0.0000 |
|---|---|

## Deductions

| | | | | Employee | | Employer | |
|---|---|---|---|---|---|---|---|
| Deduction | Based On | | Pre-Tax | Current | YTD | Current | YTD |
| No records found | | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $954.00 | $61.35 | $962.52 |
| Employee Medicare | $954.00 | $13.83 | $219.02 |
| Social Security Employee Tax | $954.00 | $59.15 | $936.51 |
| LA State Income Tax | $954.00 | $32.88 | $519.88 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxx5043 | Checking | $3,279.40 |
| Total | | $3,279.40 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,446.61 | $954.00 | $167.21 | $0.00 | $3,279.40 |
| YTD | $56,200.21 | $15,105.00 | $2,637.93 | $0.00 | $53,562.28 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 06/11/2018 |
| Period End Date | 06/17/2018 |
| Pay Date | 06/22/2018 |
| Document | 20049 |
| Net Pay | $3,324.09 |

## Pay Details

| Dickie D Foster | | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.0000 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| ATV Rent Reimb | 0.0000 | $0.0000 | $0.00 | $840.00 |
| Equipment | | | $900.00 | $13,350.00 |
| Mileage | | | $300.30 | $4,548.60 |
| Non Taxable Per | | | $1,337.00 | $19,864.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $14,151.00 |

Total Hours  0.0000

## Deductions

| | | | Employee | | Employer | |
|---|---|---|---|---|---|---|
| Deduction | Based On | Pre-Tax | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $954.00 | $61.35 | $901.17 |
| Employee Medicare | $954.00 | $13.83 | $205.19 |
| Social Security Employee Tax | $954.00 | $59.15 | $877.36 |
| LA State Income Tax | $954.00 | $32.88 | $487.00 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxx5043 | Checking | $3,324.09 |
| Total | | $3,324.09 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,491.30 | $954.00 | $167.21 | $0.00 | $3,324.09 |
| YTD | $52,753.60 | $14,151.00 | $2,470.72 | $0.00 | $50,282.88 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 06/04/2018 |
| Period End Date | 06/10/2018 |
| Pay Date | 06/15/2018 |
| Document | 19612 |
| Net Pay | $3,320.27 |

## Pay Details

| Dickie D Foster | | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.0000 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| ATV Rent Reimb | 0.0000 | $0.0000 | $0.00 | $840.00 |
| Equipment | | | $900.00 | $12,450.00 |
| Mileage | | | $296.48 | $4,248.30 |
| Non Taxable Per | | | $1,337.00 | $18,527.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $13,197.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee | | Employer | |
|---|---|---|---|---|---|---|
| | | | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $954.00 | $61.35 | $839.82 |
| Employee Medicare | $954.00 | $13.84 | $191.36 |
| Social Security Employee Tax | $954.00 | $59.14 | $818.21 |
| LA State Income Tax | $954.00 | $32.88 | $454.12 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxx5043 | Checking | $3,320.27 |
| Total | | $3,320.27 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,487.48 | $954.00 | $167.21 | $0.00 | $3,320.27 |
| YTD | $49,262.30 | $13,197.00 | $2,303.51 | $0.00 | $46,958.79 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
| --- | --- |
| Period Start Date | 05/28/2018 |
| Period End Date | 06/03/2018 |
| Pay Date | 06/08/2018 |
| Document | 19150 |
| Net Pay | $3,340.98 |

## Pay Details

| Dickie D Foster | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
| --- | --- | --- | --- | --- | --- | --- |
| | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | Job | Inspector | Department | D800 - Field Services | LA  State Income Tax (Work) | M 0 |
| USA | Pay Rate | $0.0000 | | | | |
| | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
| --- | --- | --- | --- | --- |
| ATV Rent Reimb | 0.0000 | $0.0000 | $0.00 | $840.00 |
| Equipment | | | $900.00 | $11,550.00 |
| Mileage | | | $317.19 | $3,951.82 |
| Non Taxable Per | | | $1,337.00 | $17,190.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $12,243.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee Current | Employee YTD | Employer Current | Employer YTD |
| --- | --- | --- | --- | --- | --- | --- |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
| --- | --- | --- | --- |
| Federal Income Tax | $954.00 | $61.35 | $778.47 |
| Employee Medicare | $954.00 | $13.83 | $177.52 |
| Social Security Employee Tax | $954.00 | $59.15 | $759.07 |
| LA State Income Tax | $954.00 | $32.88 | $421.24 |

## Paid Time Off

| Plan | Current | Balance |
| --- | --- | --- |
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
| --- | --- | --- |
| xxxxx5043 | Checking | $3,340.98 |
| Total | | $3,340.98 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
| --- | --- | --- | --- | --- | --- |
| Current | $3,508.19 | $954.00 | $167.21 | $0.00 | $3,340.98 |
| YTD | $45,774.82 | $12,243.00 | $2,136.30 | $0.00 | $43,638.52 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 05/21/2018 |
| Period End Date | 05/27/2018 |
| Pay Date | 06/01/2018 |
| Document | 18707 |
| Net Pay | $3,328.99 |

## Pay Details

| Dickie D Foster | | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.0000 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| ATV Rent Reimb | 0.0000 | $0.0000 | $0.00 | $840.00 |
| Equipment | | | $900.00 | $10,650.00 |
| Mileage | | | $305.20 | $3,634.63 |
| Non Taxable Per | | | $1,337.00 | $15,853.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $11,289.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee Current | Employee YTD | Employer Current | Employer YTD |
|---|---|---|---|---|---|---|
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $954.00 | $61.35 | $717.12 |
| Employee Medicare | $954.00 | $13.83 | $163.69 |
| Social Security Employee Tax | $954.00 | $59.15 | $699.92 |
| LA State Income Tax | $954.00 | $32.88 | $388.36 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxx5043 | Checking | $3,328.99 |
| Total | | $3,328.99 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,496.20 | $954.00 | $167.21 | $0.00 | $3,328.99 |
| YTD | $42,266.63 | $11,289.00 | $1,969.09 | $0.00 | $40,297.54 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 05/14/2018 |
| Period End Date | 05/20/2018 |
| Pay Date | 05/25/2018 |
| Document | 18239 |
| Net Pay | $3,314.81 |

## Pay Details

| Dickie D Foster | | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | | Job | Inspector | Department | D800 - Field Services | LA  State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.0000 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| ATV Rent Reimb | 0.0000 | $0.0000 | $0.00 | $840.00 |
| Equipment | | | $900.00 | $9,750.00 |
| Mileage | | | $291.03 | $3,329.43 |
| Non Taxable Per | | | $1,337.00 | $14,516.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $10,335.00 |

Total Hours  0.0000

## Deductions

| | | | Employee | | Employer | |
|---|---|---|---|---|---|---|
| Deduction | Based On | Pre-Tax | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $954.00 | $61.35 | $655.77 |
| Employee Medicare | $954.00 | $13.84 | $149.86 |
| Social Security Employee Tax | $954.00 | $59.15 | $640.77 |
| LA State Income Tax | $954.00 | $32.88 | $355.48 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxx5043 | Checking | $3,314.81 |
| Total | | $3,314.81 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,482.03 | $954.00 | $167.22 | $0.00 | $3,314.81 |
| YTD | $38,770.43 | $10,335.00 | $1,801.88 | $0.00 | $36,968.55 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
| --- | --- |
| Period Start Date | 05/07/2018 |
| Period End Date | 05/13/2018 |
| Pay Date | 05/18/2018 |
| Document | 17780 |
| Net Pay | $3,270.68 |

## Pay Details

| Dickie D Foster | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
| --- | --- | --- | --- | --- | --- | --- |
| | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | M 0 |
| USA | Pay Rate | $0.0000 | | | | |
| | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
| --- | --- | --- | --- | --- |
| ATV Rent Reimb | 0.0000 | $0.0000 | $0.00 | $840.00 |
| Equipment | | | $900.00 | $8,850.00 |
| Mileage | | | $246.89 | $3,038.40 |
| Non Taxable Per | | | $1,337.00 | $13,179.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $9,381.00 |

Total Hours  0.0000

## Deductions

| | | | Employee | | Employer | |
| --- | --- | --- | --- | --- | --- | --- |
| Deduction | Based On | Pre-Tax | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
| --- | --- | --- | --- |
| Federal Income Tax | $954.00 | $61.35 | $594.42 |
| Employee Medicare | $954.00 | $13.83 | $136.02 |
| Social Security Employee Tax | $954.00 | $59.15 | $581.62 |
| LA State Income Tax | $954.00 | $32.88 | $322.60 |

## Paid Time Off

| Plan | Current | Balance |
| --- | --- | --- |
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
| --- | --- | --- |
| xxxxx5043 | Checking | $3,270.68 |
| Total | | $3,270.68 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
| --- | --- | --- | --- | --- | --- |
| Current | $3,437.89 | $954.00 | $167.21 | $0.00 | $3,270.68 |
| YTD | $35,288.40 | $9,381.00 | $1,634.66 | $0.00 | $33,653.74 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| | |
|---|---|
| **Pay Statement** | |
| Period Start Date | 04/30/2018 |
| Period End Date | 05/06/2018 |
| Pay Date | 05/11/2018 |
| Document | 17300 |
| Net Pay | $3,404.64 |

## Pay Details

| Dickie D Foster | | | | | |
|---|---|---|---|---|---|
| | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
| | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | M 0 |
| USA | Pay Rate | $0.0000 | | | |
| | Pay Frequency | Weekly | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| ATV Rent Reimb | | | $80.00 | $840.00 |
| Equipment | | | $900.00 | $7,950.00 |
| Mileage | | | $300.84 | $2,791.51 |
| Non Taxable Per | | | $1,337.00 | $11,842.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $8,427.00 |

Total Hours  0.0000

## Deductions

| | | | Employee | | Employer | |
|---|---|---|---|---|---|---|
| Deduction | Based On | Pre-Tax | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $954.00 | $61.35 | $533.07 |
| Employee Medicare | $954.00 | $13.83 | $122.19 |
| Social Security Employee Tax | $954.00 | $59.14 | $522.47 |
| LA State Income Tax | $954.00 | $32.88 | $289.72 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxx5043 | Checking | $3,404.64 |
| Total | | $3,404.64 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,571.84 | $954.00 | $167.20 | $0.00 | $3,404.64 |
| YTD | $31,850.51 | $8,427.00 | $1,467.45 | $0.00 | $30,383.06 |



FRONTIER INTEGRITY
SOLUTIONS

401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
| --- | --- |
| Period Start Date | 04/23/2018 |
| Period End Date | 04/29/2018 |
| Pay Date | 05/04/2018 |
| Document | 16847 |
| Net Pay | $3,327.36 |

## Pay Details

| Dickie D Foster | | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.0000 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
| --- | --- | --- | --- | --- |
| ATV Rent Reimb | 0.0000 | $0.0000 | $0.00 | $760.00 |
| Equipment | | | $900.00 | $7,050.00 |
| Mileage | | | $303.57 | $2,490.67 |
| Non Taxable Per | | | $1,337.00 | $10,505.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $7,473.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee | | Employer | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
| --- | --- | --- | --- |
| Federal Income Tax | $954.00 | $61.35 | $471.72 |
| Employee Medicare | $954.00 | $13.83 | $108.36 |
| Social Security Employee Tax | $954.00 | $59.15 | $463.33 |
| LA State Income Tax | $954.00 | $32.88 | $256.84 |

## Paid Time Off

| Plan | Current | Balance |
| --- | --- | --- |
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
| --- | --- | --- |
| xxxxx5043 | Checking | $3,327.36 |
| Total | | $3,327.36 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
| --- | --- | --- | --- | --- | --- |
| Current | $3,494.57 | $954.00 | $167.21 | $0.00 | $3,327.36 |
| YTD | $28,278.67 | $7,473.00 | $1,300.25 | $0.00 | $26,978.42 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 04/16/2018 |
| Period End Date | 04/22/2018 |
| Pay Date | 04/27/2018 |
| Document | 16380 |
| Net Pay | $3,452.80 |

## Pay Details

| Dickie D Foster | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
|---|---|---|---|---|---|---|
| | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | M 0 |
| USA | Pay Rate | $0.0000 | | | | |
| | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| ATV Rent Reimb | | | $120.00 | $760.00 |
| Equipment | | | $900.00 | $6,150.00 |
| Mileage | | | $309.02 | $2,187.10 |
| Non Taxable Per | | | $1,337.00 | $9,168.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $6,519.00 |

Total Hours  0.0000

## Deductions

| | | | | Employee | | Employer | |
|---|---|---|---|---|---|---|---|
| Deduction | Based On | Pre-Tax | | Current | YTD | Current | YTD |
| No records found | | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $954.00 | $61.35 | $410.37 |
| Employee Medicare | $954.00 | $13.84 | $94.53 |
| Social Security Employee Tax | $954.00 | $59.15 | $404.18 |
| LA State Income Tax | $954.00 | $32.88 | $223.96 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxx5043 | Checking | $3,452.80 |
| Total | | $3,452.80 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,620.02 | $954.00 | $167.22 | $0.00 | $3,452.80 |
| YTD | $24,784.10 | $6,519.00 | $1,133.04 | $0.00 | $23,651.06 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 04/09/2018 |
| Period End Date | 04/15/2018 |
| Pay Date | 04/20/2018 |
| Document | 15947 |
| Net Pay | $3,413.90 |

## Pay Details

| Dickie D Foster | | | | | |
|---|---|---|---|---|---|
| | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
| | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | M 0 |
| USA | Pay Rate | $0.0000 | | | |
| | Pay Frequency | Weekly | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| ATV Rent Reimb | | | $80.00 | $640.00 |
| Equipment | | | $900.00 | $5,250.00 |
| Mileage | | | $310.11 | $1,878.08 |
| Non Taxable Per | | | $1,337.00 | $7,831.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $5,565.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee Current | Employee YTD | Employer Current | Employer YTD |
|---|---|---|---|---|---|---|
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $954.00 | $61.35 | $349.02 |
| Employee Medicare | $954.00 | $13.83 | $80.69 |
| Social Security Employee Tax | $954.00 | $59.15 | $345.03 |
| LA State Income Tax | $954.00 | $32.88 | $191.08 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxx5043 | Checking | $3,413.90 |
| Total | | $3,413.90 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,581.11 | $954.00 | $167.21 | $0.00 | $3,413.90 |
| YTD | $21,164.08 | $5,565.00 | $965.82 | $0.00 | $20,198.26 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 04/02/2018 |
| Period End Date | 04/08/2018 |
| Pay Date | 04/13/2018 |
| Document | 15509 |
| Net Pay | $3,411.17 |

## Pay Details

| Dickie D Foster | | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.0000 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| ATV Rent Reimb | | | $80.00 | $560.00 |
| Equipment | | | $900.00 | $4,350.00 |
| Mileage | | | $307.38 | $1,567.97 |
| Non Taxable Per | | | $1,337.00 | $6,494.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $4,611.00 |

Total Hours  0.0000

## Deductions

| | | | | Employee | | Employer | |
|---|---|---|---|---|---|---|---|
| Deduction | Based On | Pre-Tax | | Current | YTD | Current | YTD |
| No records found | | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $954.00 | $61.35 | $287.67 |
| Employee Medicare | $954.00 | $13.83 | $66.86 |
| Social Security Employee Tax | $954.00 | $59.15 | $285.88 |
| LA State Income Tax | $954.00 | $32.88 | $158.20 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxx5043 | Checking | $3,411.17 |
| Total | | $3,411.17 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,578.38 | $954.00 | $167.21 | $0.00 | $3,411.17 |
| YTD | $17,582.97 | $4,611.00 | $798.61 | $0.00 | $16,784.36 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 03/26/2018 |
| Period End Date | 04/01/2018 |
| Pay Date | 04/06/2018 |
| Document | 15095 |
| Net Pay | $3,459.35 |

## Pay Details

| Dickie D Foster | | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.0000 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| ATV Rent Reimb | | | $120.00 | $480.00 |
| Equipment | | | $900.00 | $3,450.00 |
| Mileage | | | $315.56 | $1,260.59 |
| Non Taxable Per | | | $1,337.00 | $5,157.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $3,657.00 |

Total Hours  0.0000

## Deductions

| | | | Employee | | Employer | |
|---|---|---|---|---|---|---|
| Deduction | Based On | Pre-Tax | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $954.00 | $61.35 | $226.32 |
| Employee Medicare | $954.00 | $13.84 | $53.03 |
| Social Security Employee Tax | $954.00 | $59.14 | $226.73 |
| LA State Income Tax | $954.00 | $32.88 | $125.32 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxx5043 | Checking | $3,459.35 |
| Total | | $3,459.35 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,626.56 | $954.00 | $167.21 | $0.00 | $3,459.35 |
| YTD | $14,004.59 | $3,657.00 | $631.40 | $0.00 | $13,373.19 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
| --- | --- |
| Period Start Date | 03/19/2018 |
| Period End Date | 03/25/2018 |
| Pay Date | 03/30/2018 |
| Document | 14685 |
| Net Pay | $3,455.53 |

## Pay Details

| Dickie D Foster | | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.0000 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
| --- | --- | --- | --- | --- |
| ATV Rent Reimb | | | $120.00 | $360.00 |
| Equipment | | | $900.00 | $2,550.00 |
| Mileage | | | $311.74 | $945.03 |
| Non Taxable Per | | | $1,337.00 | $3,820.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $2,703.00 |

Total Hours  0.0000

## Deductions

| | | | Employee | | Employer | |
| --- | --- | --- | --- | --- | --- | --- |
| Deduction | Based On | Pre-Tax | Current | YTD | Current | YTD |
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
| --- | --- | --- | --- |
| Federal Income Tax | $954.00 | $61.35 | $164.97 |
| Employee Medicare | $954.00 | $13.83 | $39.19 |
| Social Security Employee Tax | $954.00 | $59.15 | $167.59 |
| LA State Income Tax | $954.00 | $32.88 | $92.44 |

## Paid Time Off

| Plan | Current | Balance |
| --- | --- | --- |
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
| --- | --- | --- |
| xxxxx5043 | Checking | $3,455.53 |
| Total | | $3,455.53 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
| --- | --- | --- | --- | --- | --- |
| Current | $3,622.74 | $954.00 | $167.21 | $0.00 | $3,455.53 |
| YTD | $10,378.03 | $2,703.00 | $464.19 | $0.00 | $9,913.84 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 03/12/2018 |
| Period End Date | 03/18/2018 |
| Pay Date | 03/23/2018 |
| Document | 14307 |
| Net Pay | $3,491.17 |

## Pay Details

| Dickie D Foster | | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | M 0 |
| USA | | Pay Rate | $0.0000 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| ATV Rent Reimb | | | $160.00 | $240.00 |
| Equipment | | | $900.00 | $1,650.00 |
| Mileage | | | $307.38 | $633.29 |
| Non Taxable Per | | | $1,337.00 | $2,483.00 |
| Regular - Days | 6.0000 | $0.0000 | $954.00 | $1,749.00 |

Total Hours  0.0000

## Deductions

| | | | | Employee | | Employer | |
|---|---|---|---|---|---|---|---|
| Deduction | Based On | Pre-Tax | | Current | YTD | Current | YTD |
| No records found | | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $954.00 | $61.35 | $103.62 |
| Employee Medicare | $954.00 | $13.83 | $25.36 |
| Social Security Employee Tax | $954.00 | $59.15 | $108.44 |
| LA State Income Tax | $954.00 | $32.88 | $59.56 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxx5043 | Checking | $3,491.17 |
| Total | | $3,491.17 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,658.38 | $954.00 | $167.21 | $0.00 | $3,491.17 |
| YTD | $6,755.29 | $1,749.00 | $296.98 | $0.00 | $6,458.31 |



401 East Broadway
Suite 200
Sand Springs, OK 74063
918-246-7709

| Pay Statement | |
|---|---|
| Period Start Date | 03/05/2018 |
| Period End Date | 03/11/2018 |
| Pay Date | 03/16/2018 |
| Document | 13923 |
| Net Pay | $2,967.14 |

## Pay Details

| Dickie D Foster | | Employee Number | 602629 | Pay Group | FIS - Weekly | Federal Income Tax | M 2 |
|---|---|---|---|---|---|---|---|
| | | SSN | XXX-XX-XXXX | Location | Louisiana - Lafayette | TX State Income Tax (Residence) | S 0 |
| | | Job | Inspector | Department | D800 - Field Services | LA State Income Tax (Work) | N 0 |
| USA | | Pay Rate | $0.0000 | | | | |
| | | Pay Frequency | Weekly | | | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| ATV Rent Reimb | | | $80.00 | $80.00 |
| Equipment | | | $750.00 | $750.00 |
| Mileage | | | $325.91 | $325.91 |
| Non Taxable Per | | | $1,146.00 | $1,146.00 |
| Regular - Days | 5.0000 | $0.0000 | $795.00 | $795.00 |

Total Hours  0.0000

## Deductions

| Deduction | Based On | Pre-Tax | Employee Current | Employee YTD | Employer Current | Employer YTD |
|---|---|---|---|---|---|---|
| No records found | | | | | | |

## Taxes

| Tax | Based On | Current | YTD |
|---|---|---|---|
| Federal Income Tax | $795.00 | $42.27 | $42.27 |
| Employee Medicare | $795.00 | $11.53 | $11.53 |
| Social Security Employee Tax | $795.00 | $49.29 | $49.29 |
| LA State Income Tax | $795.00 | $26.68 | $26.68 |

## Paid Time Off

| Plan | Current | Balance |
|---|---|---|
| No records found | | |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxx5043 | Checking | $2,967.14 |
| Total | | $2,967.14 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $3,096.91 | $795.00 | $129.77 | $0.00 | $2,967.14 |
| YTD | $3,096.91 | $795.00 | $129.77 | $0.00 | $2,967.14 |